MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: John D. Nibbelin, Deputy (SBN 184603)
By: Rebecca A. Archer, Deputy (SBN 202743)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA  94063
Telephone:  (650) 363-4757
Facsimile:  (650) 363-4034

Attorneys for Defendants
COUNTY OF SAN MATEO and ROBERT FOUCRAULT,
individually and as CORONER, SAN MATEO COUNTY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISOLINA PICON,<br><br>             Plaintiff,<br><br>     vs.<br><br>COUNTY OF SAN MATEO and ROBERT FOUCRAULT, individually and as CORONER, SAN MATEO COUNTY,<br><br>             Defendants. | Case No. 08 00766-JCS<br><br>**SUPPLEMENT TO THE NOTICE OF REMOVAL** |

        Because defendant inadvertently omitted a document in its Notice of Removal filed on January

31, 2008, defendant hereby supplement Exhibit A to include that document.  For ease of

reference, Exhibit A, as supplemented, is hereby resubmitted in its entirety.

Dated:  February 7, 2008                MICHAEL P. MURPHY, COUNTY COUNSEL


                                        By: _____/s/_____
                                              John D. Nibbelin, Deputy

                                        Attorneys for Defendants
                                        COUNTY OF SAN MATEO and ROBERT
                                        FORCRAULT, individually and as CORONER,
                                        SAN MATEO COUNTY

**1**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* County of San Mateo

**ENDORSED FILED**
SAN MATEO COUNTY

OCT 2 4 2007

Clerk of the Superior Court
By _R. Montgomery_
DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Isolina Picon

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. . A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court San Mateo<br>400 County Center<br>Redwood City, CA 94603 | CASE NUMBER<br>*(Número del Caso):* **CIV 4 6 7 1 6 1** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Ayanna L. Jenkins Toney  (415) 464-4974
225 Bush Street, 16th Floor
San Francisco, CA 94104

DATE: October 24, 2007                    JOHN C. FITTON    R. MONTGOMERY
*(Fecha)*                    Clerk, by _____, Deputy
                            *(Secretario)*                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

OCT 2 4 2007

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

   County of San Mateo

3. ☒ on behalf of *(specify):* COUNTY OF SAN MATEO

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* PUBLIC ENTITY
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

1    Ayanna L. Jenkins-Toney (SBN 224847)
     LAW OFFICES OF AYANNA L. JENKINS-TONEY
2    225 Bush Street,
     16th Floor
3    San Francisco, CA 94901
     Telephone: (415) 464- 4974
4    Facsimile:  (415) 464- 4975

5    **Attorneys for Plaintiff ISOLINA PICON**

6

7

8                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                 **IN AND FOR THE COUNTY OF SAN MATEO**

10   ISOLINA PICON,                        )
                                           )
11              Plaintiff,                 )        Case No. CIV 467161
                                           )
12        vs.                              )
                                           )        **PLAINTIFF'S STATEMENT OF**
13   SAN MATEO COUNTY, a                   )        **DAMAGES**
     governmental entity; ROBERT           )
14   FOUCRAULT, and individual,            )
     and as Coroner; and DOES 1-100,       )
15                                         )
                                           )
16              Defendants.                )
                                           )
17   _____           )

18

19        Plaintiff ISOLINA PICON submits his statement of damages as follows:

20        1.    Health care expenses (to date, estimated):        $ 20,000

21        2.    Health care expenses (future):                    Unknown

22        3.    Lost income (to date, estimated):                 Unknown

23        4.    Future lost income/loss of earning capacity:      Unknown

24        5.    Property damage:                                  Unknown

25        6.    General damages (to date, estimated):             $ 10,000,000

26        7.    General damages (future):                         Unknown

27   Dated:  OCTOBER 30, 2007

28                                          _____
                                            AYANNA L. JENKINS-TONEY
                                            Attorney for Plaintiff ISOLINA PICON

PLD-PI-00

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| AYANNA L. JENKINS-TONEY,    CSB # 224847<br>225 BUSH STREET, 16 TH FLOOR<br>SAN FRANCISCO, CA 94104 | |

TELEPHONE NO: (415)464-4974    FAX NO. *(Optional):* (415)464-4975
E-MAIL ADDRESS *(Optional):* AYANNAJ@MSN.COM
ATTORNEY FOR *(Name):* ISOLINA PICON

**ENDORSED FILED**
**SAN MATEO COUNTY**

OCT 2 4 2007

Clerk of the Superior Court
By   R. Montgomery
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SAN MATEO
STREET ADDRESS: 400 COUNTY CENTER
MAILING ADDRESS: SAME
CITY AND ZIP CODE: REDWOOD CITY, 94603-1655
BRANCH NAME: RED WOOD CITY BRANCH

PLAINTIFF: ISOLINA PICON

DEFENDANT: County of San Mateo;Robert Foucrault,individually and
as Coroner, San Mateo County

[✓] DOES 1 TO  100

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[ ] **AMENDED** *(Number):*
Type *(check all that apply):*
[ ] **MOTOR VEHICLE**    [✓] **OTHER** *(specify):*
　　[✓] **Property Damage**    [ ] **Wrongful Death**
　　[✓] **Personal Injury**    [✓] **Other Damages** *(specify):* PUNITIVE

**Jurisdiction** *(check all that apply):*
[ ] **ACTION IS A LIMITED CIVIL CASE**
　　**Amount demanded**　[ ] does not exceed $10,000
　　　　　　　　　　　　[ ] exceeds $10,000, but does not exceed $25,000
[✓] **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**
[ ] **ACTION IS RECLASSIFIED** by this amended complaint
　　[ ] from limited to unlimited
　　[ ] from unlimited to limited

CASE NUMBER:

CIV 4 6 7 1 6 1

1. **Plaintiff** *(name or names):* ISOLINA PICON

   alleges causes of action against **defendant** *(name or names):*
   County of San Mateo; Robert Foucrault, individually and as Coroner, San Mateo County

2. This pleading, including attachments and exhibits, consists of the following number of pages: 17

3. Each plaintiff named above is a competent adult
   a. [ ] **except plaintiff** *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor　[ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*
   b. [ ] **except plaintiff** *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor　[ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | |

4. ☐ Plaintiff (name):

    is doing business under the fictitious name (specify):

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

  a. ☑ **except** defendant (name):
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity (describe):

    (4) ☑ a public entity (describe):
      County of San Mateo
    (5) ☐ other (specify):

  c. ☐ **except** defendant (name):
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity (describe):

    (4) ☐ a public entity (describe):

    (5) ☐ other (specify):

  b. ☐ **except** defendant (name):
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity (describe):

    (4) ☐ a public entity (describe):

    (5) ☐ other (specify):

  d. ☐ **except** defendant (name):
    (1) ☐ a business organization, form unknown
    (2) ☐ a corporation
    (3) ☐ an unincorporated entity (describe):

    (4) ☐ a public entity (describe):

    (5) ☐ other (specify):

  ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
  a. ☑ Doe defendants (specify Doe numbers): 1-100 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.
  b. ☑ Doe defendants (specify Doe numbers): 1-100 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):

8. This court is the proper court because
  a. ☑ at least one defendant now resides in its jurisdictional area.
  b. ☑ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
  d. ☐ other (specify):

9. ☑ Plaintiff is required to comply with a claims statute, **and**
  a. ☑ has complied with applicable claims statutes, **or**
  b. ☐ is excused from complying because (specify):

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☐ Motor Vehicle
   b. ☐ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☑ Other *(specify):*

   1)Breach of Mandatory Duty; 2)Breach of the Right To Control The Disposition Of The Remains Of A Deceased Person; 3)Negligent Infliction Of Emotional Distress

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☐ loss of use of property
   c. ☑ hospital and medical expenses
   d. ☑ general damage
   e. ☑ property damage
   f. ☐ loss of earning capacity
   g. ☑ other damage *(specify):*

   and will continue to suffer Severe Emotional Distress

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☑ compensatory damages
      (2) ☑ punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
   (1) ☑ according to proof
   (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: October 23, 2007

AYANNA L. JENKINS-TONEY
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 3 of 3

SHORT TITLE: PICON V. COUNTY OF SAN MATEO

CASE NUMBER:

FIRST CAUSE OF ACTION

DENIAL OF QUASI-PROPERTY RIGHT
THE RIGHT TO CONTROL THE DISPOSITION OF THE REMAINS OF A
DECEASED PERSON

Plaintiff Isolina Picon is the mother of Nicholas Picon, born October 6, 1983.

On October 25, 2006 Nicholas Picon died of natural causes.

On October 26, 2006 the Coroner's office of the County of San Mateo conducted an autopsy on the remains of Nicholas Picon. The Coroner's autopsy report is attached to this complaint as Exhibit A.

On the same day October 26, 2006, the cause of death was determined to be due to a congenital heart defect.

On October 26, 2006 an official or officials of the San Mateo County Coroner's office made the unilateral decision to retain the entire heart organ of the decedent Nicholas Picon without any attempt to notify his next of kin.

On October 30, 2006 the plaintiff had a funeral for her son Nicholas Picon in order to bury and lay to rest what she thought at the time was his intact remains.

On November 13, 2006 the plaintiff learned for the first time that her son's heart was retained by the Coroner's office of the County of San Mateo.

The plaintiff was denied the right to bury her son at the time chosen by the decedent's family.

The knowledge of the theft coupled with the grief she was enduring after the death of her son has caused and will continue to cause the plaintiff damage.

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___ 4

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

American LegalNet, Inc. | www.USCourtForms.com

SHORT TITLE: PICON V. COUNTY OF SAN MATEO

CASE NUMBER:

1    SECOND CAUSE OF ACTION

2    BREACH OF MANDATORY DUTY GOVERNMENT CODE § 815.6

3

4    On October 25, 2006 Nicholas Picon died in his home of natural causes.

5    On October 26, 2006 the Coroner's office of the County of San Mateo conducted an autopsy on the
6    remains of Nicholas Picon.

7    On October 26, 2006, the Coroner's office of the County of San Mateo retained the heart of the decedent
     Nicholas Picon. The Coroner's office retained the entire organ without any attempt to notify the
8    decedent's relatives. The Coroner's office retained the entire heart despite the fact that the cause of death
9    had been determined as being intramural tunneling, which is a congenital heart defect. The cause of death
     was given to the plaintiff on October 26, 2006 at the conclusion of the autopsy.
10

11   On November 13, 2006 two weeks after what the plaintiff believed was the burial of her son, she found
     out that the Coroner's office had retained her son's entire heart organ. The plaintiff was told initially that
12   the heart had been sent to Stanford University for research purposes. When the plaintiff was given this
13   information, in addition to being completely shocked, dismayed and outraged, she questioned the rights of
     the Coroner to give away or sell her son's entire heart without her permission. She was told that the law
14   did not require her permission to retain the organ. After being told that her son's heart was not with his
15   body when he was buried the plaintiff began what could only be categorized as a crusade to regain
     possession of her son's heart. The plaintiff was ultimately successful in doing so on November 21, 2006.
16   The agony she felt from the sudden death of her son was inextricably exacerbated upon stumbling on the
17   knowledge that his body was not intact at burial. The fact is that the defendants literally stole the heart of
     the decedent Nicolas Picon.
18

19   In doing so the defendants and each of them breached their mandatory duty owed to plaintiff within the
     meaning of Government Code Section 815. 6. This duty was breached when the County Coroner retained
20   the heart of the decedent and failed to comply with applicable rules, including but not limited to the rules
21   set forth in California Government Code Sections 27491.4 (a) and 27491.45 (a) (2), and Health and Safety
     Code Section 7150, et reg.
22

23   The breach of the mandatory duty owed to plaintiff caused her direct injury and she has suffered and will
     continue to suffer severe emotional distress.
24

25

26   *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line
     numbers)*:

27   This page may be used with any Judicial Council form or any other paper filed with the court.

     Page ___5___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

American LegalNet, Inc. | www.USCourtForms.com

SHORT TITLE: PICON V. COUNTY OF SAN MATEO

CASE NUMBER:

# THIRD CAUSE OF ACTION

## NEGLIGENCT INFLICTION OF EMOTIONAL DISTRESS

On October 26, 2006 the San Mateo County Coroner's office conducted an autopsy on the remains of Nicholas Picon.

At some point during the autopsy or at the conclusion of the autopsy the Coroner made the decision to remove and retain the entire heart organ of the decedent without prior consent, notification, or permission by the next of kin.

The Coroner in his official capacity had a duty owed to the plaintiff as next of kin.

The duty began when the Coroner took possession of the remains of the decedent.

This duty was breached when the remains were returned to the plaintiff without the heart organ.

The Coroner knew or should have known that the failure to return the heart was a breach of his obligations to plaintiff and would likely cause plaintiff to suffer emotional distress.

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___6___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

PLD-PI-001(6)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | |

## Exemplary Damages Attachment          Page ___7___

ATTACHMENT TO  [✓] Complaint   [ ] Cross - Complaint

EX-1.  As additional damages against defendant *(name):*
        ROBERT FOUCRAULT individually and as Coroner San Mateo

Plaintiff alleges defendant was guilty of
[✓]  malice
[✓]  fraud
[✓]  oppression
as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages
to make an example of and to punish defendant.

EX-2.  The facts supporting plaintiff's claim are as follows:

This Exemplary Damages Attachment incorporates each of the preceding causes of action not
negligence as though set forth in full.
On October 26, 2006 the San Mateo county coroner's office conducted an autopsy on Nicholas
Picon. Nicholas Picon was the natural born son of the plaintiff Isolina Picon.
On October 26, 2006, the Coroner's office of San Mateo County told the plaintiff that the remains
of her son Nicholas Picon were released to the funeral home.
On October 30, 2006, plaintiff buried what she thought was the intact remains of her son Nicholas
Picon.
On November 13, 2006, plaintiff found out that she had not buried her son's body intact. The same
day plaintiff requested an autopsy report.
On November 14, 2006, plaintiff went to the district attorney's office in person to report the theft
of her son's heart.
On November 16, 2006, plaintiff was informed that the coroner had the legal rights to the heart
that the law vested the authority in the Coroner solely to determine the disposition of deceased
remains.
Only after repeated phone calls and pleas for the return of her son's heart did the plaintiff regain
possession of the heart on November 21, 2006, at 5:30 pm.
Plaintiff was misled to believe that she had been given her son's remains. Plaintiff was
intentionally misinformed by the county coroner and county counsel about the law as it pertains to
organ retention. Plaintiff was forced to make repeated attempts to regain custody of her son's stolen
heart through numerous pleas and calls.
The Coroner's office intentionally released the plundered body of Nicholas Picon to the funeral
home without notifying the next of kin that the entire heart organ was retained.
The plaintiff was reduced to daily begging from November 13 - November 21, 2006, the time
period between the knowledge of the theft and the recovery of the heart organ.
Plaintiff was repeatedly and callously, rebuffed, turned away, and given false information during
the aforementioned time period.

EX-3.  The amount of exemplary damages sought is
        a. [✓]  not shown, pursuant to Code of Civil Procedure section 425.10.
        b. [ ]  $

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(6) [Rev. January 1, 2007]

**Exemplary Damages Attachment**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

MC-031

| | |
|---|---|
| PLAINTIFF/PETITIONER: Isolina Picon | CASE NUMBER: |
| DEFENDANT/RESPONDENT: County of San Mateo;Robert Foucrault | |

## DECLARATION

*(This form must be attached to another form or court paper before it can be filed in court.)*

VERIFICATION

I, Isolina Picon hereby declare, that my son Nicholas Picon died in our home on October 25, 2006. I was informed on October 26, 2006 that my son died of a congenital heart defect called intramural tunneling of the heart I was given this information by the San Mateo Coroner's office at the conclusion of his autopsy.

I buried what I believed at the time to be the intact remains of my son on October 30, 2006. The funeral gave me a sense of purpose in that I was honoring my sons' remains and laying him to rest. It was the start of what I thought at the time to be the process of closure.

I was heartbroken at the loss of my son but I knew that I had to be strong for my family especially my husband and my daughter. I reasoned that due to that fact that my son died of natural causes in his own home that while tragic it was as peaceful a way to depart this earth as I could imagine otherwise.

I began to cope with my grief by seeking out my sons' friends and others who had suffered similar loss. It was during this search for answers and guidance that I stumbled upon the gross discovery that the San Mateo County Coroner's office had unbeknownst to me "stolen" the heart of my son, literally taking it from his body. This news completely rocked me to the core. It literally brought me to my knees. It destroyed me. I have not been the same person since finding out this information. As if finding out the information could have been any worse I was then forced to quite literally "beg" and plead with the San Mateo County Chief Deputy Coroner Thomas Marriscolo to return my sons heart to me. I cried. I pleaded with him and he keep telling me that I could not have my son's heart back. He told me that it had been sent to Stanford University for studying, he told me that I could not have it for health and safety reasons, he told me that I would have to pay to have my sons body exhumed and have the heart put back with the rest of his remains. He very coldly said that I could not have my son's heart back and that he would not speak to me again until he spoke with County counsel and then he hung up the phone abruptly in my face!

Still I begged, still I pleaded and finally on November 21, 2006, over a week later my sons' heart the heart that I nurtured and grew in my own womb was returned to me. The entire ordeal has caused me to have nightmares about my sons' heart being ripped from his body, callously stored and other outrageous thoughts that I cannot even begin to describe.

One of them being the fear that the heart that I was given is not my son's heart at all.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 23, 2007

Isolina Picon
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☑ Other *(Specify):*
PLAINTIFF

Form Approved for Optional Use
Judicial Council of California
MC-031 [Rev. July 1, 2005]

**ATTACHED DECLARATION**

Page 8

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT A

# SAN MATEO COUNTY CORONER'S OFFICE

## PATHOLOGY REPORT

CASE No. 06-2533-A

NAME:  PICON, Nicholas           SEX: Male        AGE:  23 years

Death Time & Date: Pronounced 1640 hours, 10-25-06

Time & Date of Exam: 0830 hours, 10-26-06

Autopsy Surgeon: Peter A. Benson, M.D., performed at San Mateo Medical Center, 222 W. 39th Avenue, San Mateo, CA 94403

## CAUSE OF DEATH

I. Disease or Condition directly leading to death:

  A.  Probable cardiac dysrhythmia

  due to

  B.  Intramural tunneling of left anterior descending coronary artery

  due to

  C.

  due to

  D.

II. Other significant conditions contributing
   but not related to the immediate cause of death:

DOCUMENT NOT AS SCANNED

TO ISOLINA PICON
SAN MATEO COUNTY CORONER
BY KG    DATE 11/27/06

## DIAGNOSES:

I.   Intramural tunneling of left anterior descending coronary artery (also called
     myocardial coronary bridging - up to 5 mm deep over a 20 mm tunnel)
     A.  Focal fibrosis in right ventricular endocardium
     B.  Sudden collapse per scene investigation, consistent with cardiac
         dysrhythmia – moderate dilatation of right atrium

[Continued]

## SAN MATEO COUNTY CORONER'S OFFICE

## AUTOPSY REPORT

NAME: PICON, Nicholas                                    CASE No. 06-2533-A

PROLOGUE: Written information available to the Forensic Pathologist prior to the autopsy is contained in a six-page Investigation Report by Investigator Gamble. Also received with the body is a digital photographic disk.

This autopsy begins in the Coroner's morgue at San Mateo Medical Center at 0830 hours and concludes at 1000 hours, Thursday, October 26, 2006. Assisting at the autopsy is Holly Benedict, Forensic Autopsy Technician.

## IDENTIFICATION

An identification tag present on the right foot is signed by Investigator Gamble ("Nicholas Picon").

## EXTERNAL EVIDENCE OF THERAPEUTICS AND/OR ATTEMPTED RESUSCITATION

Four EKG electrodes are present on the trunk.

There is a 3 mm long pale linear scar below and lateral to the left kneecap.

## EXTERNAL EXAMINATION

Present on a gurney in the morgue, and wrapped in a white plastic wrap, is the supine body of a white/Hispanic adult male whose appearance is consistent with the given age of 23 years. The body measures 66 inches in length and weighs 132 pounds (the length and net weight are determined by Holly Benedict, Forensic Autopsy Technician).

Clothing: None. The body is nude.

There is full rigor mortis. Postmortem lividity is noted in the posterior portions of the body.

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1   On the face is a coating of white soap or lotion, now dried, located on the nose,
2   cheeks, and chin. On the scalp is straight, black hair measuring up to 6 inches in
3   length. On the face are a trimmed beard and moustache with the hairs measuring
4   approximately 1/2 inch in length. The sclerae are white and irides are brown. The
5   pupils are round and equal and each measures 5 mm in diameter. Rare bulbar
6   conjunctival petechiae are seen bilaterally, but no petechiae are seen in the
7   palpebral conjunctival surfaces, or the facial skin. No tache noire is seen on the
8   bulbar surfaces. The jaws show natural teeth, the biting edges of which are
9   separated approximately 1/2 inch apart. No bite marks are seen in the lips or
10  anterior visible tongue. The nasal septum is grossly normal. The oral cavity is free
11  of fluid or foreign material. The hard palate is noted to have a high arch. The
12  earlobes are unremarkable. The trachea is in the midline. The chest hair is scanty
13  but appears shaved. The abdomen is flat. No surgical scars are seen on the
14  abdomen. The penis is uncircumcised. The testes are present within the scrotum.
15  The fingernails are uniformly short and appear cut or bitten to the quicks. There is
16  no clubbing of the digits. The posterior portions of the body are unremarkable. No
17  pitting edema of the ankles is found.
18
19  **EXTERNAL EVIDENCE OF INJURY**
20
21  No injury is seen. No recent or old needle puncture mark is identified.
22
23
24  **INTERNAL EXAMINATION**
25
26  Following the external examination, the body is opened with the usual Y-shaped
27  incision. The color of the skeletal muscles is unremarkable. The ribs are intact and
28  the pleural cavities are unremarkable. There is no evidence of pneumothorax or
29  pleural effusions. The pre-peritoneal fat measures 3/4 of an inch in thickness, two
30  inches below the level of the umbilicus. The peritoneal surfaces are normal. The
31  spinal column appears normal.
32
33  **INTERNAL EVIDENCE OF INJURY**
34
35  No traumatic injuries are seen in the internal organs.
36
37  **INTERNAL EVIDENCE OF THERAPY**
38
39  None is seen.
40
41

2

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1  ## SYSTEMS EXAMINATION
2
3  **THYMUS:** The thymus, which overlies the great vessels at the base of the heart,
4  weighs 50 grams. There are numerous scattered tiny petechiae-like hemorrhages
5  throughout the thymus.
6
7  **HEART:** The pericardial and epicardial surfaces are smooth and glistening.
8  Within the pericardial sac are 20 mL of clear straw-colored fluid, which is
9  removed and discarded. The pulmonary artery is opened in situ and palpated for
10 thromboemboli and none is found. The right atrium appears moderately dilated.
11 Blood is aspirated from the right side of the heart for a toxicologic sample. The
12 heart weighs 300 grams. The predicted normal heart weight based on sex and
13 height is 308 grams (range 218 to 435 grams) and based on sex and weight is 302
14 grams (range 229 to 399 grams).* The coronary arteries originate normally from
15 the aorta; they are sectioned at closely-placed intervals revealing small vessels
16 without evidence of calcification, atherosclerosis, mural hemorrhage, or luminal
17 thrombus. The left anterior descending artery is noted to tunnel into the muscle of
18 the anterior wall of the left ventricle over a 20 mm length, and up to 5 mm in
19 depth near the central portion of the tunnel. The heart is opened along the flow of
20 blood. The right ventricle measures up to 3 mm and the left ventricle measures up
21 to 15 mm in thickness. The heart valves are unremarkable. The heart valve
22 circumferences measure as follows: tricuspid 12.5 cm, pulmonic 7 cm, mitral 8.5
23 cm, and aortic 5.5 cm. There is no evidence of rheumatic disease, mitral prolapse
24 or vegetations. The endocardial surfaces are smooth and glistening. The
25 myocardium is normal, with no gross evidence of necrosis or scarring. No
26 auricular or endocardial clots are seen. The foramen ovale is closed.
27
28 The formalin-fixed heart is re-examined on 10-29-06, and two Polaroid
29 photographs are taken. Below the pulmonary valve, the anterior wall of the right
30 ventricle shows a pocket-like diverticulum. The opening measures 7 x 12 mm, and
31 the pocket is 15 mm deep. This diverticulum is located beneath the course of the
32 right coronary artery. Also noted is a 5 mm patch of endocardial fibrosis on the
33 septal wall of the right ventricle near the apex.
34
35 **LUNGS:** The right lung weighs 310 grams and the heavier left lung weighs 370
36 grams. Both lungs show pink and crepitant parenchyma in the anterior portions
37 and a slight degree of generalized congestion which is most prominent in the
38 posterior dependent portions. There is a slight degree of irregularity in the aeration

---

* **Reference:** Mayo Clinic Proceedings 63: 1237 - 1246, 1988. Kitzman, D. et al. Age-related changes in normal human hearts during the first 10 decades of life, Part II (Maturity): A quantitative anatomic study of 765 specimens from subjects 20 to 99 years old.

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1  of the anterior portion of the right lung. There is spotty black anthracotic pigment
2  over the pleural surfaces of both lungs. No discrete area of consolidation is found.
3  There is no evidence of aspiration of gastric contents. The bronchial tree is free of
4  fluid or foreign material. No thromboembolus is seen. The hilar lymph nodes are
5  grossly unremarkable. No aromatic or alcohol-like odor is detected.
6
7  NECK ORGANS: The neck organs are examined towards the conclusion of the
8  autopsy and they appear grossly normal. The thyroid gland is normal in size and
9  shape, and the airway is clear. The hyoid bone, thyroid cartilage and cricoid
10 cartilage are intact. The carotid arteries are left intact at the conclusion of the
11 autopsy to assist the mortician. The cervical spine is grossly intact. The strap
12 muscles of the neck are atraumatic.
13
14 LIVER: The liver weighs 1400 grams. The liver is grossly normal.
15
16 GALLBLADDER: The gallbladder and bile ducts are grossly normal. There is
17 no evidence of gallstones or duct obstruction.
18
19 SPLEEN: The spleen weighs 180 grams. The spleen shows unusual lobulation
20 with several triangular depressions of the capsule resulting in "dog-ear"-like
21 triangular lobes. The capsule is thin and intact, and the parenchyma has a uniform
22 dark red color and normal consistency.
23
24 PANCREAS: The pancreas is unremarkable. There is no evidence of hemorrhagic
25 inflammation, fat necrosis or calculi.
26
27 GASTROINTESTINAL TRACT: There is no palpable evidence of a hiatus
28 hernia. The esophagus is normal. Within the stomach are approximately 15 grams
29 of mucoid fluid. No pills or capsules are seen and there is no chemical gastritis.
30 The mucosal surfaces of the esophagus, stomach, and duodenum are intact. No
31 ulcer or ulcer scar is seen and there is no gross evidence of gastrointestinal
32 bleeding. The small intestine, appendix and large intestine are unremarkable. No
33 intestinal foreign body is detected.
34
35 ADRENALS: The adrenal glands are grossly normal in size, shape, and color.
36
37 UROGENITAL SYSTEM: The right kidney weighs 110 grams and the left
38 kidney weighs 150 grams. The thin capsules strip with ease from the smooth renal
39 surfaces. Both kidneys show a moderate degree of generalized congestion. The
40 ureters are normal in caliber. The urinary bladder contains approximately 50 mL

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1   of yellow urine. A Bayer Diastix is negative for glucose. The prostate and testes
2   are grossly normal.
3
4   AORTA: The aorta is unremarkable.
5
6   CENTRAL NERVOUS SYSTEM: By means of a bi-temporal incision, the scalp
7   is reflected. There is no evidence of scalp trauma and specifically, no bruise is
8   seen in the posterior neck or occipital areas. There is no evidence of skull fracture
9   and the dura is subsequently stripped from the internal aspect of the skull for
10  confirmation. The calvarium is removed in the usual fashion by the Forensic
11  Autopsy Technician. The calvarium is normal in color, thickness, and consistency.
12  The brain weighs 1380 grams. The cerebellum and brainstem contribute 200
13  grams to the total brain weight. The dura and leptomeninges are unremarkable.
14  The arteries at the base of the brain are thin and delicate. The brain is symmetrical
15  and shows no focal lesions. There is no herniation of the cerebellar tonsils or unci.
16  The brain is sectioned in the fresh state by means of closely-placed coronal
17  sections and no unusual features are detected. There is no evidence of
18  hydrocephalus. The substantia nigra is normally pigmented. The pituitary gland is
19  unremarkable. The foramen magnum and dens are grossly normal.
20
21  **DIAGRAMS ATTACHED**
22
23  One-page.
24
25  **TISSUE SPECIMENS**
26
27  Specimens are retained in 10% buffered formalin for diagnostic purposes. The
28  cardiac specimen is retained to permit further detailed examination.
29
30  Sections taken on 10-29-06:
31
32            1. Tunneled left anterior descending coronary artery
33            2. Right ventricular endocardium
34            3. Right and left ventricular myocardium
35
36  **PHOTOGRAPHS**
37
38  An identification Polaroid photograph is taken by the Forensic Autopsy
39  Technician and sent to the Coroner's Office. Two Polaroid photographs of the
40  heart are taken on 10-29-06.
41

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1   <u>TOXICOLOGY AND/OR CHEMISTRY</u>
2
3   Submitted to Central Valley Toxicology are samples of pulled scalp hair, aspirated
4   femoral peripheral blood, bladder urine, gallbladder bile, stomach contents, liver
5   tissue, kidney tissue, brain tissue, and a vitreous humor sample taken at 0925
6   hours.
7
8   Retained in the morgue: heart blood.
9
10  <u>MICROSCOPIC</u>
11
12  Four H&E slides are received from Histo-Tec Laboratory on 11-8-06.
13
14  Subtle histologic findings include rare round cells in epicardial fat, rare minute
15  foci of interstitial round cells, and focal minimal myocardial nuclear enlargement.
16
17  No smudged cross striations, cellular reaction to infarction, contraction band
18  necrosis, intramural vascular sclerosis, or interstitial fibrosis is seen in these
19  samples.
20
21  Sections from the left anterior descending artery include tissue from the
22  myocardial bridge (some histologic malorientation is present).
23
24  Sections of the right ventricle show focal endocardial fibrosis and thickening.
25
26
27  EPILOGUE AND OPINION: The main autopsy findings were limited to the
28  heart. The presence of the left anterior descending coronary artery in a myocardial
29  tunnel (also known as myocardial coronary bridging) is thought to result in cardiac
30  ischemia during systole, and that focal myocardial ischemia can lead to a fatal
31  dysrhythmia.
32
33  While this recognized condition is subject to some controversy in the medical
34  literature, the history and findings in this case are consistent with this mechanism.
35  The unusual diverticulum in the right ventricular wall is most unusual and of
36  questionable or doubtful physiologic significance.
37
38  Reference:
39
40  Virmani, R., Farb, A., Burke, A.P., Ischemia From Myocardial Coronary
41  Bridging: Fact or Fancy?, Human Pathol., Vol. 24, pp 687 – 688, 1993.

6

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1
2                                                      END OF REPORT
3
4      _Peter A. Benson signature_
5      Peter A. Benson, M.D.
6      Forensic Pathologist
7
8      PAB:as
9      D: 10-26-06
10     T: 10-26-06

2

# NOTICE OF CASE MANAGEMENT CONFERENCE

*Picon*

vs.

*San Mateo*

**ENDORSED FILED**
~~SAN MATEO COUNTY~~

OCT 2 4 2007

Clerk of the Superior Court
By ___R. Montgomery___
DEPUTY CLERK

Case No. ___CIV 4 6 7 1 6 1___

Date: ___MAR 5 2008___

Time: 9:00 a.m.

Dept. 2 — on Tuesday & Friday
Dept. 8 — on Wednesday & Thursday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a. **Serve** all named defendants and file proofs of service on those defendants with the court within **60 days** of filing the complaint (CRC 3.110).
   b. **Serve** a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c. **File and serve** a completed Case Management Statement at least **15 days** before the Case Management Conference [CRC 3.725]. Failure to do so may result in monetary sanctions.
   d. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than **30 days** before the date set for the Case Management Conference.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. Continuances of case management conferences are highly disfavored unless good cause is shown.
4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed** stipulation to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.
5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.
6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.
7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a. Referring parties to voluntary ADR and setting an ADR completion date;
   b. Dismissing or severing claims or parties;
   c. Setting a trial date.
8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

**3**

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY



8

9

10                 IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      IN AND FOR THE COUNTY OF SAN MATEO

12

13 ISOLINA PICON                          Case No. 467161

14          Plaintiffs,                   **COUNTY OF SAN MATEO'S NOTICE OF
                                          EX PARTE APPLICATION AND
15     vs.                                APPLICATION FOR EXTENSION OF
                                          TIME TO RESPOND TO COMPLAINT OF
16 COUNTY OF SAN MATEO, ROBERT            ISOLINA PICON**
   FOUCRAULT, individual and as Coroner, SAN
17 MATEO COUNTY                                        Hearing:

18          Defendants.                   Date:    December 14, 2007
                                          Time:    2:00 pm
19                                        Dept:    Law and Motion

20

21

22

23

24

25

26

27

28

1    PLEASE TAKE NOTICE THAT ON DECEMBER 14, 2007 at 2:00 p.m. in the Superior Court

2  of the County of San Mateo, Law and Motion Department at 400 County Center, Redwood City.

3  Defendant, County of San Mateo will seek an EX PARTE ORDER extending the County's time to

4  respond to the Compliant of Plaintiff, ISOLINA PICON.

5    This EX PARTE Application is based this Notice on the accompanying Memorandum of Points

6  and Authorities, the Declaration of Rebecca M. Archer in Support of Ex Parte Application.

7

8

9  Dated:  December 12, 2007                    Respectfully submitted,

10                                             MICHAEL P. MURPHY, COUNTY COUNSEL

11

12                                             By: _____

13                                                  Rebecca M. Archer, Deputy

14                                             Attorneys for Defendants
                                               COUNTY OF SAN MATEO, ROBERT
15                                             FOUCRAULT, individuall and as Coroner, SAN
                                               MATEO COUNTY
16

17  L:\LITIGATE\P_CASES\PICON\Ex Parte Application for Extension of Time.doc

18

19

20

21

22

23

24

25

26

27

28

—————————————————————————————————————
2
COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO
COMPLAINT OF ISOLINA PICON

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SAN MATEO

12

13  ISOLINA PICON                        Case No. 467161

14         Plaintiffs,                   COUNTY OF SAN MATEO'S
                                         MEMORANDUM OF POINTS AND
15     vs.                               AUTHORITIES IN SUPPORT OF EX
                                         PARTE APPLICATION FOR EXTENSION
16  COUNTY OF SAN MATEO, ROBERT          OF TIME TO RESPOND TO COMPLAINT
    FOUCRAULT, individual and as Coroner, SAN   OF ISOLINA PICON
17  MATEO COUNTY

18         Defendants.

19

20                      I.    INTRODUCTION

21         Defendants, County of San Mateo and Robert Foucrault (collectively the "County") requested

22  that plaintiff's attorney, Ayanna L. Jenkins-Toney grant it a short four day extension to respond to the

23  complaint due to County Counsel's 36 week pregnancy, impending maternity leave and unexpected

24  urgent matters that had recently arisen.  Ms. Jenkins-Toney refused unless the County would agree only

25  to answer the complaint and not file any other responsive pleading.  The County, therefore, requests that

26  the Court intervene and grant the County a short extension of time to respond to plaintiff's complaint,

27  currently due on December 17, 2007.

28

ENDORSED FILED
SAN MATEO COUNTY
DEC 1 4 2007
Clerk of the Superior Court
By M. MARLOWE
DEPUTY CLERK

## II.     STATEMENT OF FACTS

Plaintiff, Isolina Picon, by and through her attorney Ayanna L. Jenkins-Toney, served her complaint on the County on November 16, 2007.  Prior to Monday, December 10, 2007, the County had every intention of timely responding to the Complaint on December 17, 2007.  Counsel for the County, Deputy County Counsel Rebecca M. Archer, is 36 weeks pregnant and preparing to go out on maternity leave at the end of the year and a number of urgent matters arose during the weeks of December 3 and 10 necessitating an extension to respond to the complaint.  (Declaration of Rebecca M. Archer in Support of Ex Parte Application ("Archer Decl.") at ¶¶1-2.)  As a result Counsel requested a short, four day extension from Ms. Jenkins-Toney to respond to plaintiff's complaint up until and including December 21, 2007.  (*Id.* at p 2.)  County Counsel first made this request on Monday, December 10, 2007 via telephone.  (*Id.* at ¶ 3.)  Ms. Jenkins-Toney did not return her call.  Counsel renewed her request on Tuesday, December 11, 2007 by phone.  Ms. Jenkins-Toney again failed to return her call.  Counsel then sent an email and a facsimile request to Ms. Jenkins-Toney that same day.  (*Id.* ¶ 4 at Exh. A)  Ms. Jenkins-Toney still did not respond.  County Counsel urgently renewed the request by phone on December 12, 2007 stating that because the date was imminent she needed an immediate response and explaining the reason she needed an extension.  Ms. Jenkins-Toney finally returned that call at approximately 12:45 p.m. on December 12, 2007.  (*Id.* at ¶ 5.)  However, Ms. Jenkins-Toney refused to grant County Counsel's reasonable request for an extension to respond to the complaint and instead stated that she would only agree to an extension *if* the County were only to *answer* the complaint and not file any other kind of responsive pleading.  Despite attempts by County's Counsel to point out the unreasonableness of such a condition, Ms. Jenkins-Toney insisted that it was the only way she would agree to an extension.  (*Id.*)

County's Counsel then called Ms. Jenkins-Toney at approximately 1:15 p.m. and informed her that the County would go in ex parte to request an extension to respond to the complaint.  County's Counsel also sent a facsimile letter notifying Ms. Jenkins-Toney of her intent to go in ex parte and renewed her request to Ms. Jenkins-Toney for a reasonable four day extension that would in no way prejudice her client's rights.  (*Id.* at 18; Exh. C.)  County's Counsel referred Ms. Jenkins-Toney to the State Bar's Guidelines of Civility and Professionalism, Section 6 which states that an attorney should

1   agree to reasonable requests for time that are not adverse to a client's interests. (Id. Exh. D.)

2       At approximately 1:21 p.m. Ms. Jenkins-Toney sent County Counsel a facsimile letter stating that

3   she would not agree to an extension because she did not believe it would be in her client's best interests

4   "to agree to an extension so that the County could better prepare some adversarial motion, etc., against

5   my client beyond the established customary time." (Id. at Exh. B.)

6                               III.    ARGUMENT

7       The County's request for an extension of time to respond to plaintiff's complaint is reasonable

8   and within the customary professional courtesies exchanged among civil professionals.  Indeed, the

9   request for a very short extension of 4 days is well below the customary request of 15 to 30 days often

10  requested as a matter of course in responding to a complaint civil litigation.  Moreover, County's

11  Counsel has a valid rationale for requesting the time extension -- that is the press of other emergency

12  business of the County that has prevented her from turning to this matter sooner as well as her impending

13  maternity leave which has created an urgency in other matters under her supervision.  County's Counsel

14  has requested a mere four days extension to attend to *other matters*, not to allow her added time to further

15  develop arguments against plaintiff's complaint.  The County assures the Court that the arguments are

16  well developed and need only be finalized on paper.  But for her 36 week pregnancy, and several

17  emergency matters that arose in the past weeks, the extension would not be necessary.

18      Ms. Jenkins-Toney's rationale for refusing an extension of time does a disservice to the Court.

19  She says that it is not in her client's interest to allow extra time for the County to "better prepare some

20  adversarial motion, etc against my client."  She is essentially saying that she does not want a well

21  researched and thoughtful motion, but would rather use her power to refuse an extension to ensure that

22  essential arguments and issues are not put before the Court that may shed light on the weaknesses of her

23  case.  Such gamesmanship runs directly contrary to the interests of justice.  Either Ms. Jenkins-Toney can

24  support her client's claims or she cannot.  Whether the County has an extra few days to advance its

25  arguments should not affect the ultimate strength or weakness of her case.

26      The concern of County's Counsel here is not whether a responsive pleading will be timely and

27  well written by the County, but rather whether other pressing work of the County will be timely

28  accomplished due to the advanced state of her pregnancy.  County's Counsel is further dismayed that

such a reasonable professional courtesy is not granted so early in the litigation as it indicates that Ms. Jenkins-Toney intends to elevate form over substance and engage in gamesmanship in advancing important legal arguments for the Court's consideration.

Finally, Ms. Jenkins-Toney ignores the State Bar's guidelines of professional conduct which make clear that attorneys should be reasonable in scheduling matters in order to avoid unnecessary intervention of the courts in matters that should be easily agreed to among adult professionals. Section 6 of the California Attorney Guidelines of Civility and Professionalism clearly state "Consistent with existing law and court orders, an attorney should agree to reasonable request for extensions of time that are not adverse to a client's interests." (Archer Decl. at Exh. D.) The examples in the guidelines go on to state "a. Unless time is of the essence, an attorney should agree to an extension without requiring motions or other formalities … e. An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions." (Id.)

///
///
///
///
///
///
///
///
///
///
///
///
///
///

COUNTY OF SAN MATEO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON

IV.    CONCLUSION

County Counsel's request for a short extension up until and including December 21, 2007 is not unreasonable and should have been allowed by Ms. Jenkins-Toney as a professional courtesy given that it does not in any way prejudice her client's rights and interests in any way.  As counsel was not able to reason with Ms. Jenkins-Toney, it requests that the Court intervene and grant a 15 day extension to respond to the complaint, up until and including January 2, 2008.  In the alternative, the County requests the original 4 day extension requested of Ms. Toney-Jenkins up until and including December 21, 2007.

Dated:                                                    Respectfully submitted,

MICHAEL P. MURPHY, COUNTY COUNSEL

By: _____
Rebecca M. Archer, Deputy

Attorneys for Defendants
COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individuall and as Coroner, SAN
MATEO COUNTY

L:\LITIGATE\P_CASES\PICON\Pleadings\MPA re Ex Parte Application for Extension of Time.doc

COUNTY OF SAN MATEO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX
PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA
PICON

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6ᵗʰ Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   IN AND FOR THE COUNTY OF SAN MATEO

12

13  ISOLINA PICON                          Case No. 467161

14          Plaintiffs,                    DECLARATION OF REBECCA M.
                                           ARCHER IN SUPPORT OF COUNTY OF
15     vs.                                 SAN MATEO'S EX PARTE APPLICATION
                                           FOR EXTENSION OF TIME TO RESPOND
16  COUNTY OF SAN MATEO, ROBERT            TO COMPLAINT OF ISOLINA PICON
    FOUCRAULT, individual and as Coroner, SAN
17  MATEO COUNTY

18          Defendants.

19

20          I, Rebecca M. Archer, am a Deputy County Counsel with the Office of County Counsel for the

21  County of San Mateo.  This Office represents Defendants the County of San Mateo and Robert

22  Foucrault, individual and as Coroner, San Mateo County in this action.   This Declaration is respectfully

23  submitted in support of Defendants' Application for Extension of Time to Respond to Complaint.

24          1. I am 36 weeks pregnant and plan to go on maternity leave at the end of the year.  I am Counsel

25  to five County Departments and handle 4-6 active litigation matters at any given time.  I am in the

26  process of trying to wind up a number of different projects in preparation for my maternity leave.

27          2. During the week of December 3, and 10, 2007 a number of urgent issues arose related to my

28  duties as Counsel to the Housing Department as well as to the Human Services Agency Special

ENDORSED FILED
SAN MATEO COUNTY

DEC 1 4 2007

Clerk of the Superior Court
By ___M. MARLOWE___
DEPUTY CLERK

1  Immigrant Juvenile duties, in addition to having to continue my daily role as advisor to other department

2  and ongoing litigation. Due to my pregnancy and imminent due date my physical resources are limited.

3  As a result I contacted Ms. Jenkins-Toney, counsel for plaintiff in the above captioned matter to request a

4  short extension, as soon as it became apparent that the December 17, 2007 deadline would be difficult for

5  me to meet.

6      3. On Monday, December 10, 2007 I called Ms. Jenkins-Toney and requested a short, four day,

7  extension to respond to the complaint, up until and including December 21, 2007. Ms. Jenkins-Toney

8  did not return my call on that day.

9      4. On December 11, 2007 I again called Ms. Jenkins-Toney and reiterated my request explaining

10  that her immediate response was requested as time was of the essence. When several hours went by

11  without hearing from Ms. Jenkins-Toney, I sent her an email and a facsimile letter reiterating my request

12  and informing her that I had been unable to reach her by phone. Ms. Jenkins-Toney did not call me on

13  December 11, 2007. A true and correct copy of my December 11, 2007 correspondence is attached

14  hereto as Exhibit A.

15      5. The morning of December 12, 2007 I again called Ms. Jenkins-Toney to request an extension

16  and explained that the reason I needed the extension related to the press of urgent work and my

17  impending maternity leave and advanced pregnancy. At approximately 12:45 p.m. on December 12,

18  2007 Ms. Jenkins-Toney returned my call and informed me that she would only grant me an extension to

19  answer her client's complaint and not to file any other responsive pleading. I attempted to reason with

20  Ms. Jenkins-Toney informing her that as a general rule professional courtesies were not conditioned on

21  agreeing to waive a client's rights, but rather were granted as a courtesy to another professional. Ms.

22  Jenkins-Toney continued to refuse my four day request necessitating this motion.

23      6. At approximately 1:15 p.m. I again called Ms. Jenkins-Toney to inform her that I intended to

24  make an ex-parte motion to request an extension of time on Friday, December 12, 2007 at 2:00 p.m. Her

25  receptionist informed me that she was not in the office, so I left a voicemail.

26      7. At approximately 1:21 p.m. I received a facsimile letter from Ms. Jenkins-Toney confirming

27  our conversation that she would *only* grant me an extension if I would agree that the only responsive

28  pleading I would file would be an answer and stating that her rationale for not granting me an extension

1  was that it was not in her client's best interests "to agree to an extension so that the County could better

2  prepare some adversarial motion, etc., against my client beyond the established customary time." A tru

3  and correct copy of that December 12, 2007 facsimile is attached hereto as Exhibit B.

4       8.  That same afternoon of December 12, 2007 I sent Ms. Jenkins-Toney two facsimile letters

5  informing her that I intended to seek an ex-parte order requesting an extension of time to respond to the

6  complaint and renewing my request that she grant me the extension as a professional courtesy.  The

7  second letter was sent because I failed to include the time of the ex-parte hearing and department in the

8  first missive. In both letters, I referred her to the State Bar of California's Guidelines of Civility and

9  Professionalism, Section 6 which states that an attorney should agree to reasonable requests for time that

10  are not adverse to a client's interests.  True and correct copies of my December 12, 2007 correspondence

11  are attached hereto as Exhibit C.  A true and correct copy of Section 6 of the State Bar of California's

12  Guidelines of Civility and Professionalism is attached hereto as Exhibit D.

13       I declare under penalty of perjury under the laws of the State of California that the foregoing is

14  true and correct.  If called upon, I could competently testify thereto.  Executed this 14th day of December

15  2007.

17  Rebecca M. Archer

18  L:\LITIGATE\P_CASES\PICON\Pleadings\Archer Dec ISO Ex Parte Application for Extension of Time.doc

**EXHIBIT A**

Rebecca M. Archer - Isolina Picon Matter

**From:**    Rebecca M. Archer
**To:**    ayannaj@msn.com
**Date:**    12/11/2007 12:35 PM
**Subject:**    Isolina Picon Matter

Ayanna L. Jenkins
Law Offices of Ayanna L. Jenkins-Toney
225 Bush Street, 16th Floor
San Francisco, CA 94901

VIA EMAIL  (415) 464-4975

Dear Ms. Jenkins-Toney,

I would like to request a short extension of the County's time to respond to Isolina Picon's complaint, case No. 467161 pending in the San Mateo Superior Court.  Our current response is due on December 17, 2007.  An extension of 15 days would be ideal (up until January 2, 2008), but I would also be happy if you would agree to a short 4 day extension up until and including December 21, 2007.  As our last day to respond is fast approaching and I have been unable to reach you by telephone, I would appreciate an immediate response by telephone, fax or email that you will agree to one of the above extensions.  For your convenience, my email is rmarcher@co.sanmateo.ca.us.  Thank you for your professional courtesy in this matter.

Very truly yours,
Rebecca M. Archer


Rebecca M. Archer
Deputy County Counsel
County of San Mateo
400 County Center 6th Floor
Redwood City, CA 94063-1662

Tel: (650) 363-4686
Fax: (650) 363-4762

**EXHIBIT B**

LAW OFFICES OF
Ayanna L. Jenkins -Toney, Esq.                    FAX#(415) 464-4975

## FAX TRANSMITTAL

| TO:  County Counsel Of San Mateo | FROM: Ayanna L. Jenkins Toney, Esq. |
|---|---|
| FAX# | DATE: DECEMBER 12, 2007 |

# OF PAGES INCLUDING COVER  _2_

Re: Isolina Picon v. San Mateo County, et al. #467161

Truly,
Ayanna L. Jenkins-Toney

## CONFIDENTIALITY NOTICE

The documents accompanying this facsimile transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile information is strictly prohibited. If you have received this facsimile in error, please notify us by telephone to arrange for the return of the original documents to us.

LAW OFFICES OF
AYANNA L. JENKINS TONEY, ESQ.

225 BUSH STREET
16TH FLOOR
SAN FRANCISCO, CA 94104
(415) 439-8388 OFFICE
(415) 439-8304 FAX

AyannaJ@msn.com

700 LARKSPUR LANDING CIRCLE
SUITE 199
LARKSPUR, CA 94939
(415) 464-4974 OFFICE
(415) 464-4975 FAX

December 12, 2007

County Counsel
County Of San Mateo
Hall of Justice And Records, 6th floor
400 County Center
Redwood City, CA 94603-1662

Re: Picon, Isolina v. San Mateo County, et al. # 467161

Dear County Counsel of San Mateo,

This letter will serve to memorialize the offer that I made in response to your request for an extension of time to respond to the complaint filed on behalf of Isolina Picon. As I stated I would be amenable to an extension for the purpose of filing an *answer* only. This offer was made as a professional courtesy. However, I do not feel that it would be in my clients best interests if I were to agree to an extension so that the County could better prepare some adversarial motion, etc. against my client beyond the established customary time. This offer was communicated via telephone conversation to Rebecca Archer. The offer was rebuffed, therefore I will be expecting an answer to the timely filed and served complaint on the date specified by the Rules of Civil Procedure.

Very Truly Yours,

Ayanna L. Jenkins-Toney, Esq.

**EXHIBIT C**

```
MODE = MEMORY TRANSMISSION              START=DEC-12 14:20    END=DEC-12 14:20

    FILE NO.=006

STN    COMM.     ONE-TOUCH   STATION NAME/EMAIL ADDRESS/TELEPHONE NO.    PAGES     DURATION
NO.              ABBR NO.

001    OK        8           914154644975                               003/003   00:00:37

                                                          -SMC COUNTY COUNSEL       -
************************************ -     - ***** -     650 363 4034- *********
```



# FAX TRANSMISSION

**COUNTY OF SAN MATEO**
**OFFICE OF THE COUNTY COUNSEL**
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

**DATE:**    December 12, 2007

| **TO:**   Ayanna L. Jenkins | **FAX NUMBER:**    415-464-4975 |
|---|---|

| **FROM:**   Rebecca Archer | **PAGES** incl. cover:    3 |
| Telephone:  (650) 363-4686 | |
| Facsimile:  (650) 363-4034 | |
| **RE:** | |

**COMMENTS:**

**FAX OPERATOR:**
If you do not receive all pages or if the copy is not legible, please call the fax operator at
County Counsel Office of the County of San Mateo at (650) 363-4250 as soon as possible.

CONFIDENTIALITY NOTICE:  This transmittal page and the documents accompanying this telecopy transmission
contain confidential information belonging to the sender which is legally privileged. The information is intended only for
the use of the individual or entity named above.  If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly
prohibited.  If you received this telecopy in error, please immediately notify us by telephone to arrange for return of the
original documents to us.

COUNTY COUNSEL
Michael P. Murphy

**CHIEF DEPUTIES**
John C. Beiers
Deborah Penny Bennett
Brenda B. Carlson

**DEPUTIES**
Kathryn E. Albert
Rebecca M. Archer
Aimee B. Armsby
Claire A. Cunningham
Peter K. Finch
Timothy J. Fox
Portor Goltz
Judith A. Holiber
David A Levy
Kimberly A. Marlow
John D. Nibbelin
Paul A. Okada
David A. Silberman
William E. Smith
Miruni Soosaipillai
V. Raymond Swope III
Lee A. Thompson
Eugene Whitlock
Carol L. Woodward

# COUNTY COUNSEL
## COUNTY OF SAN MATEO
Hall of Justice and Records ◦ 6th Floor
400 County Center ◦ Redwood City, CA 94063-1662
Telephone: (650) 363-4250 ◦ Facsimile: (650) 363-4034
*Please respond to: (650) 363-4686*

December 12, 2007

*Via Facsimile (415) 464-4975*

Ayanna L. Jenkins
Law Offices of Ayanna L. Jenkins-Toney
225 Bush Street, 16th Floor
San Francisco, CA 94901

    *Re:  Picon, Isolina v. San Mateo County, et al. # 467161*

Dear Ms. Jenkins-Toney,

    This is to inform you, as I did by voicemail at 1:15 p.m. today, that I intend to go in exparte on Friday, December 14, 2007 for an order requesting an extension of time to respond to your complaint. I will serve you with my papers as soon as reasonably possible.

    I would like to take this opportunity to once again request that you grant me a very reasonable and short extension of four days to December 21, 2007 to respond to your complaint in light of my impending maternity leave and limited opportunity to wrap up a number of matters before I go. My understanding from our conversation of today is that you would be willing to grant me an extension *only* if I agree that it would be to *answer* the complaint. In my experience a professional courtesy is not conditioned on the nature of the response but on the professional *courtesy* requested.

*Page 1 of 2*

December 12, 2007
Page 2

     I refer you to Section 6 of the State Bar Guidelines of Civility and Professionalism Scheduling, Continuances and Extensions of Time.  That section states: "an attorney should agree to reasonable requests for extensions of time that are not adverse to a client's interests." Under the examples in the guidelines it states "a. Unless time is of the essence, an attorney should agree to an extension without requiring motions or other formalities … e. An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions."

                Yours truly,

                THOMAS F. CASEY III, COUNTY COUNSEL

                By
                  Rebecca M. Archer, Deputy

TFC:RMA/cp

L:\LITIGATE\P_CASES\PICON\Correspondence\Letter re extension of time.doc

Page 2 of 2



COUNTY COUNSEL
MICHAEL P. MURPHY

**CHIEF DEPUTIES**
JOHN C. BEIERS
DEBORAH PENNY BENNETT
BRENDA B. CARLSON

DEPUTIES
KATHRYN E. ALBER
REBECCA M. ARCHE
AIMEE B. ARMSE
PETER K. FINC
TIMOTHY J. F
PORTOR GOLT
LEIGH HERMA
JUDITH A. HOLIBE
KIMBERLY A. MARLO
JOHN D. NIBBELI
PAUL A. OKAD
DAVID A. SILBERMA
WILLIAM E. SMITH
MIRUNI SOOSAIPILLA
V. RAYMOND SWOPE II
LEE A. THOMPSON
EUGENE WHITLOCI
CAROL L. WOODWAR

# COUNTY COUNSEL
## COUNTY OF SAN MATEO
### HALL OF JUSTICE AND RECORDS • 6TH FLOOR
400 COUNTY CENTER • REDWOOD CITY, CA 94063-1662
TELEPHONE: (650) 363-4250 • FACSIMILE: (650) 363-4034

*Please respond to: (650) 363-4686*

December 12, 2007

*Via Facsimile (415) 464-4975*

Ayanna L. Jenkins
Law Offices of Ayanna L. Jenkins-Toney
225 Bush Street, 16th Floor
San Francisco, CA 94901

    *Re:   Picon, Isolina v. San Mateo County, et al. # 467161*

Dear Ms. Jenkins-Toney,

    I failed to include the time and department in my last letter regarding the ex parte application, so this is a revised notice of my intent to seek ex parte relief. I am also attaching a notice of application.

    This is to inform you, as I did by voicemail at 1:15 p.m. today, that I intend to go in ex-parte on Friday, December 14, 2007 at 2:00 p.m. in the Department of Law and Motion at 400 County Center, Redwood City, for an order requesting an extension of time to respond to your complaint. I will serve you with my papers as soon as reasonably possible.

    I would like to take this opportunity to once again request that you grant me a very reasonable and short extension of four days to December 21, 2007 to respond to your complaint in light of my impending maternity leave and limited opportunity to wrap up a number of matters before I go. My understanding from our conversation of today is that you would be willing to grant me an extension *only* if I agree that it would be to *answer* the complaint. In my experience a professional courtesy is not conditioned on the nature of the response but on the professional *courtesy* requested.

December 12, 2007
Page 2

     I refer you to Section 6 of the State Bar Guidelines of Civility and Professionalism Scheduling, Continuances and Extensions of Time.  That section states: "an attorney should agree to reasonable requests for extensions of time that are not adverse to a client's interests." Under the examples in the guidelines it states "a. Unless time is of the essence, an attorney should agree to an extension without requiring motions or other formalities ... e. An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions."

                  Yours truly,

                  THOMAS F. CASEY III, COUNTY COUNSEL

                  By: _____
                      Rebecca M. Archer, Deputy

TFC:RMA/cp


L:\LITIGATE\P_CASES\PICON\Correspondence\Letter re ex parte application.doc

1   MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
    By: John D. Nibbelin, Deputy (SBN 184603)
2   By: Rebecca M. Archer, Deputy (SBN 202743)
    Hall of Justice and Records
3   400 County Center, 6th Floor
    Redwood City, CA 94063
4   Telephone: (650) 363-4686
    Facsimile: (650) 363-4034
5
    Attorneys for Defendants
6   COUNTY OF SAN MATEO, ROBERT
    FOUCRAULT, individually and as Coroner, SAN
7   MATEO COUNTY

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  IN AND FOR THE COUNTY OF SAN MATEO

12

13  ISOLINA PICON                          Case No. 467161

14          Plaintiffs,                    COUNTY OF SAN MATEO'S EX PARTE
                                           APPLICATION FOR EXTENSION OF
15      vs.                                TIME TO RESPOND TO COMPLAINT O
                                           ISOLINA PICON
16  COUNTY OF SAN MATEO, ROBERT
    FOUCRAULT, individual and as Coroner, SAN    Hearing:
17  MATEO COUNTY
                                           Date:   December 14, 2007
18          Defendants.                    Time:   2:00 pm
                                           Dept:   Law and Motion
19

20

21

22

23

24

25

26

27

28

COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO
COMPLAINT OF ISOLINA PICON

1    PLEASE TAKE NOTICE THAT ON DECEMBER 14, 2007 at 2:00 p.m. in the Superior Cour

2  of the County of San Mateo, Law and Motion Department at 400 County Center, Redwood City.

3  Defendant, County of San Mateo will seek an EX PARTE ORDER extending the County's time to

4  respond to the Compliant of Plaintiff, ISOLINA PICON.

5    This EX PARTE Application is based this Notice on the accompanying Memorandum of Points

6  and Authorities, the Declaration of Rebecca M. Archer in Support of Ex Parte Application.

9  Dated: December 12, 2007

Respectfully submitted,

MICHAEL P. MURPHY, COUNTY COUNSEL

By: _____
Rebecca M. Archer, Deputy

Attorneys for Defendants
COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individuall and as Coroner, SAN
MATEO COUNTY

L:\LITIGATE\P_CASES\PICON\Ex Parte Application for Extension of Time.doc

Case No. 467161                                                                2
COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO
COMPLAINT OF ISOLINA PICON



# FAX TRANSMISSION

**COUNTY OF SAN MATEO**
**OFFICE OF THE COUNTY COUNSEL**
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

**DATE:**    December 12, 2007

| **TO:** | Ayanna L. Jenkins | **FAX NUMBER:** | 415-464-4975 |

| **FROM:** | Rebecca Archer | **PAGES** incl. cover: | 5 |
| | Telephone: (650) 363-4686 | | |
| | Facsimile: (650) 363-4034 | | |

**RE:**

**COMMENTS:**

---

**FAX OPERATOR:**
If you do not receive all pages or if the copy is not legible, please call the fax operator at
County Counsel Office of the County of San Mateo at (650) 363-4250 as soon as possible.

CONFIDENTIALITY NOTICE: This transmittal page and the documents accompanying this telecopy transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you received this telecopy in error, please immediately notify us by telephone to arrange for return of the original documents to us.

```
MODE = MEMORY TRANSMISSION          START=DEC-12 15:15      END=DEC-12 15:16

   FILE NO.=010

STN    COMM.    ONE-TOUCH    STATION NAME/EMAIL ADDRESS/TELEPHONE NO.    PAGES    DURATION
NO.             ABBR NO.

001    OK       8            914154644975                                005/005   00:00:58
```

```
                                                    -SMC COUNTY COUNSEL      -

***************************** -       - ***** -     650 363 4034- **********
```



# FAX TRANSMISSION

**COUNTY OF SAN MATEO**
**OFFICE OF THE COUNTY COUNSEL**
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

**DATE:**    December 12, 2007

**TO:**    Ayanna L. Jenkins        **FAX NUMBER:**    415-464-4975

**FROM:**    Rebecca Archer        **PAGES** incl. cover:    ~~4~~ 5
Telephone: (650) 363-4686
Facsimile: (650) 363-4034

**RE:**

**COMMENTS:**

**FAX OPERATOR:**
If you do not receive all pages or if the copy is not legible, please call the fax operator at
County Counsel Office of the County of San Mateo at (650) 363-4250 as soon as possible.

CONFIDENTIALITY NOTICE: This transmittal page and the documents accompanying this telecopy transmission
contain confidential information belonging to the sender which is legally privileged. The information is intended only for
the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly
prohibited. If you received this telecopy in error, please immediately notify us by telephone to arrange for return of the
original documents to us.

**EXHIBIT D**

# California Attorney
# Guidelines of Civility and Professionalism



The State Bar of California
180 Howard Street
San Francisco, CA 94105-1639

Adopted by the Board of Governors on
July 20, 2007

1

# TABLE OF CONTENTS

## ENTIRE GUIDELINES WITH EXAMPLES

Introduction...................................................................................... 3

Responsibilities to the Justice System.............................................. 4

Responsibilities to the Public and the Profession............................. 4

Responsibilities to the Client and Client Representation.................. 4

Communications................................................................................ 4

Punctuality........................................................................................ 5

Scheduling, Continuances and Extensions of Time.......................... 5

Service of Papers.............................................................................. 6

Writings Submitted to the Court, Counsel or Other Parties............. 7

Discovery.......................................................................................... 7

Motion Practice................................................................................. 9

Dealing with Nonparty Witnesses.................................................... 10

Ex Parte Communication with the Court .......................................... 10

Settlement and Alternative Dispute Resolution................................ 10

Conduct in Court............................................................................... 11

Default............................................................................................... 12

Social Relationships with Judicial Officers, Neutrals and Court Appointed Experts............. 12

Privacy............................................................................................... 12

Negotiation of Written Agreements.................................................. 13

Additional Provision for Family Law Practitioners........................... 13

Additional Provision for Criminal Law Practitioners........................ 14

Court Proceedings............................................................................. 14

Attorney's Pledge............................................................................. 15

## ABBREVIATED GUIDELINES WITHOUT EXAMPLES............................. 16

# CALIFORNIA ATTORNEY
## GUIDELINES OF CIVILITY AND PROFESSIONALISM
(Adopted July 20, 2007)

## INTRODUCTION

As officers of the court with responsibilities to the administration of justice, attorneys have an obligation to be professional with clients, other parties and counsel, the courts and the public. This obligation includes civility, professional integrity, personal dignity, candor, diligence, respect, courtesy, and cooperation, all of which are essential to the fair administration of justice and conflict resolution.

These are guidelines for civility. The Guidelines are offered because civility in the practice of law promotes both the effectiveness and the enjoyment of the practice and economical client representation. The legal profession must strive for the highest standards of attorney behavior to elevate and enhance our service to justice. Uncivil or unprofessional conduct not only disserves the individual involved, it demeans the profession as a whole and our system of justice.

These voluntary Guidelines foster a level of civility and professionalism that exceed the minimum requirements of the mandated Rules of Professional Conduct as the best practices of civility in the practice of law in California. The Guidelines are not intended to supplant these or any other rules or laws that govern attorney conduct. Since the Guidelines are not mandatory rules of professional conduct, nor rules of practice, nor standards of care, they are not to be used as an independent basis for disciplinary charges by the State Bar or claims of professional negligence.

The Guidelines are intended to complement codes of professionalism adopted by bar associations in California. Individual attorneys are encouraged to make these guidelines their personal standards by taking the pledge that appears at the end. The Guidelines can be applicable to all lawyers regardless of practice area. Attorneys are encouraged to comply with both the spirit and letter of these guidelines, recognizing that complying with these guidelines does not in any way denigrate the attorney's duty of zealous representation.

c.   An attorney should not disparage the intelligence, integrity, ethics, morals or behavior of the court or other counsel, parties or participants when those characteristics are not at issue.

d.   Respecting cultural diversity, an attorney should not disparage another's personal characteristics.

e.   An attorney should not make exaggerated, false, or misleading statements to the media while representing a party in a pending matter.

f.   An attorney should avoid hostile, demeaning or humiliating words.

g.   An attorney should not create a false or misleading record of events or attribute to an opposing counsel a position not taken.

h.   An attorney should agree to reasonable requests in the interests of efficiency and economy, including agreeing to a waiver of procedural formalities where appropriate.

i.   Unless specifically permitted or invited by the court or authorized by law, an attorney should not correspond directly with the court regarding a case.

Nothing above shall be construed as discouraging the reporting of conduct that fails to comply with the Rules of Professional Conduct.

## SECTION 5
## PUNCTUALITY

An attorney should be punctual in appearing at trials, hearings, meetings, depositions and other scheduled appearances.

For example:

a.   An attorney should arrive sufficiently in advance to resolve preliminary matters.

b.   An attorney should timely notify participants when the attorney will be late or is aware that a participant will be late.

## SECTION 6
## SCHEDULING, CONTINUANCES AND EXTENSIONS OF TIME

An attorney should advise clients that civility and courtesy in scheduling meetings, hearings and discovery are expected as professional conduct.

For example:

a.   An attorney should consider the scheduling interests of the court, other counsel or party, and other participants, should schedule by agreement whenever possible, and should send formal notice after agreement is reached.

5

b.  An attorney should not arbitrarily or unreasonably withhold consent to a request for scheduling accommodations or engage in delay tactics.

c.  An attorney should promptly notify the court and other counsel of problems with key participants' availability.

d.  An attorney should promptly notify other counsel and, if appropriate, the court, when scheduled meetings, hearings or depositions must be cancelled or rescheduled, and provide alternate dates when possible.

In considering requests for an extension of time, an attorney should consider the client's interests and need to promptly resolve matters, the schedules and willingness of others to grant reciprocal extensions, the time needed for a task, and other relevant factors.

Consistent with existing law and court orders, an attorney should agree to reasonable requests for extensions of time that are not adverse to a client's interests.

For example:

a.  Unless time is of the essence, an attorney should agree to an extension without requiring motions or other formalities, regardless of whether the requesting counsel previously refused to grant an extension.

b.  An attorney should agree to an appropriate continuance when new counsel substitutes in.

c.  An attorney should advise clients that failing to agree with reasonable requests for time extensions is inappropriate.

d.  An attorney should not use extensions or continuances for harassment or to extend litigation.

e.  An attorney should place conditions on an agreement to an extension only if they are fair and essential or if the attorney is entitled to impose them, for instance to preserve rights or seek reciprocal scheduling concessions.

f.  If an attorney intends that a request for or agreement to an extension shall cut off a party's substantive rights or procedural options, the attorney should disclose that intent at the time of the request or agreement.

## SECTION 7
## SERVICE OF PAPERS

The timing and manner of service of papers should not be used to the disadvantage of the party receiving the papers.

For example:

6

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY

8

9

                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                   IN AND FOR THE COUNTY OF SAN MATEO
11

12
   ISOLINA PICON                          Case No. 467161
13
                 Plaintiffs,              [PROPOSED] ORDER GRANTING
14                                        COUNTY OF SAN MATEO'S EX PARTE
         vs.                              APPLICATION FOR EXTENSION OF
15                                        TIME TO RESPOND TO COMPLAINT OF
   COUNTY OF SAN MATEO, ROBERT            ISOLINA PICON
16 FOUCRAULT, individual and as Coroner, SAN
   MATEO COUNTY
17
                 Defendants.
18

19        On DECEMBER 14, 2007 Counsel for defendants County of San Mateo and Robert Foucrault,

20 Coroner, Rebecca M. Archer, appeared before this Court ex-parte to request an extension of time to

21 respond to plaintiff's complaint.  Ayanna L. Jenkins-Toney appeared on behalf of plaintiff, Isolina Picon.

22 Having reviewed the papers submitted and good cause appearing the Court GRANTS defendants'

23 application and extends defendants' time to respond to the complaint by 15 days up until and including

24 January 2, 2008.

25                              IT IS SO ORDERED:

26

27                              _____

28                              Judge of the Superior Court

   Case No. 467161
   _____
   [PROPOSED] ORDER GRANTING COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR
   EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY

8

9
                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                      IN AND FOR THE COUNTY OF SAN MATEO
11

12
   ISOLINA PICON                              Case No. 467161
13
              Plaintiffs,                     [PROPOSED] ORDER GRANTING
14                                            COUNTY OF SAN MATEO'S EX PARTE
                                              APPLICATION FOR EXTENSION OF
15        vs.                                 TIME TO RESPOND TO COMPLAINT O
                                              ISOLINA PICON
16 COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individual and as Coroner, SAN
17 MATEO COUNTY

18            Defendants.

19        On DECEMBER 14, 2007 Counsel for defendants County of San Mateo and Robert Foucrault,

20 Coroner, Rebecca M. Archer, appeared before this Court ex-parte to request an extension of time to

21 respond to plaintiff's complaint. Ayanna L. Jenkins-Toney appeared on behalf of plaintiff, Isolina Picon

22 Having reviewed the papers submitted and good cause appearing the Court GRANTS defendants'

23 application and extends defendants' time to respond to the complaint by 4 days up until and including

24 December 21, 2007.

25                              IT IS SO ORDERED.

26

27                              _____

28                              Judge of the Superior Court

   Case No. 467161
   _____
   [PROPOSED] ORDER GRANTING COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR
              EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON

MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: John D. Nibbelin, Deputy (SBN 184603)
By: Rebecca M. Archer, Deputy (SBN 202743)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4686
Facsimile: (650) 363-4034

Attorneys for Defendants
COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individually and as Coroner, SAN
MATEO COUNTY

ENDORSED FILED
SAN MATEO COUNTY

DEC 1 4 2007

Clerk of the Superior Court
By: M. MARLOWE
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

ISOLINA PICON

        Plaintiffs,

        vs.

COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individual and as Coroner, SAN
MATEO COUNTY

        Defendants.

Case No. 467161

PROOF OF SERVICE

Case No. 467161

<div align="center">PROOF OF SERVICE</div>

I do hereby declare that I am a citizen of the United States employed in the County of San Mateo, over 18 years old and that my business address is 400 County Center, Redwood City, California. I am not a party to the within action.

On December 14, 2007, I served the following document(s):

**COUNTY OF SAN MATEO'S NOTICE OF EX PARTE APPLICATION AND APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

**COUNTY OF SAN MATEO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

**DECLARATION OF REBECCA M. ARCHER IN SUPPORT OF COUNT YOF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

**PROPOSED ORDER GRANTING COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSTION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

on all other parties to this action by placing a true copy of said document(s) in a sealed envelope in the following manner:

[ ] **(BY U.S. MAIL)** by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and mailing at Redwood City, California following our ordinary business practices. I am readily familiar with this office's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

[ ] **(BY OVERNIGHT DELIVERY)** by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and delivery by an overnight delivery carrier with delivery fees paid or provided for in accordance with this office's practice. I am readily familiar with this office's practice for processing correspondence for delivery the following day by an overnight delivery carrier.

[ ] **(BY E-MAIL OR ELECTRONIC TRANSMISSION)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address shown below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X] **(BY FACSIMILE TRANSMISSION)** by telefaxing a true copy of said document(s) at _____, __ m. on the date stated above to the addressee(s) and number(s) shown below. A transmission report was properly issued by the transmitting facsimile machine and is attached hereto. The transmission was reported as completed and without error.

[ ] **(BY PERSONAL SERVICE)** I caused such envelope(s) to be hand-delivered to the addressee(s) shown below. A proof of service signed by the authorized courier will be filed forthwith.

1

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

2

3

[ ] (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

4

5

COLLEEN PASSMORE

6

Picon v. County of San Mateo et al., - CIV467161

7

8

NAME AND ADDRESS OF EACH PERSON TO WHOM SERVICE WAS MADE

9

Ayanna L. Jenkins-Toney
225 Bush Street, 16th Floor
San Francisco, CA 94104

ATTORNEY FOR PLAINTIFF:
Isolina Picon

10

11

L:\LITIGATE\P_CASES\PICON\Master Proof of Service.doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

MODE = MEMORY TRANSMISSION          START=DEC-14 10:31    END=DEC-14 10:37

FILE NO.=067

| STN NO. | COMM. | ONE-TOUCH ABBR NO. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | 8 | 914154644975 | 033/033 | 00:06:08 |

                                                    -SMC COUNTY COUNSEL    -

************************************ -         - ***** -    650 363 4034- *********



# FAX TRANSMISSION

**COUNTY OF SAN MATEO**
**OFFICE OF THE COUNTY COUNSEL**
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

**DATE:**   December 14, 2007

| **TO:** Ayanna L. Jenkins | **FAX NUMBER:** (415) 464-4975 |
|---|---|

| **FROM:** Rebecca M. Archer<br>Telephone: (650) 363-4686<br>Facsimile: (650) 363-4034 | **PAGES** incl. cover:   34 |
|---|---|

**RE:**   Picon v. County of San Mateo et al.,

**COMMENTS:** See attached.

**FAX OPERATOR:**
If you do not receive all pages or if the copy is not legible, please call the fax operator at
County Counsel Office of the County of San Mateo at (650) 363-4250 as soon as possible.

CONFIDENTIALITY NOTICE: This transmittal page and the documents accompanying this telecopy transmission
contain confidential information belonging to the sender which is legally privileged. The information is intended only for
the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly
prohibited. If you received this telecopy in error, please immediately notify us by telephone to arrange for return of the
original documents to us.

**4**

1   **AYANNA L. JENKINS-TONEY, CSB # 224847**
  225 Bush Street, 16th Floor
2   San Francisco, CA 94104
  (415) 464-4974 Telephone
3   (415) 464-4975 Facsimile

4   Attorney for Plaintiff Isolina Picon

5            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

6               IN AND FOR THE COUNTY OF SAN MATEO

7

8

9   ISOLINA PICON,

10         Plaintiff,

11     vs.

12   COUNTY OF SAN MATEO, ROBERT

13   FOUCRAULT, individually and as Coroner,

14   SAN MATEO COUNTY

15         Defendants

16

17

| | |
|---|---|
| | Case No.: CIV 467161 |
| | **OPPOSITION/ RESPONSE TO COUNTY OF SAN MATEO'S EX PARTE APPLICATION MOTION TO STRIKE AS NON CONFORMING WITH CALIFORNIA RULES OF COURT 2.306, 3.1201, 3.1202, 3.1206, AND SUPERIOR COURT OF CALIFORNIA COUNTY OF SAN MATEO LOCAL RULE 3.19. AND A  REQUEST FOR ATTORNEY'S FEES** |
| | **Date:** December 14, 2007 |
| | **Time:** 2:00 pm |
| | **Dept:** Law and Motion |

18

19                           I.

20                    **INTRODUCTION**

21

22   I, Ayanna L. Jenkins Toney counsel for plaintiff timely responded to Deputy County Counsel's request for an

23   extension of time with which to file an answer to the properly filed and timely served complaint in a letter dated

24   December 12, 2007. (See EXHIBIT – A).  As the letter states I agreed to County Counsel's request for an extension

25   however I did not agree to an extension if the County intended to file an adversarial motion against my client.

26   Deputy County Counsel Rebecca Archer instantly rebuffed my attempt at civility. She rudely hung up the phone and

27   approximately five minutes later indicated via voicemail that she intended to file an Ex Parte request with the court

28       OPPOSITION COUNTY OF SAN MATEO'S EX PARTE APPLICATION – PG 1

for an extension of time to file responsive pleadings. Also, I request that the court be made aware that the initial phone call made to my office on December 10, 2007 was made after 4:30 pm and the purported email that is attached to County Counsel's moving papers was not received also the copy of the email does not indicate that it was in fact ever sent.

## II.

## SUBSTANTIVE ARGUMENT

County Counsel's cites in her Ex Parte Applications Memorandum of Points And Authorities that the extension is needed in order for her to attend to "*other matters*" and not for the purpose of developing additional arguments against the plaintiff. If The County is not requesting the extension of time to prepare opposition to plaintiffs' complaint then why was the offer to grant an extension to file an answer rebuffed by County Counsel Rebecca Archer? Additionally, again quoting directly from the Ex Parte Applications Memorandum Of Points And Authorities "The County Assures the Court that the arguments are well developed and need only be finalized on paper". If Ms. Archer is to be believed then the County only needs to type, file, and serve whatever responsive pleadings they intend to file and they have 3 days to do so.

Further, as I read the Declaration, Memorandum of Points And Authorities I am dismayed to find throughout the pleadings allegations levied against me by opposing counsel that I am doing a "disservice to the Court", by protecting my clients interests and following the proper rules and procedures required by law. Somehow due to the County Counsel's unpreparedness I and the alleged weakness of my case are somehow to blame. What is quite clear from the tone as well as the intentional and misplaced focus of County Counsel on me is that the substantive requirement of **California Rule of Court 3.1201 and 3.1202** requiring an applicant to "make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte", is absent.

Therefore the Ex Parte Application submitted by the County is substantively deficient in that it lacks the factual showing required by CRC 3.1202 necessary for the Court to grant the relief requested.

OPPOSITION COUNTY OF SAN MATEO'S EX PARTE APPLICATION – PG 2

## III.

### PROCEDURAL ARGUMENT

California Rule of Court 2.306 governs, Service of papers by fax transmission. Rule 2.306 (a)(1) reads...."Agreement of parties required Service by fax transmission is permitted only if the parties agree and a written confirmation of that agreement is made". Here, Deputy County Counsel Rebecca Archer Served the required documents of CRC Rule 3.1201 via fax transmission, she did so in violation not only of CRC Rule 2.306 and Superior Court of California County of San Mateo Local Rule 3.19 Ex Parte Applications and Orders we do not have a written agreement as the rule requires. Further, as CRC Rule 3.1206 Service of Papers states "Parties appearing at the ex parte hearing must serve the ex parte application or any written opposition on all other parties at the first *reasonable opportunity*. Absent exceptional circumstances, no hearing may be conducted unless such service has been made.

Here as stated above Service was in proper, papers were sent via fax and they were transmitted on today a mere three hours before the scheduled hearing! In addition to the application lacks any statutory basis for relief. This factor alone gives rise to the papers being *unreasonably* served. (See Exhibit B - County Counsel's Proof of Service Indicating fax serve only).

### IV.

### REQUEST FOR ATTORNEYS FEES

Due to Ms. Archer's willful violations of both substantive, and procedural requirements of an Ex Parte Application I am requesting Attorneys fees. Further, this hearing would not have occurred 'but for" County Counsel being unprepared to respond to the timely filed and served complaint. The intentional implications made by opposing Counsel indicate bad faith negotiations as well as his willful procedural violations of local and state court rules.

1  Therefore, I am asking the Court for an award of Attorneys fees based on my required appearance at this improperly

2  noticed hearing and my time in hastily drafting this response to protect not only my clients interests but my own

3  reputation which was besmirched by the declaration of Deputy County Counsel Archer. My request for Sanctions

4  rely on California Code Of Civil Procedure Section 575.2 & 128.7.

5

6  The amount of fees that I am requesting is my hourly rate of $350 X 4.5 Hours = $1575.

7  Which is the approximate time that I needed to respond, and appear on this matter.

8

9

10                                                        Respectfully Submitted By:

11                                                        December 14, 2007

12

13                                      _____

14                                                        Ayanna L. Jenkins-Toney

15                                                  Attorney For Plaintiff Isolina Picon

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

LAW OFFICES OF
AYANNA L. JENKINS TONEY, ESQ.

| | | |
|---|---|---|
| 225 BUSH STREET | AyannaJ@msn.com | 700 LARKSPUR LANDING CIRCLE |
| 16TH FLOOR | | SUITE 199 |
| SAN FRANCISCO, CA 94104 | | LARKSPUR, CA 94939 |
| (415) 439-8388 OFFICE | | (415) 464-4974 OFFICE |
| (415) 439-8304 FAX | | (415) 464-4975 FAX |

December 12, 2007

County Counsel
County Of San Mateo
Hall of Justice And Records, 6th floor
400 County Center
Redwood City, CA 94603-1662

Re: Picon, Isolina v. San Mateo County, et al. # 467161

Dear County Counsel of San Mateo,

This letter will serve to memorialize the offer that I made in response to your request for an extension of time to respond to the complaint filed on behalf of Isolina Picon. As I stated I would be amenable to an extension for the purpose of filing an *answer* only. This offer was made as a professional courtesy. However, I do not feel that it would be in my clients best interests if I were to agree to an extension so that the County could better prepare some adversarial motion, etc. against my client beyond the established customary time. This offer was communicated via telephone conversation to Rebecca Archer. The offer was rebuffed, therefore I will be expecting an answer to the timely filed and served complaint on the date specified by the Rules of Civil Procedure.

Very Truly Yours,

Ayanna L. Jenkins-Toney, Esq.

## Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|
| Dec  12 | 1:12PM | Fax  Sent | 916503634034 | 0:42 | 2 | OK |

## LAW OFFICES OF
### Ayanna L. Jenkins -Toney, Esq.                    FAX#(415) 464-4975

### FAX TRANSMITTAL

| TO:  County Counsel Of San Mateo | FROM: Ayanna L. Jenkins Toney, Esq. |
|---|---|
| FAX# (650) 363-4034 | DATE: DECEMBER 12, 2007 |

# OF PAGES INCLUDING COVER  _2

Re: Isolina Picon v. San Mateo County, et al. #467161

Truly,
Ayanna L. Jenkins-Toney

### CONFIDENTIALITY NOTICE

**The documents accompanying this facsimile transmission contain confidential information belonging to the sender which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this facsimile information is strictly prohibited. If you have received this facsimile in error, please notify us by telephone to arrange for the return of the original documents to us.**

# EXHIBIT B

<div align="center">PROOF OF SERVICE</div>

1

2    I do hereby declare that I am a citizen of the United States employed in the County of San

3    Mateo, over 18 years old and that my business address is 400 County Center, Redwood City, California.

4    I am not a party to the within action.

5    On December 14, 2007, I served the following document(s):

6    **COUNTY OF SAN MATEO'S NOTICE OF EX PARTE APPLICATION AND APPLICATION FOR EXTENSTION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

7

8    **COUNTY OF SAN MATEO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

9

10    **DECLARATION OF REBECCA M. ARCHER IN SUPPORT OF COUNT YOF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

11

12    **PROPOSED ORDER GRANTING  COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSTION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

13    on all other parties to this action by placing a true copy of said document(s) in a sealed envelope in the

14    following manner:

15    ☐ (BY U.S. MAIL) by placing a true copy of said document(s) in a sealed envelope(s) addressed as
     shown below for collection and mailing at Redwood City, California following our ordinary
16    business practices. I am readily familiar with this office's practice for collecting and processing
     correspondence for mailing. On the same day that correspondence is placed for collection and
17    mailing, it is deposited in the ordinary course of business with the United States Postal Service in a
     sealed envelope with postage fully prepaid.

18
     ☐ (BY OVERNIGHT DELIVERY) by placing a true copy of said document(s) in a sealed
19    envelope(s) addressed as shown below for collection and delivery by an overnight delivery carrier
     with delivery fees paid or provided for in accordance with this office's practice. I am readily
20    familiar with this office's practice for processing correspondence for delivery the following day by
     an overnight delivery carrier.
21
     ☐ (BY E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of
22    the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent
     to the persons at the e-mail address shown below.  I did not receive, within a reasonable time after
23    the transmission, any electronic message or other indication that the transmission was unsuccessful.

24    ☒ (BY FACSIMILE TRANSMISSION) by telefaxing a true copy of said document(s) at _____, ___m.
     on the date stated above to the addressee(s) and number(s) shown below.  A transmission report
25    was properly issued by the transmitting facsimile machine and is attached hereto.  The transmission
     was reported as completed and without error.
26
     ☐ (BY PERSONAL SERVICE)  I caused such envelope(s) to be hand-delivered to the addressee(s)
27    shown below.  A proof of service signed by the authorized courier will be filed forthwith.

28

1    ☒ (STATE) I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct.

2

3    ☐ (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court
     at whose direction the service was made.

4

5    COLLEEN PASSMORE

6    Picon v. County of San Mateo et al., - CIV467161

7

8    NAME AND ADDRESS OF EACH PERSON TO WHOM SERVICE WAS MADE

9    Ayanna L. Jenkins-Toney                    ATTORNEY FOR PLAINTIFF:
10   225 Bush Street, 16th Floor                Isolina Picon
     San Francisco, CA 94104

11

12   L:\LITIGATE\P_CASES\PICON\Master Proof of Service.doc

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: John D. Nibbelin, Deputy (SBN 184603)
By: Rebecca M. Archer, Deputy (SBN 202743)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4686
Facsimile: (650) 363-4034

Attorneys for Defendants
COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individually and as Coroner, SAN
MATEO COUNTY

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| ISOLINA PICON | Case No. 467161 |
| Plaintiffs, | PROOF OF SERVICE |
| vs. | |
| COUNTY OF SAN MATEO, ROBERT FOUCRAULT, individual and as Coroner, SAN MATEO COUNTY | |
| Defendants. | |

Case No. 467161

PROOF OF SERVICE

# EXHIBIT C

**LexisNexis** *Total Research System*                                                          ⋮   ⋮   ⬚  ⬚?

*My Lexis™* ▼  *Search* ▼  *Research Tasks* ▼  *Get a Document* ▼  *Shepard's®* ▼  *Alerts* ▼  *Total Litigator* ▼        ⋮  ▾

Source:     > / ... / > **CA - California State & Federal Court Rules - Selected Documents** ⋮
TOC:        ⋮ ⋮⋮⋮⋮      >     > ⋮⋮⋮⋮                              > **Rule 2.306. Service of papers by fax**
**transmission**
Terms:   **2.306** (⋮⋮⋮⋮⋮⋮⋮ |  ⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮⋮ )

*Cal Rules of Court, Rule 2.306*

DEERING'S CALIFORNIA CODES ANNOTATED                                    ⬚?  ⬚
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.                                  ⋮·
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL CHANGES RECEIVED THROUGH NOVEMBER 19, 2007
***

CALIFORNIA RULES OF COURT (Reorganized and Effective January 1, 2007)
Title 2.  Trial Court Rules
Division 3.  Filing and Service
Chapter 3.  Filing and Service by Fax

Cal Rules of Court, Rule **2.306** (2007)

NOTICE: This rule is effective January 1, 2007. For the text of this rule as it read prior to the
2007 revision, see

**Rule 2.306.  Service of papers by fax transmission**

**(a) Service by fax**

**(1) Agreement of parties required** Service by fax transmission is permitted only if the
parties agree and a written confirmation of that agreement is made.

**(2) Service on last-given fax number** Any notice or other document to be served must
be transmitted to a fax machine maintained by the person on whom it is served at the fax
machine telephone number as last given by that person on any document that the party has
filed in the case and served on the party making service.

(Subd (a) amended and lettered effective January 1, 2007; adopted as part of subd (b)
effective March 1, 1992.)

**(b) Transmission of papers by court** A court may serve any notice by fax in the same
manner that parties may serve papers by fax.

(Subd (b) adopted effective January 1, 2007.)

**(c) Notice period extended** Except as provided in (d), any prescribed period of notice and
any right or duty to do any act or make any response within any prescribed period or on a
date certain after the service of a document served by fax transmission is extended by two
court days.

(Subd (c) amended and lettered effective January 1, 2007; adopted as part of subd (b)

effective March 1, 1992.)

**(d) Extension inapplicable to certain motions** The extension provided in (c) does not apply to extend the time for the filing of:

**(1)** A notice of intent to move for new trial;

**(2)** A notice of intent to move to vacate a judgment under
; or

**(3)** A notice of appeal.

(Subd (d) amended and lettered effective January 1, 2007; adopted as part of subd (b) effective March 1, 1992.)

**(e) Availability of fax** A party or attorney agreeing to accept service by fax must make his or her fax machine generally available for receipt of served documents between the hours of 9 a.m. and 5 p.m. on days that are not court holidays under
. This provision does not prevent the party or attorney from sending other documents by means of the fax machine or providing for normal repair and maintenance of the fax machine during these hours.

(Subd (e) amended effective January 1, 2007; previously amended effective May 1, 1998; previously amended effective July 1, 1997.)

**(f) When service complete** Service by fax is complete on transmission of the entire document to the receiving party's fax machine. Service that is completed after 5 p.m. is deemed to have occurred on the next court day. Time is extended as provided by this rule.

(Subd (f) amended effective January 1, 2007.)

**(g) Proof of service by fax** Proof of service by fax may be made by any of the methods provided in                                              , except that:

**(1)** The time, date, and sending fax machine telephone number must be used instead of the date and place of deposit in the mail;

**(2)** The name and fax machine telephone number of the person served must be used instead of the name and address of the person served as shown on the envelope;

**(3)** A statement that the document was sent by fax transmission and that the transmission was reported as complete and without error must be used instead of the statement that the envelope was sealed and deposited in the mail with the postage thereon fully prepaid;

**(4)** A copy of the transmission report must be attached to the proof of service and the proof of service must declare that the transmission report was properly issued by the sending fax machine; and

**(5)** Service of papers by fax is ineffective if the transmission does not fully conform to these provisions.

(Subd (g) amended effective January 1, 2007.)

**History:**

Rule **2.306** amended and renumbered effective January 1, 2007; adopted as rule 2008 effective March 1, 1992; previously amended effective July 1, 1997, and July 1, 1997.

## Collateral References:

Cal Civil Procedure Before Trial (CEB)§§ 25.1 et seq.

Rutter, Cal Prac Guide, Family Law §§ 3:420 et seq.

Source:    . . . > / . . . / > **CA - California State & Federal Court Rules - Selected Documents**
TOC:    . . . . . . . . . . . . . >    . . . . >    . . . . . . . . . . . . . . . . . . . . .    > **Rule 2.306. Service of papers by fax transmission**
Terms:    **2.306** ( . . . . . . . . | . . . . . . . . . . . . . . . . . )
View:    Full
Date/Time:    Wednesday, December 12, 2007 - 7:03 PM EST

LexisNexis            2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**LexisNexis**® *Total Research System*

My Lexis™  Search  Research Tasks  Get a Document  Shepard's®  Alerts  Total Litigator

Source:  > / . . . / > CA - California State & Federal Court Rules
TOC:                                                    > Rule 3.1201. Required documents

*Cal Rules of Court, Rule 3.1201*

Deering's California Codes Annotated
Copyright © 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* THIS DOCUMENT REFLECTS ALL CHANGES RECEIVED THROUGH NOVEMBER 19, 2007
\*\*\*

CALIFORNIA RULES OF COURT (Reorganized and Effective January 1, 2007)
Title 3.  Civil Rules
Division 11.  Law and Motion
Chapter 4.  Ex Parte Applications

Cal Rules of Court, Rule 3.1201 (2007)

**Rule 3.1201.  Required documents**

A request for ex parte relief must be in writing and must include all of the following:

(1) An application containing the case caption and stating the relief requested;

(2) A declaration in support of the application making the factual showing required under rule 3.1202(c);

(3) A declaration based on personal knowledge of the notice given under rule 3.1204;

(4) A memorandum; and

(5) A proposed order.

**History:**

Rule 3.1201 adopted effective January 1, 2007.

**Collateral References:**

Matthew Bender (R) Practice Guide: Cal. Debt Collection and Enforcement of Judgments §§ 1.44, 1.53[7], 4.13, 4.21, 8.24, 8.54, 8.62[2], 8.62[3], 8.83.

Source:  > / . . . / > CA - California State & Federal Court Rules
TOC:                                                    > Rule 3.1201. Required documents

**LexisNexis**® *Total Research System*

My Lexis™ ▼ Search ▼ Research Tasks ▼ Get a Document ▼ Shepard's® ▼ Alerts ▼ Total Litigator ▼

Source:    > / . . . / > **CA - California State & Federal Court Rules**  i
TOC:                    >          >                        > **Rule 3.1202. Contents of application**

*Cal Rules of Court, Rule 3.1202*

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL CHANGES RECEIVED THROUGH NOVEMBER 19, 2007
***

CALIFORNIA RULES OF COURT (Reorganized and Effective January 1, 2007)
Title 3.  Civil Rules
Division 11.  Law and Motion
Chapter 4.  Ex Parte Applications

*Cal Rules of Court, Rule 3.1202 (2007)*

**Rule 3.1202.  Contents of application**

**(a) Identification of attorney or party** An ex parte application must state the name, address, and telephone number of any attorney known to the applicant to be an attorney for any party or, if no such attorney is known, the name, address, and telephone number of the party if known to the applicant.

**(b) Disclosure of previous applications** If an ex parte application has been refused in whole or in part, any subsequent application of the same character or for the same relief, although made upon an alleged different state of facts, must include a full disclosure of all previous applications and of the court's actions.

**(c) Affirmative factual showing required** An applicant must make an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte.

(Subd (c) amended effective January 1, 2007.)

**History:**

Rule 3.1202 amended effective January 1, 2007; adopted effective January 1, 2007.

Source:    > / . . . / > **CA - California State & Federal Court Rules**  i
TOC:                    >          >                        > **Rule 3.1202. Contents of application**
View:  Full
Date/Time:  Wednesday, December 12, 2007 - 7:00 PM EST

**LexisNexis**® *Total Research System*

My Lexis™ ⟍ Search ⟍ Research Tasks ⟍ Get a Document ⟍ Shepard's® ⟍ Alerts ⟍ Total Litigator ⟍

Source: ⟍ > / . . . / > CA - California State & Federal Court Rules ⫶
TOC: ⟍ > ⟍ > > Rule 3.1206. Service of papers

*Cal Rules of Court, Rule 3.1206*

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2007 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT REFLECTS ALL CHANGES RECEIVED THROUGH NOVEMBER 19, 2007
***

CALIFORNIA RULES OF COURT (Reorganized and Effective January 1, 2007)
Title 3. Civil Rules
Division 11. Law and Motion
Chapter 4. Ex Parte Applications

Cal Rules of Court, Rule 3.1206 (2007)

**Rule 3.1206. Service of papers**

Parties appearing at the ex parte hearing must serve the ex parte application or any written opposition on all other appearing parties at the first reasonable opportunity. Absent exceptional circumstances, no hearing may be conducted unless such service has been made.

**History:**

Rule 3.1206 adopted effective January 1, 2007.

Source: > / . . . / > CA - **California State & Federal Court Rules** ⫶
TOC: > > > Rule 3.1206. Service of papers
View: Full
Date/Time: Wednesday, December 12, 2007 - 7:01 PM EST

LexisNexis®    2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Superior Court of California, County of San Mateo

(b)    Timing.  A motion to quash service of summons on the ground of lack of jurisdiction, pursuant to CCP§ 418.10(a), must be made not less than three days nor more than seven days after the filing of the notice.  The hearing on the motion shall be automatically set on the first Law and Motion date, which is not less than three, nor more than seven days after the filing of the notice.  When a demurrer, a motion pursuant to CCP '1170.5(b) and (c) or any other motion or pleading is filed other than an answer, the hearing thereon shall be automatically set on the first Law and Motion Calendar following the date of the filing, if that calendar is five or more days after filing.  If not, the hearing shall be set for the second Law and Motion Calendar following the date of the filing.  (See CCP ' 1005.)  Motions for summary judgment or judgment on the pleadings shall be calendared on the first Law and Motion Calendar occurring five or more days after personal service of the notice of motion or ten or more days after service by mail.  Should any party notice a demurrer, motion for summary judgment or other motion on a date beyond the time set forth in this Rule, any other party may apply for an ex parte order setting an earlier hearing date.

(Adopted, effective January 1, 2000).

### 3.16 Motions to Continue Arbitration

a)    Reference CRC, rule 3.817.

(b)    Declaration in support.  Any application to continue an arbitration hearing shall be supported by a declaration showing:

(1)  The date the arbitrator was assigned;

(2)  The date on which the arbitration hearing is currently set;

(3)  The reason for and period of any previous continuance;

(4)  Good cause under the standards recommended in Section Nine of the Standards of Judicial Administration for the continuance and;

(5)  Whether all parties and the arbitrator have stipulated to the proposed continuance.

(Adopted, effective January 1, 2000) (Amended, effective January 1, 2007).

### Rule 3.17 Motions After Trial

All motions after trial until judgment is final shall be heard in the department where the case was tried at a time designated by the judge of that department.

(Adopted, effective July 1, 1996)

### Rule 3.18 Motions to Reconsider

Reference CCP '1008.
(Adopted, effective July 1, 1996) (Amended, effective January 1, 2000)

### 3.19  Ex Parte Applications and Orders

a)    Reference CRC, rule 3.1200-3.1207 and 2.306.

Superior Court of California, County of San Mateo

b)      Time and Place. Ex parte hearings are held from 2:00 to 3:30 P.M. Monday through Friday. In general, all ex parte applications shall be presented in the Law and Motion Department except for the following, which shall be presented to the Presiding Judge:

      (1)      Motions affecting a trial date including preference setting and motions to continue trial

      (2)      Writs of Mandate and Prohibition

      (3)      Temporary Restraining Orders and Orders to Show Cause re Preliminary Injunction

      (4)      Motions to continue arbitration

c)      Notice. Notice of an ex parte application may be given by fax if the parties have an existing fax service agreement and the proof of service complies with the requirements of CRC 2.306.

      (Adopted, effective January 1, 2000) (Amended, effective January 1, 2007).

**5**

1   MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
    By: John D. Nibbelin, Deputy (SBN 184603)
2   By: Rebecca M. Archer, Deputy (SBN 202743)
    Hall of Justice and Records
3   400 County Center, 6th Floor
    Redwood City, CA 94063
4   Telephone: (650) 363-4686
    Facsimile: (650) 363-4034



5

6   Attorneys for Defendants
    COUNTY OF SAN MATEO, ROBERT
    FOUCRAULT, individually and as Coroner, SAN
7   MATEO COUNTY

8

9

10            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SAN MATEO

12

13   ISOLINA PICON                   Case No. 467161

14         Plaintiffs,           [~~PROPOSED~~] ORDER GRANTING
                         COUNTY OF SAN MATEO'S EX PARTE
15       vs.                   APPLICATION FOR EXTENSION OF
                         TIME TO RESPOND TO COMPLAINT OF
16   COUNTY OF SAN MATEO, ROBERT     ISOLINA PICON
    FOUCRAULT, individual and as Coroner, SAN
    MATEO COUNTY
17

18         Defendants.

19       On DECEMBER 14, 2007 Counsel for defendants County of San Mateo and Robert Foucrault,

20   Coroner, Rebecca M. Archer, appeared before this Court ex-parte to request an extension of time to

21   respond to plaintiff's complaint. Ayanna L. Jenkins-Toney appeared on behalf of plaintiff, Isolina Picon.

22   Having reviewed the papers submitted and good cause appearing the Court GRANTS defendants'

23   application and extends defendants' time to respond to the complaint by 15 days up until and including

24   January 2, 2008.

25                     IT IS SO ORDERED:

26

27     12/14/07

28                             Judge of the Superior Court

Case No. 467161

[PROPOSED] ORDER GRANTING COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR
EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON

**6**

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner. SAN
7  MATEO COUNTY

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SAN MATEO

12

13  ISOLINA PICON                          Case No. 467161

14          Plaintiff,                     DEFENDANTS COUNTY OF SAN MATEO
                                           AND ROBERT FOUCRAULT'S NOTICE
15      vs.                                OF DEMURRER AND DEMURRER TO
                                           COMPLAINT OF ISOLINA PICON
16  COUNTY OF SAN MATEO, ROBERT
    FOUCRAULT, individual and as Coroner, SAN
17  MATEO COUNTY                                    Hearing:

                                           Date:    January 29, 2008
18          Defendants.                    Time:    9:00 a.m.
                                           Dept:    Law and Motion
19

20                      __NOTICE OF DEMURRER__

21  TO PLAINTIFF AND TO HER ATTORNEY OF RECORD:

22       PLEASE TAKE NOTICE that on January 29, 2008 at 9:00 a.m. or as soon thereafter as the

23  matter may be heard in the Law and Motion Department of the San Mateo County Superior Court,

24  located at 400 County Center, Redwood City, California, 94063, DEFENDANTS COUNTY OF SAN

25  MATEO and ROBERT FOUCRAULT will move and hereby does move the court for an order sustaining

26  its demurrer to the complaint.

27       This demurrer is based upon this notice, the attached Memorandum of Points and Authorities

28  filed in support thereof, the pleadings, records and files in this action, other documents that may be

1    judicially noticed and upon such oral argument that may be presented at the hearing on this demurrer.

2                                    <u>DEMURRER</u>

3        Defendant COUNTY OF SAN MATEO and ROBERT FOUCRAULT demur to the Complaint

4    filed by Plaintiff Isolina Picon on each of the following grounds:

5        <u>Demurrer to First Cause of Action – Denial of Quasi Property Right – The Right to Control</u>

6                      <u>Disposition of the Remains of a Deceased Person</u>

7        The First Cause of Action fails to state a claim as required by Code of Civil Procedure §

8    430.10(e) because no right of plaintiff was denied.  Moreover, defendants are immune from liability for

9    discretionary acts under Government Code § 820.2.

10          <u>Demurrer to Second Cause of Action for Breach of a Mandatory Duty</u>

11       The Second Cause of Action fails to state a claim as required by Code of Civil Procedure §

12   430.10(e) because it fails to allege any mandatory duty of defendants owed to plaintiff.  Moreover,

13   defendants are immune from liability for discretionary acts under Government Code § 820.2.

14        <u>Demurrer to Third Cause of Action for Negligent Infliction of Emotional Distress</u>

15       The Third Cause of Action fails to state a claim as required by Code of Civil Procedure §

16   430.10(e) because negligent infliction of emotional distress is not an independent tort, but rather is a

17   form of negligence, and plaintiff cites to no statutory duty of defendants under the Government Claims

18   Act giving rise to liability for negligence.  Moreover, defendants are immune from liability for

19   discretionary acts under Government Code § 820.2.

20   Dated:  December 28, 2007                    Respectfully submitted,

21                                               MICHAEL P. MURPHY, COUNTY COUNSEL

22

23                                               By Rebecca M. Archer

24                                                  Rebecca M. Archer, Deputy

25                                               Attorneys for Defendants
                                                 COUNTY OF SAN MATEO, ROBERT
26                                               FOUCRAULT, individual and as Coroner, SAN
                                                 MATEO COUNTY

27

28   L:\LITIGATE\P_CASES\PICON\Pleadings\Notice of Demurrer and Demurrer 12-18-07.doc

         Case No. 467161                              2
     DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S NOTICE OF DEMURRER
                 AND DEMURRER TO COMPLAINT OF ISOLINA PICON

MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: John D. Nibbelin, Deputy (SBN 184603)
By: Rebecca M. Archer, Deputy (SBN 202743)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-4686
Facsimile: (650) 363-4034

Attorneys for Defendants
COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individually and as Coroner, SAN
MATEO COUNTY

ENDORSED FILED
SAN MATEO COUNTY

DEC 3 8 2007

Clerk of the Superior Court
By: L. BOURNEAU
DEPUTY CLERK

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

| | |
|---|---|
| ISOLINA PICON<br><br>   Plaintiff,<br><br> vs.<br><br>COUNTY OF SAN MATEO, ROBERT<br>FOUCRAULT, individual and as Coroner, SAN<br>MATEO COUNTY<br><br>   Defendants. | Case No. 467161<br><br>**DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT OF ISOLINA PICON**<br><br>Hearing:<br><br>Date: January 29, 2008<br>Time: 9:00 a.m.<br>Dept: Law and Motion |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ..................................................................................................... 1

II.   ALLEGATIONS OF COMPLAINT ........................................................................ 2

III.  ARGUMENT .......................................................................................................... 2

    A.    Standard of Review ........................................................................................ 2

    B.    Plaintiff Fails To State A Cause Of Action For Breach Of The Right To Control The Disposition Of The Remains Of A Deceased Person. ...................... 3

    C.    The Complaint Fails to State A Cause of Action Because The County and the Coroner Are Immune From Liability ................................................................. 5

    D.    Plaintiff Fails to State a Cause of Action For Breach of a Mandatory Duty. ............... 6

        1.    Health and Safety Code § 7150 Does Not Create A Mandatory Duty. ................. 7

        2.    §§ 27491.4(a) and 27491.45(a)(2) Do Not Impose a Mandatory Duty. ............... 7

    E.    Plaintiff Does Not State A Cause Of Action For Negligent Infliction Of Emotional Distress ........................................................................................ 8

IV.   CONCLUSION ....................................................................................................... 9

i

# TABLE OF AUTHORITIES

Page(s)

**California Cases**

*Barnett v. Fireman's Fund Ins. Co.*
   (2001) 90 Cal. App. 4th 500 ........................................................................ 3

*Blank v. Kirwan*
   (1985) 39 Cal. 3d 311 .................................................................................. 2

*Christiansen v. Superior Ct.*
   (1991) 54 Cal.3d 868 ................................................................................... 4

*Creason v. Department of Health Services*
   (1998) 18 Cal.4th 623 ................................................................................. 6

*Enos v. Snyder*
   (1900) 131 Cal. 68 ....................................................................................... 3

*Gray v. Southern Pac. Co.*
   (1937) 21 Cal.App.2d 240 ..................................................................... 3, 4, 5

*Haggis v. City of Los Angeles*
   (2000) 22 Cal.4th 490 .................................................................................. 6

*Holland v. Morse Diesel Int'l, Inc.*
   (2001) 86 Cal.App.4th 1443 ..................................................................... 3, 8

*Holm v. Superior Court*
   (1986) 187 Cal.App.3d 1241 ....................................................................... 3

*Hunt v. Board of Chiropractic Examiners*
   (1948) 87 Cal.App.2d 98 ............................................................................. 5

*Huntley v. Zurich*
   (1929) 100 Cal.App. 201 ............................................................................. 3

*Keyes v. Santa Clara Valley Water Distr.*
   (1982) 128 Cal.App.3d 882 ......................................................................... 6

*Lawrence v. Bank of America*
   (1985) 163 Cal.App.3d 431 ......................................................................... 8

*Lehto v. City of Oxnard*
   (1985) 171 Cal.App.3d 285 ................................................................... 2, 6, 7

*Morris v. County of Marin*
   (1977) 18 Cal.3d 901 ................................................................................... 6

*Tolan v. State*
   (1979) 100 Cal.App.3d 980 ......................................................................... 9

*Washington v. County of Contra Costa,*
   (1995) 38 Cal.App.4th 890 ...................................................................... 6, 7

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT OF ISOLINA PICON

TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

<u>**Federal Cases**</u>

*Sabow v. United States*
  (9th Cir. 1996) 93 F.3d 1445 ................................................................................. 4


<u>**Statutes**</u>

<u>**Government Code**</u>

<u>**Government Code**</u>

§ 815.2(b) ........................................................................................................... 5, 9

§ 820.2 ........................................................................................................ 2, 5, 6, 9

§ 27491.4 ............................................................................................................ 1, 3, 8

§ 27491.4(a) ................................................................................................... passim

§ 27491.45 ................................................................................................................. 1

§ 27491.45(a)(1) .................................................................................................. 1, 4, 8

§ 27491.45(a)(2) ................................................................................................ 2, 6, 7, 8


<u>**Health and Safety Code**</u>

§ 7150 .................................................................................................................. 1, 2, 6, 7

§ 7150.1 subdivision (g) ............................................................................................ 4

§ 7151.5 ..................................................................................................................... 7


<u>**Other Authorities**</u>

Witkin, Summary of California Law Vol. 6.  Torts § 1004 ........................................ 8

## I.    INTRODUCTION

Plaintiff's son, Nicholas Picon, died suddenly on October 25, 2006 at the age of 23 as a result of heart trouble. The San Mateo County Coroner's office investigated his death and performed an autopsy. When conducting an autopsy of Plaintiff's son, the County Coroner retained his heart to further investigate the cause of death. Plaintiff claims that she was not informed, and did not discover, that the heart was missing until after she had buried her son on October 30, 2006. Upon her request, the heart was returned to her. Plaintiff brings three causes of action against the County and the Coroner: 1) denial of the right to control the disposition of remains of her deceased son; 2) breach of a mandatory duty; and 3) negligent infliction of emotional distress. Each of these claims, however, fail to state a cause of action against the County or the Coroner.

The gravamen of her complaint is that the Coroner should not have retained her son's heart without first notifying her and obtaining her consent to do so. However, the Coroner has absolutely no obligation to notify or obtain consent of the next of kin in order to remove or retain organs for the purposes of his investigation. Indeed, the converse is true: the Coroner has the statutory *right – without* notifying or obtaining the consent of the next-of-kin – to (1) "retain those tissues of the body removed at the time of the autopsy as may, in his or her opinion, be necessary or advisable to the inquiry into the case, or for the verification of his or her findings" and to (2) retain the organs for purposes training and research. Cal. Gov. Code §§ 27491.4(a), 27491.45(a)(1).

Plaintiff's first cause of action for denial of the right to control the disposition of remains of a deceased person is fatally flawed because the complaint acknowledges that the Coroner fulfilled his obligation to return the body for purposes of burial. That is all that the law requires. There is no right to bury a fully intact body. Due to the nature of an autopsy such a requirement would be impossible to satisfy.

Her second cause of action for breach of a mandatory duty is similarly deficient. The statutes which allegedly form the basis for this action – Government Code §§ 27491.4 and 27491.45 and Health and Safety Code § 7150 – do not reveal *any* mandatory duty of the Coroner or the County. Indeed, as explained above, the cited sections give the Coroner authority to act as he did.

Her third cause of action for negligent infliction of emotional distress fails because no such cause

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMP

1  of action exists. Emotional distress is a form of damages attributable to negligence, the elements of

2  which plaintiff has not and cannot allege.

3  Finally, as to each cause of action, the Coroner, and the County, as his employer, are immune to

4  suit for the exercise of his discretion under the Government Code. Cal. Gov. Code § 820.2. Defendants,

5  the County of San Mateo and the Coroner, therefore respectfully request that the Court sustain their

6  demurrer, without leave to amend.

7  ## II.    ALLEGATIONS OF COMPLAINT

8  Plaintiff alleges that, when conducting an autopsy of her son, the County Coroner retained her

9  son's heart to further investigate the cause of death without advising her or asking her for permission to

10  do so. Compl. at pp. 4-6; Exh. A at p. 5. She claims that she was not informed, and did not discover, that

11  the heart was missing until after she had buried her son on October 30, 2006. *Id.* She attaches to her

12  complaint an October 26, 2006 Autopsy Report that states the "cardiac specimen is retained to permit

13  further detailed examination." Comp.Exh. A at p. 5.

14  As to the first cause of action, she alleges that the Coroner denied her a *quasi* property right by

15  retaining her son's heart without informing her or obtaining her consent to do so. Compl. at p. 4. As to

16  the second cause of action, she alleges that the Coroner's actions allegedly violated a mandatory duty

17  imposed on the Coroner by Government Code §§ 27491.4(a) and 27491.45(a)(2) as well as Health and

18  Safety Code § 7150 *et seq.* Compl. at p. 5. As to the third cause of action, she alleges that the Coroner's

19  actions in failing to return the heart was a breach of the Coroner's obligations to Plaintiff, and that such a

20  breach caused Plaintiff to suffer emotional distress. Compl. at p. 6.

21  ## III.    ARGUMENT

22  ### A.    Standard of Review

23  The court may sustain a demurrer without leave to amend where the complaint fails to state facts

24  sufficient to state a cause of action and where there is no reasonable possibility that the defect can be

25  cured by amendment. *Blank v. Kirwan* (1985) 39 Cal. 3d 311, 318. The burden of proving such

26  reasonable possibility is squarely on the plaintiff. *Id.* To survive a demurrer, the existence of a

27  mandatory duty must be specifically pleaded. *Lehto v. City of Oxnard* (1985) 171 Cal.App.3d 285, 292

28  (must specifically allege the particular enactment that creates the mandatory duty).

---

2

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT

Where the Complaint attaches documents relevant to its pleading, the court may consider them a part of the pleading and, they in fact take precedence over inconsistent allegations in the complaint itself. *Holland v. Morse Diesel Int'l, Inc.* (2001) 86 Cal.App.4th 1443, 1447 (facts appearing in exhibits attached to the complaint are given precedence over inconsistent allegations in the complaint); *see also Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal. App. 4th 500, 504-05.

**B.      Plaintiff Fails To State A Cause Of Action For Breach Of The Right To Control The Disposition Of The Remains Of A Deceased Person.**

Plaintiff cannot allege facts to state a cause of action against the County or the Coroner for deprivation of a right to control the disposition of the remains of a deceased person. While there is a *temporary* right of possession of a dead body, it is only for the *limited* purposes of burial. *Enos v. Snyder* (1900) 131 Cal. 68 (finding that while there is no property right in a dead body, a limited right to temporary possession of the dead body for purposes of burial belongs to the next-of-kin.); *Huntley v. Zurich* (1929) 100 Cal.App. 201, 208 (same). Plaintiff does not allege that she was prevented from burying the body of her son. Rather, her complaint contradicts any such allegation by alleging that she *was* able bury her son on October 30, 2006. Compl.at p. 4. Therefore she has no cause of action for breach of a right to control the remains of her deceased son. *Holm v. Superior Court* (1986) 187 Cal.App.3d 1241, 1246 (only property right in body of deceased is limited to determining who shall have its custody for burial); *Gray v. Southern Pac. Co.* (1937) 21 Cal.App.2d 240, 246-247 (right to possession of the body is a right that is limited to custody for the purpose of burial even where organs are retained for further investigation: "The action is not one for conversion, nor could it be, as the law recognizes no right of property as such in the dead body of a human being. The right is to the possession of the body, and is one recognized for the purpose of determining who shall have its custody for the purpose of burial.")

Nor can plaintiff bring a cause of action based upon the fact that her son's body was not intact when it was returned to her. There is no authority for expanding the limited right to temporary possession of a corpse for purpose of burial to a right to receive the body intact. Indeed the law states the converse – that a coroner has the *right* to retain any organs following an autopsy that he deems necessary to his investigation *or* for purposes of research or coroner training. Government Code § 27491.4

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT

1 | provides in pertinent part:

2 | (a) For purposes of inquiry the coroner shall, within 24 hours or as soon as feasible thereafter, where the suspected cause of death is sudden infant

3 | death syndrome and, in all other cases, the coroner may, in his or her discretion, *take possession of the body*, which shall include the authority to

4 | exhume the body, order it removed to a convenient place, and make or cause to be made a postmortem examination or autopsy thereon, and make

5 | or cause to be made an analysis of the stomach, stomach contents, blood, organs, fluids, or tissues of the body. ... *The coroner shall have the right*

6 | *to retain only those tissues of the body removed at the time of the autopsy as may, in his or her opinion, be necessary or advisable to the inquiry into*

7 | *the case, or for the verification of his or her findings.* No person may be present during the performance of a coroner's autopsy without the express

8 | consent of the coroner. (Emphasis added).

9 | In addition Government Code § 27491.45(a)(1) provides:

10 | (a)(1) *The coroner shall have the right to retain parts of the body*, as defined in subdivision (g) of Section § 7150.1 of the Health and Safety

11 | Code, removed at the time of autopsy or acquired during a coroner's investigation as may, in the opinion of the coroner, be necessary or

12 | advisable for *scientific investigation and training.* The coroner may employ or use outside laboratories, hospitals, or research institutions in the conduct

13 | of the coroner's scientific investigation or training. (Emphasis added.)

14 | The Coroner's discretionary right to retain body parts for investigative and training purposes, without

15 | regard to notification, consent, or time limits on possession of the removed organ is inconsistent with any

16 | purported obligation to return an intact corpse to the next-of-kin.

17 | Defendants anticipate that Plaintiff will point to cases in which a mortuary is held liable for

18 | mishandling human remains. *See, e.g., Christiansen v. Superior Ct.* (1991) 54 Cal.3d 868 (finding that

19 | family members of decedents had standing to seek damages for emotional distress negligently caused by

20 | mortuaries and crematoriums which allegedly mishandled human remains). Such citation would be

21 | inapposite. The case law is clear that the unique duties of a coroner make it unreasonable to impose

22 | standards of care similar to those imposed on the general public or on those under contract for funereal

23 | services. *Sabow v. United States* (9th Cir. 1996) 93 F.3d 1445, 1448 (holding that where during course of

24 | investigation corpse left to decompose in sun for seven hours, government had no duty of care in

25 | handling human remains under California law: "the handling of an individual's remains during an

26 | investigation into his death [is] different from mortuary services . . . [and] the [government] was under no

27 | contractual obligation to treat decedent's remains in a certain manner during the investigation."); *also see*

28 | *Gray v. Southern Pac. Co.* (1937) 21 Cal.App.2d 240, 245-246 (finding no cause of action for mutilation

4

of corpse against a coroner.)  In sum, because there is no property right in a dead body, other than the limited right to temporary possession for purposes of burial (deemed in case law to be a *quasi* property right), Plaintiff's first cause of action fails.

C.    **The Complaint Fails to State A Cause of Action Because The County and the Coroner Are Immune From Liability.**

In addition, given that the Coroner has broad discretion to remove and retain body parts without any requirement to notify or obtain the consent of the next-of-kin he is immune from liability for the exercise of that discretion.  Cal. Gov. Code § 820.2 (a public employee or official is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.)  Indeed, in *Gray v. Southern Pac. Co.,supra,* at  21 Cal.App.2d 245-246, the court found that where the coroner was lawfully authorized to perform an autopsy, there could be no cause of action for damages against the coroner for exercise of his discretion in doing so, and stated:

> There can be no liability for an act required by law … '[t]he mere allegation in the petition that in performing work which was clearly in the scope of his duties the officer acted maliciously, wantonly, and unlawfully does not state an actionable wrong.  Bad motive, by itself, then, is no tort.  Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. … If, as we think we have shown, the complaint does not show the autopsy to have been unlawful, the mental and physical shock and distress caused thereby to the plaintiff – which is the gravamen of the action – gave rise to no cause of action. (internal citations and quotations omitted.)

Moreover, the Coroner cannot be liable for the manner in which he chooses to exercise his discretion. *See, e.g., Hunt v. Board of Chiropractic Examiners* (1948) 87 Cal.App.2d 98, 101 (where statute imposes discretion to act under certain circumstances, mandate will not lie to compel the exercise of such discretion in a particular manner).

The County is also immune as a public entity is not liable for torts of its employee if the employee is immune from liability.  Government Code § 815.2(b) states: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Therefore, it follows that Plaintiff cannot state any cause of action against the Coroner or the County under any tort theory that would overcome the

5

immunities conferred by the Government Code. Plaintiff, therefore, will be unable to state any cause of action against the Coroner or the County related to his exercise of discretion under the cited statutes and the facts of this case that could overcome the immunity conferred by Government Code § 820.2.

### D.    Plaintiff Fails to State a Cause of Action For Breach of a Mandatory Duty.

Whether a statute "creates a mandatory duty is a question of law" for the courts. *Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 631. In the case of a mandatory duty, the mandatory duty must be *specifically* pled. *Lehto, supra,* 171 Cal.App.3d at 292. In order to plead such a cause of action, the statute at issue "*must be obligatory,* rather than merely discretionary or permissive; it must *require,* rather than merely authorize or permit that a particular action be taken or not taken." *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 *citing Morris v. County of Marin* (1977) 18 Cal.3d 901, 907 (emphasis added). Specifically, Plaintiff must allege that: (1) the statute which was violated imposes a mandatory duty, (2) the statute was intended to protect against the type of harm suffered, and (3) breach of the statute's mandatory duty was a proximate cause of the injury suffered. *Washington v. County of Contra Costa,* (1995) 38 Cal.App.4th 890, 895. "A Plaintiff must plead with particularity every fact essential to the existence of statutory liability in order to state a cause of action against a public entity." *Keyes v. Santa Clara Valley Water Distr.* (1982) 128 Cal.App.3d 882, 886. The complaint fails to meet even the first prong of the test; neither Health and Safety Code § 7150 *et seq.* nor Government Code §§ 27491.4(a) and 27491.45(a)(2) contain any mandatory duty imposed on the County or Coroner whatsoever.[1] Comp. p. 5. These statutes instead create an authorization for the Coroner to take discretionary acts. In any event, nothing in these statutes imposes a duty on the Coroner to advise or seek the consent of *anyone* before removing or retaining a body part in connection with the investigation of a cause of death. Therefore, the alleged failure of the Coroner to notify or seek the consent of Plaintiff cannot be actionable. *Washington, supra* 38 Cal.App.4th at 895.

---

[1] Because the complaint fails to cite to any *mandatory* duty under the first prong of the test, there is no need to reach the other two prongs.

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT OF ISOLINA PICON

1. **Health and Safety Code § 7150 Does Not Create A Mandatory Duty.**

Health and Safety Code 7150 *et seq.* is the codification of the Uniform Anatomical Gift Act. Plaintiff cites to the entire Act without specifying the specific mandatory duty (or even the precise section of the Act) that she alleges the County or the Coroner violated. This is insufficient to state a cause of action as the existence of a mandatory duty must be *specifically* plead. *Lehto, supra* 171 Cal.App.3d at 292 (cause of action for breach of mandatory duty must specifically allege the *particular* enactment that creates the mandatory duty). Without knowing what section of the entire Act plaintiff believes imposed a mandatory duty on the Coroner or the County, the County cannot respond to allegations of a breach.

Notwithstanding this lack of specificity, even a cursory review of the Act shows that there is *no* provision of the Uniform Anatomical Gift Act that imposes a mandatory duty on Defendants under the facts of this case.[2]

2. **Government Code §§ 27491.4(a) and 27491.45(a)(2) Do Not Impose a Mandatory Duty.**

Plaintiff contends that Defendants breached a mandatory duty allegedly contained in Government Code §§ 27491.4(a) and 27491.45(a)(2). However, there is no mandatory duty contained in those sections – only discretionary power.

Section 27491.4(a) vests the Coroner with the *right* to retain body parts "removed at the time of the autopsy as may, in his or her opinion, be necessary or advisable to the inquiry into the case, or for the verification of his or her findings." The only limitation on that right is that the retention of such samples, *in the Coroner's opinion,* be necessary *or advisable* to the inquiry in the case, or for the *verification* of the Coroner's findings. *Id.* This language creates broad discretion in the Coroner to determine the cause of death of an individual and to retain those body parts necessary to that investigation. The autopsy report, attached to the complaint, clearly states that the heart was retained to permit further investigation.

---

[2] Plaintiff may argue that Health and Safety Code § 7151.5 creates a mandatory duty not to remove or donate body parts without the consent of the next-of-kin. This would be an incorrect reading of the law. Section 7151.5 actually vests *discretion* in the coroner to remove and release body parts for the purpose of transplantation, therapy or reconditioning – all of which are inapplicable to this complaint.

7

1  Comp., Exh. A at p. 5; see *Holland, supra,* 86 Cal.App.4[th] 1443, 1447 (facts in exhibits given precedence

2  over inconsistent allegations in the complaint). Plaintiff's allegation, therefore, that her son's heart "had

3  been sent to Stanford University for research purposes" is belied by the report she attaches to her

4  complaint, and by her allegation that the heart was returned to her eight days after her initial inquiry as to

5  whether her son's heart had been retained by the Coroner. *Id.;* Compl.at p. 5. Even if the heart had been

6  sent to a research facility, no mandatory duty would have been breached as the Coroner has the *right* to

7  use outside institutions for purposes of coroner research, investigation and training. § 27491.45(a)(1).

8       Regardless, Plaintiff cannot escape the fact that § 27491.4(a) does not by its terms create *any*

9  duty, mandatory or otherwise, in the Coroner to advise her of, or seek her consent before, retaining body

10  parts in the course of an autopsy. It does the opposite. It *allows* the Coroner to retain body parts at his

11  discretion *without* notification, *without* consent, *without* limits as to how long the organ may be retained

12  and *without* any obligation to return the body part to the next-of-kin of the deceased. §§ 27491.4 and

13  27491.45(a)(1).

14       Plaintiff's reference to § 27491.45(a)(2) is no more availing. That section sets out circumstances

15  under which body parts retained by the Coroner may be released to "hospitals, medical, educational,

16  research institutions, and law enforcement agencies for *noncoroner training, educational, and research*

17  *purposes.*" This section describes a coroner's *discretion* to release organs for noncoroner purposes; it

18  does not impose a mandatory duty on the coroner to perform any act.

19       Given that the autopsy report states that it retained the heart for further investigation, there are no

20  facts that may be pleaded that would show that the coroner did anything other than exercise his rights

21  under § 27491.45(a)(1). Where no liability exists under substantive law, the Court may sustain a

22  demurrer without leave to amend. *Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436.

23

24      **E.**    **Plaintiff Does Not State A Cause Of Action For Negligent Infliction Of Emotional Distress.**

25       "Negligent infliction of emotional distress is not an independent tort, but rather is the tort of

26  negligence involving the usual duty and causation issues." Witkin, Summary of California Law Vol. 6.

27  Torts § 1004. Stated differently, emotional distress is one form of damage that might flow from

28  negligence. Therefore Plaintiff cannot state a cause of action for negligent infliction of emotional distress

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT OF ISOLINA RICON

1   because no such cause of action exists.  Moreover, Plaintiff also does not state a cause of action for

2   negligence as she does not allege any duty of the Coroner or the County to her.  Compl. at p. 6.; *Tolan v.*

3   *State* (1979) 100 Cal.App.3d 980 (common law principles of negligence insufficient to allege a cause of

4   action against a public entity.)  Nor can she.  The Coroner acted pursuant to his statutory authority.

5        Regardless, and as noted above, the Coroner and the County are immune from any tort liability

6   under Government Code §§ 815.2(b) and 820.2.

7                        IV.    CONCLUSION

8

9        Plaintiff believes that the tragic loss of her son was compounded by the knowledge that the

10  Coroner removed and retained her son's heart during the course of the autopsy.  This, however, does not

11  create a cause of action against the County or the Coroner.  Neither the County or the Coroner can be

12  liable for the removal or retention of the deceased's heart under any theory because the Coroner acted

13  within the scope of his statutory authority to do so.  Moreover, the Coroner's actions were pursuant to his

14  discretionary authority and are therefore immune from suit under Government Code § 820.2.  Defendants

15  respectfully request that the demurrer to each cause of action be sustained without leave to amend.

16

17  Dated:  December 28, 2007                    Respectfully submitted,

18                                              MICHAEL P. MURPHY, COUNTY COUNSEL

19

20                                              By: Rebecca M. Archer

21                                              Rebecca M. Archer, Deputy

22                                              Attorneys for Defendants
                                                COUNTY OF SAN MATEO, ROBERT
23                                              FOUCRAULT, individual and as Coroner, SAN
                                                MATEO COUNTY

24

25

26  L:\LITIGATE\P_CASES\PICON\Pleadings\MPA to Demurrer FINAL 12-28-07.doc

27

28

                                    9

DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPL

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA 94063
4  Telephone: (650) 363-4686
   Facsimile: (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   IN AND FOR THE COUNTY OF SAN MATEO

12

13  ISOLINA PICON                          Case No. 467161

14          Plaintiffs,                    PROOF OF SERVICE BY MAIL

15      vs.                                1.  Defendants County of San Mateo and Robert
                                               Foucrault's Notice of Demurrer and Demurrer to
16  COUNTY OF SAN MATEO, ROBERT                Complaint of Isolina Picon;
    FOUCRAULT, individual and as Coroner, SAN
17  MATEO COUNTY                           2.  Defendants County of San Mateo and Robert
                                               Foucrault's Memorandum of Points and
18          Defendants.                        Authorities in Support of Demurrer to Complaint
                                               of Isolina Picon
19
                                           3.  Non-California Cases Cited in Support of
20                                             Defendants County of San Mateo and Robert
                                               Foucrault's Demurrer to Complaint of Isolina
21                                             Picon; and

22                                         4.  [Proposed] Order Re Defendants County of
                                               San Mateo and Robert Foucrault's Demurrer to
23                                             Complaint of Isolina Picon

24                                         Date:  January 29, 2008
                                           Time:  9:00 a.m.
25                                         Dept:  Law and Motion

26

27

28

<div align="center">PROOF OF SERVICE</div>

I do hereby declare that I am a citizen of the United States employed in the County of San Mateo, over 18 years old and that my business address is 400 County Center, Redwood City, California. I am not a party to the within action.

On December 28, 2007, I served the following document(s):

**DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S NOTICE OF DEMURRER AND DEMURRER TO COMPLAINT OF ISOLINA PICON;**

**DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEMURRER TO COMPLAINT OF ISOLINA PICON**

**NON-CALIFORNIA CASES CITED IN SUPPORT OF DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S DEMURRER TO COMPLAINT OF ISOLINA PICON; and**

**[PROPOSED] ORDER RE DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S DEMURRER TO COMPLAINT OF ISOLINA PICON**

on all other parties to this action by placing a true copy of said document(s) in a sealed envelope in the following manner:

[X] **(BY U.S. MAIL)** by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and mailing at Redwood City, California following our ordinary business practices. I am readily familiar with this office's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

[ ] **(BY OVERNIGHT DELIVERY)** by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and delivery by an overnight delivery carrier with delivery fees paid or provided for in accordance with this office's practice. I am readily familiar with this office's practice for processing correspondence for delivery the following day by an overnight delivery carrier.

[ ] **(BY E-MAIL OR ELECTRONIC TRANSMISSION)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address shown below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ] **(BY FACSIMILE TRANSMISSION)** by telefaxing a true copy of said document(s) at ____, ____ m. on the date stated above to the addressee(s) and number(s) shown below. A transmission report was properly issued by the transmitting facsimile machine and is attached hereto. The transmission was reported as completed and without error.

[ ] **(BY PERSONAL SERVICE)** I caused such envelope(s) to be hand-delivered to the addressee(s) shown below. A proof of service signed by the authorized courier will be filed forthwith.

1

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

2

3

[ ] (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

4

5

_____
Gayle Gull

6

Picon v. County of San Mateo et al., - CIV 467161

7

8

**NAME AND ADDRESS OF EACH PERSON TO WHOM SERVICE WAS MADE**

9

AYANNA L. JENKINS-TONEY, ESQ.                    Attorney for Plaintiff
225 BUSH STREET, 16TH FLOOR                    Isolina Picon

10

SAN FRANCISCO  CA  94104

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034
5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY
8

**RECEIVED**

**DEC 2 8 2007**

SUPERIOR COURT
CIVIL DIVISION

9
10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
11                   IN AND FOR THE COUNTY OF SAN MATEO
12

13  ISOLINA PICON                          Case No. 467161

14          Plaintiff,                     **[PROPOSED] ORDER RE DEFENDANTS
                                           COUNTY OF SAN MATEO AND ROBERT
15      vs.                                FOUCRAULT'S DEMURRER TO
                                           COMPLAINT OF ISOLINA PICON**
16  COUNTY OF SAN MATEO, ROBERT
    FOUCRAULT, individual and as Coroner, SAN
17  MATEO COUNTY

18          Defendants.
19
20
21
22
23
24
25
26
27
28

Case No. 467161

[PROPOSED] ORDER RE DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S
DEMURRER TO COMPLAINT OF ISOLINA PICON

1    The demurrer of Defendants County of San Mateo and Robert Foucrault (Collectively "County of

2    San Mateo") came on regularly for hearing on January 29, 2008, at 9:00 a.m. in the Law and Motion

3    Department of the Superior Court of the County of San Mateo, the Honorable _____,

4    presiding.  Defendants appeared by and through their attorney, Deputy County Counsel, John Nibbelin.

5    Plaintiff appeared by and through her attorney, Ayanna Jenkins-Toney.

6    The Court, having reviewed the Demurrer, and all papers filed in connection thereto, and having

7    heard the oral argument of the parties, the Court, HEREBY ORDERS as follows:

8           1.  The Court SUSTAINS Defendant County of San Mateo's Demurrer to the FIRST

9               CAUSE OF ACTION without leave to amend;

10          2.  The Court SUSTAINS Defendant County of San Mateo's Demurrer to the

11              SECOND CAUSE OF ACTION without leave to amend; and

12          3.  The Court SUSTAINS Defendant County of San Mateo's Demurrer to the THIRD

13              CAUSE OF ACTION without leave to amend.

14    IT IS SO ORDERED.

15

16    Dated: January ___, 2008

17

18                                    _____
                                     HONORABLE
                                     JUDGE OF THE SUPERIOR COURT

19

    L:\LITIGATE\P_CASES\PICON\Pleadings\Proposed Order Sustaining Demurrer 12-18-07.doc
20

21

22

23

24

25

26

27

28

Case No. 467161                                2
[PROPOSED] ORDER RE DEFENDANTS COUNTY OF SAN MATEO AND ROBERT FOUCRAULT'S
DEMURRER TO COMPLAINT OF ISOLINA PICON

1  MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
   By: John D. Nibbelin, Deputy (SBN 184603)
2  By: Rebecca M. Archer, Deputy (SBN 202743)
   Hall of Justice and Records
3  400 County Center, 6th Floor
   Redwood City, CA  94063
4  Telephone: (650) 363-4686
   Facsimile:  (650) 363-4034

5
   Attorneys for Defendants
6  COUNTY OF SAN MATEO, ROBERT
   FOUCRAULT, individually and as Coroner, SAN
7  MATEO COUNTY

8

9

10                  IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      IN AND FOR THE COUNTY OF SAN MATEO

12

13  ISOLINA PICON                          Case No. 467161

14          Plaintiff,                     **NON-CALIFORNIA CASES CITED IN**
                                           **SUPPORT OF DEFENDANTS COUNTY OF**
15      vs.                                **SAN MATEO AND ROBERT**
                                           **FOUCRAULT'S DEMURRER TO**
16  COUNTY OF SAN MATEO, ROBERT            **COMPLAINT OF ISOLINA PICON**
    FOUCRAULT, individual and as Coroner, SAN
17  MATEO COUNTY                           Hearing:

18          Defendants.                    Date:   January 29, 2008
                                           Time:   9:00 a.m.
19                                         Dept:   Law and Motion

20

21

22

23

24

25

26

27

28

   Case No. 467161
   NON-CALIFORNIA CASES CITED IN SUPPORT OF DEFENDANTS COUNTY OF SAN MATEO AND
              ROBERT FOUCRAULT'S DEMURRER TO COMPLAINT OF ISOLINA PICON

1    Pursuant to California Rule of Court 3.1113(j), Defendants, the County of San Mateo and Robert

2  Foucrault, hereby lodge the following non-California authorities:

3    1.    Attached hereto as Exhibit A is a true and correct copy of *Sabow v. United States* (9th Cir.

4    1996) 93 F.3d 1445.

5  Dated:  December 28, 2007

Respectfully submitted,

MICHAEL P. MURPHY, COUNTY COUNSEL

By: _____
Rebecca M. Archer, Deputy

Attorneys for Defendants
COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individual and as Coroner, SAN
MATEO COUNTY

L:\LITIGATE\P_CASES\PICON\Pleadings\Lodging of Fed Cases.doc

93 F.3d 1445

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799

**(Cite as: 93 F.3d 1445)**

▷
Sabow v. U.S.
C.A.9 (Cal.),1996.

United States Court of Appeals,Ninth Circuit.
Sara Townsend SABOW; Thomas F. Sabow; Vera Sabow; David N. Sabow; Dierdre Sabow; John David Sabow, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
No. 94-56634.

Argued and Submitted April 8, 1996.
Decided Aug. 28, 1996.
As Amended Sept. 26, 1996.

Family of Marine Corps officer who died of gunshot wound while under investigation for alleged misuse of military aircraft brought action under the Federal Tort Claims Act (FTCA) seeking damages under tort theories of negligent infliction of emotional distress, intentional infliction of emotional distress, negligent handling of human remains, and personal injury. The United States District Court for the Central District of California, Alicemarie H. Stotler, J., dismissed claims for lack of subject-matter jurisdiction and failure to state a claim, and plaintiffs appealed.    The Court of Appeals, Michael Daly Hawkins, Circuit Judge, held that: (1) discretionary function exception of the FTCA precluded negligent infliction of emotional distress claims based on conduct of investigators from the Naval Investigative Service (NIS) and the Office of the Judge Advocate General (JAG) during course of investigation into death of decedent; (2) discretionary function exception did not bar claims of negligent infliction of emotional distress based on conduct of Marine Corps general and other military personnel during course of five-hour meeting with family, and thereafter; (3) plaintiffs stated claim under California law for intentional infliction of emotional distress based on conduct of general; (4) intentional torts exception to the FTCA did not bar intentional infliction of emotional distress claims, as they did not arise of enumerated tort of defamation; and (5) military had no duty of care under California law to treat decedent's remains in a certain manner during investigation.

Affirmed in part, reversed in part, and remanded.
West Headnotes

**[1] Federal Courts 170B 🔑776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases
Dismissal for failure to state a claim is reviewed de novo, and review is limited to contents of complaint.

**[2] Federal Civil Procedure 170A 🔑1829**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1829 k.    Construction    of Pleadings. Most Cited Cases

**Federal Civil Procedure 170A 🔑1835**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
On motion to dismiss for failure to state a claim, all allegations of material fact are taken as true and construed in light most favorable to nonmoving party.

**[3] Federal Civil Procedure 170A 🔑1773**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)3 Pleading, Defects In, in General
                170Ak1773 k. Clear or Certain Nature of Insufficiency. Most Cited Cases
Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle plaintiff to relief.

**[4] Federal Courts 170B 🔑776**

EXHIBIT A

93 F.3d 1445
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

Page 2

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases
Existence of subject-matter jurisdiction is question of law reviewed de novo.

**[5] Federal Courts 170B ⟊870.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk870 Particular Issues and Questions
                170Bk870.1 k. In General. Most Cited Cases
District court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous.

**[6] United States 393 ⟊78(12)**

393 United States
    393V Liabilities
        393k78 Torts
            393k78(12) k. Execution of Statutes or Regulations; Discretionary Acts or Functions. Most Cited Cases
Where discretionary function exception to the Federal Tort Claims Act (FTCA) applies, no federal subject-matter jurisdiction exists. 28 U.S.C.A. § 2680(a).

**[7] United States 393 ⟊141(3)**

393 United States
    393IX Actions
        393k141 Evidence
            393k141(1) Presumptions and Burden of Proof
            393k141(3) k. Torts. Most Cited Cases
While plaintiffs bears initial burden of proving subject-matter jurisdiction under the Federal Tort Claims Act (FTCA), the United States bears ultimate burden of proving applicability of discretionary function exception. 28 U.S.C.A. § 2680(a).

**[8] United States 393 ⟊78(12)**

393 United States
    393V Liabilities

        393k78 Torts
            393k78(12) k. Execution of Statutes or Regulations; Discretionary Acts or Functions. Most Cited Cases
Court of Appeals uses two-step analysis to determine whether challenged conduct falls under discretionary function exception of the Federal Tort Claims Act (FTCA); Court first asks whether challenged actions involve an element of judgment or choice; if challenged actions involve an element of choice or judgment, Court must then determine whether judgment is one of the kind that the discretionary function exception was designed to shield, i.e., if judgment involves considerations of social, economic, or political policy, the exception applies. 28 U.S.C.A. § 2680(a).

**[9] United States 393 ⟊78(12)**

393 United States
    393V Liabilities
        393k78 Torts
            393k78(12) k. Execution of Statutes or Regulations; Discretionary Acts or Functions. Most Cited Cases
"Discretionary act" requirement of the discretionary function exception the Federal Tort Claims Act (FTCA) is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow; in such event, employee has no rightful option but to adhere to the directive. 28 U.S.C.A. § 2680(a).

**[10] United States 393 ⟊78(12)**

393 United States
    393V Liabilities
        393k78 Torts
            393k78(12) k. Execution of Statutes or Regulations; Discretionary Acts or Functions. Most Cited Cases
Discretionary function exception to the Federal Tort Claims Act (FTCA) barred negligent infliction of emotional distress claims arising from actions of investigators of the Naval Investigative Service (NIS) and the Office of the Judge Advocate General (JAG) during course of their investigation of shooting death of Marine Corps officer; investigators were not required to follow specific investigative regulations and directives detailed in investigative manual, and thus they were performing discretionary acts; moreover, discretionary judgments by investigators involved social, economic or political considerations. 28 U.S.C.A. § 2680(a).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

Page 3

[11] **United States 393** 78(12)

393 United States
    393V Liabilities
        393k78 Torts
            393k78(12) k. Execution of Statutes or Regulations; Discretionary Acts or Functions. Most Cited Cases
Discretionary function exception of the Federal Tort Claims Act (FTCA) did not bar negligent infliction of emotional distress claims arising from decision of Marine Corps general to berate members of family of deceased Marine Corps officer whose shooting death was under investigation and from general's threat to "go after" medical license of decedent's brother who questioned investigators' conclusion that death was suicide; general had no legitimate policy rationale for resorting to verbal abuse and for threatening brother's medical license as response to possibility that family's complaints about investigation might be publicly aired. 28 U.S.C.A. § 2680(a).

[12] **Damages 115** 57.21

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
                    115k57.21 k. Elements in General. Most Cited Cases
                        (Formerly 115k50.10)
Under California law, elements of intentional infliction of emotional distress are: extreme and outrageous conduct by defendant with intention of causing, or reckless disregard of the probability of causing, emotional distress; plaintiff's suffering severe or extreme emotional distress; and actual and proximate causation of emotional distress by defendant's outrageous conduct.

[13] **Damages 115** 57.22

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional

Distress
                115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
                    115k57.22 k. Nature of Conduct. Most Cited Cases
                        (Formerly 115k50.10)
To satisfy element of intentional infliction of emotional distress under California law, conduct of defendant must not only be intentional and outrageous, but must also be directed at plaintiff, or occur in presence of plaintiff of whom defendant is aware.

[14] **Damages 115** 57.25(2)

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
                    115k57.25 Particular Cases
                        115k57.25(2) k. Government; Criminal Justice. Most Cited Cases
                            (Formerly 115k50.10)
Widow of Marine Corps officer found dead of gunshot wound failed to state a claim under California law for intentional infliction of emotional distress based on alleged failure of military to properly investigate husband's death, military's handling of decedent's remains, and investigators' questioning of widow shortly after she discovered her husband's body; neither alleged failure to follow investigative guidelines nor alleged negligent handling of remains was conduct directed at widow or that occurred in presence of widow; moreover, questioning of widow on morning she found body was not so "extreme and outrageous" as to be actionable.

[15] **Damages 115** 57.25(2)

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

Page 4

115k57.25 Particular Cases
    115k57.25(2) k. Government; Criminal Justice. Most Cited Cases
    (Formerly 115k50.10)
Family of Marine Corps officer who died of gunshot wound while under investigation for alleged misuse of military aircraft stated claim under California law for intentional infliction of emotional distress based on conduct of Marine Corps general during meeting with family six weeks after officer's death; complaint alleged that general continually and repeatedly stated that officer had killed himself due to serious allegations of misconduct against him, and that officer was a "crook" and a "felon," and complaint further alleged that general "became furious and began screaming at" family members in response to questions regarding investigation; alleged conduct was particularly outrageous as it allegedly was designed to prevent family from "going public" with their concerns about investigation.

[16] Damages 115 🗝57.25(2)

115 Damages
   115III Grounds and Subjects of Compensatory Damages
    115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
     115III(A)2 Mental Suffering and Emotional Distress
      115k57.19 Intentional or Reckless Infliction of Emotional Distress; Outrage
      115k57.25 Particular Cases
       115k57.25(2) k. Government; Criminal Justice. Most Cited Cases
      (Formerly 115k50.10)
Family of Marine Corps officer who died of gunshot wound stated a claim for intentional infliction of emotional distress under California law based on conduct of Marine Corps general in relation to decedent's brother, a doctor who questioned conclusion of investigators that death was a suicide; complaint alleged that general instructed Marine Corps personnel to investigate ways in which brother's medical license could be attacked; alleged use of illegitimate means to fulfill impermissible ends of silencing criticism of military's investigation supported claim.

[17] United States 393 🗝78(5.1)

393 United States
   393V Liabilities
    393k78 Torts

     393k78(5) Nature of Act or Claim
      393k78(5.1) k. In General. Most Cited Cases
In determining whether a claim "arises out of" one of enumerated torts in the intentional torts exception of the Federal Tort Claims Act (FTCA), Court of Appeals looks beyond plaintiff's classification of cause of action to examine whether conduct upon which the claim is based constitutes one of the torts listed in statute. 28 U.S.C.A. § 2680(h).

[18] United States 393 🗝78(9)

393 United States
   393V Liabilities
    393k78 Torts
     393k78(5) Nature of Act or Claim
      393k78(9) k. Personal Injuries in General. Most Cited Cases
Intentional tort exception of the Federal Tort Claims Act (FTCA) did not bar intentional infliction of emotional distress claim brought by family of Marine Corps officer who died of gunshot wound while under investigation for alleged misuse of military aircraft, based on pattern of conduct of general and other military personnel during meeting with family, as alleged conduct did not "arise out of" enumerated tort of defamation; although general stated during meeting that decedent was a "crook" and a "felon," complaint concerned allegedly abusive delivery of statements, rather than their "defamatory" nature; rather, complaint was based on pattern of conduct of military personnel during meeting, which included denying family members opportunity to take a break during five-hour meeting, subjecting them to intense verbal abuse during meeting, and threatening to destroy decedent's reputation if family exercised their right to speak publicly about their concerns. 28 U.S.C.A. § 2680(h).

[19] United States 393 🗝78(9)

393 United States
   393V Liabilities
    393k78 Torts
     393k78(5) Nature of Act or Claim
      393k78(9) k. Personal Injuries in General. Most Cited Cases
Intentional torts exception to the Federal Tort Claims Act (FTCA) did not bar intentional infliction of emotional distress claim which was based on allegations that Marine Corps general attempted to impugn integrity of medical doctor who questioned conclusions of military investigators that death of his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

Page 5

brother, a Marine Corps officer, was a suicide; general initiated investigation into status of doctor's medical license, and drafted letter, which was never sent but whose existence was made known to doctor, to state board of medical examiners accusing doctor of criminal and unethical misconduct; claim did not arise out of enumerated tort of defamation, as focus of complaint was not "defamatory" content of letter but behavior of general who attempted to impugn doctor's integrity. 28 U.S.C.A. § 2680(h).

[20] Dead Bodies 116 ⟨⟩9

116 Dead Bodies
   116k9 k. Civil Liabilities for Illegal Acts. Most Cited Cases
Military investigators investigating shooting death of Marine Corps officer had no duty under California law to treat decedent's remains in a certain manner during investigation, precluding claim for negligent handling of remains based on allegation that body was left in the sun for seven hours.

*1448 Daniel P. Sheehan, (argued), Carpinteria, California; Jaime D. Banfield, (on the briefs), Copenbarger & Associates, Santa Ana, California, for plaintiffs-appellants.
Mary L. Perry, Assistant United States Attorney, Los Angeles, California, for defendant-appellee.

Appeal from the United States District Court, for the Central District of California, Alicemarie H. Stotler, District Judge, Presiding. D.C. No. CV-93-00991-AHS.

Before: GOODWIN and HAWKINS, Circuit Judges, and MARQUEZ,[FN*] District Judge.

   FN* The Honorable Alfredo C. Marquez, Senior United States District Judge for the District of Arizona, sitting by designation.

MICHAEL DALY HAWKINS, Circuit Judge:
Appellants appeal the district court's decision to dismiss their Federal Tort Claims Act ("FTCA") claims for lack of subject matter jurisdiction and failure to state a claim. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

I. FACTS

This appeal arises out of the unfortunate death of

decorated Marine Corps Colonel James E. Sabow and the subsequent investigation of that death by military authorities. *1449 Because the case comes to us after its dismissal for lack of subject matter jurisdiction and for failure to state a claim, we are required to assume that the facts alleged in the Complaint are true and it is from that source that we draw the following tangled web.

In early 1991, the Office of the Inspector General of the Marine Corps ("IGMC") was in the midst of an investigation into alleged misuse of military aircraft by high-ranking Marine Corps officers at the Marine Corps Air Station in El Toro, California ("MCAS-El Toro"). First brought to the attention of Department of Defense authorities by an anonymous tip, the investigation centered around the personal use of military aircraft. Colonel Joseph Underwood, Chief of Staff for Marine aircraft operations in the Western United States and Colonel Sabow's immediate supervisor, was an early casualty of the investigation, having been relieved of his duties on approximately January 12, 1991. On January 14, Colonel Sabow was named to replace Colonel Underwood as Chief of Staff on an acting basis.

The next day the investigative net apparently widened to include Colonel Sabow, who was informed that he was a possible target of the investigation into the use of Marine Corps aircraft at MCAS-El Toro. No formal charges had been levied against Colonel Sabow and the allegations involving him, even if true, did not appear to be career-threatening.[FN1]

   FN1. The investigation of Colonel Sabow apparently centered on his alleged use of military aircraft to transport some personal items (e.g. stereo equipment) to his son in another state. None of the similar charges against other officers, arising out of the same investigation, had resulted in criminal charges of any kind.

At about 9:30 AM on January 22, 1991, Mrs. Sarah Sabow found the body of her husband Colonel Sabow in the back yard of the family quarters at MCAS-El Toro. Colonel Sabow had sustained a massive shotgun blast to the head.

Mrs. Sabow immediately ran next door to the quarters of Colonel Underwood to report her gruesome discovery. Colonel Underwood immediately made a telephone call to General Wayne

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799

Page 6

(Cite as: 93 F.3d 1445)

T. Adams ("General Adams"). General Adams was the Commanding General of MCAS-El Toro and the senior person in the chain of command over base air operations that included both Colonel Sabow and Colonel Underwood.

After being alerted to Colonel Sabow's death by Colonel Underwood, General Adams called the Provost Marshal (base military police), who went to the Sabow quarters and began an investigation into the circumstances of Colonel Sabow's death. Naval Investigative Service ("NIS") agents soon arrived on the scene and took over the investigation. Thereupon began the first of three investigations, each of which the Sabows allege were unprofessional, ineffective, and blindly insensitive to the concerns of the Sabow family.[FN2] All three investigations-one conducted by the NIS and two conducted by the Office of the Judge Advocate General ("JAG")-concluded that Colonel Sabow committed suicide.[FN3]

FN2. The Complaint alleged, *inter alia,* that the crime scene was not secured, important evidence was moved and manipulated before pictures of the scene were taken, no effort was made to securely handle critical evidence-including the shotgun found at the scene (on which, curiously, no prints of Colonel Sabow were ever found)-and that Mrs. Sabow was subjected to a withering investigative interview without benefit of any support or assistance. In addition, the body of Colonel Sabow was left in the sun for more than seven hours.

FN3. The NIS completed its report on the death of Colonel Sabow on August 27, 1991. On January 23, 1991, the Commander's Office of the Marine Corps Air Bases Western Area instructed JAG to begin its own investigation into Colonel Sabow's death. That investigation was completed on February 7, 1991. On December 10, 1991, a second JAG investigation was initiated, and on December 13, 1991 that investigation was closed.

Soon after the first investigation began, Colonel Sabow's brother John David Sabow *1450 ("Dr.Sabow") arrived to assist his sister-in-law. A board-certified neurosurgeon in South Dakota, Dr. Sabow soon began to believe that his brother had not

committed suicide, but rather may have been the victim of foul play. Dr. Sabow pressed military authorities, including General Adams, for answers to questions about the facts and circumstances surrounding his brother's death.[FN4]

FN4. He questioned, for example, the presence of large amounts of blood in Colonel Sabow's lungs-a fact physically incompatible, according to his medical training, with a single self-inflicted wound to the face severing the brain stem.

Dissatisfied with the responses he was receiving, Dr. Sabow threatened to "go public" with his concerns. This was immediately brought to the attention of General Adams, who attempted to diffuse the situation by proposing a meeting with the family and responsible investigative officials. The meeting, General Adams promised, would "clear the air" about the investigation.

Unbeknownst to the Sabow family, General Adams actually planned to convince them that "going public" would only mean the release of terribly damaging information about Colonel Sabow's alleged activities prior to his death. The meeting took place on March 9, 1991 in General Adams' office at MCAS-El Toro. Lasting nearly five hours, during which time neither Mrs. Sabow nor Dr. Sabow were offered a recess or refreshments, General Adams allegedly went on a verbal tirade. Ignoring that Colonel Sabow had not even been formally accused, let alone convicted, of any criminal offense, General Adams is alleged to have continually referred to him as a "crook" and a "felon."

Sometime after the meeting, General Adams learned that Dr. Sabow had apparently made an inquiry at MCAS-Yuma, Arizona about Adams' own medical records. In response, General Adams allegedly ordered military officials under his command to advise him how he could "go after" Dr. Sabow's medical license. The Sabows allege that the General planned to draft a letter to South Dakota medical licensing authorities making the strongest complaint that could be mustered against Dr. Sabow, confront him, and threaten to send it unless Dr. Sabow ceased all questioning of the investigation into Colonel Sabow's death and left the El Toro area. Although the letter was never sent, General Adams allegedly allowed a copy of it to "fall into Dr. Sabow's hands."

In June 1994, Sarah Sabow, Dr. Sabow and other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 Case 3:08-cv-00766-SC    Document 3-7    Filed 02/07/2008    Page 30 of 37

Page 7
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

members of the family brought this action under the FTCA seeking damages under the tort theories of negligent infliction of emotional distress, intentional infliction of emotional distress, negligent handling of human remains, and personal injury. The district court dismissed the Sabows' action in its entirety for lack of subject matter jurisdiction and for failure to state a claim. For the reasons set forth below, we affirm the dismissal of those claims generally based on the conduct of the investigation into the death of Colonel Sabow, but reverse as to those that have as their nexus the actions of General Adams, including his statements at the March 9 meeting and his actions and statements directed toward Dr. Sabow.

## II. STANDARDS OF REVIEW

[1][2][3] A dismissal for failure to state a claim is reviewed de novo. *Stone v. Travelers Corp.*, 58 F.3d 434, 436-37 (9th Cir.1995). Review is limited to the contents of the complaint. *Argabright v. United States*, 35 F.3d 472, 474 (9th Cir.1994). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1340 (9th Cir.1995). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle plaintiff to relief. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995).

[4][5] The existence of subject matter jurisdiction is a question of law reviewed de novo. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir.1995). The district court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous. *Nike, Inc. v. Comercial Iberica de Exclusivas*, 20 F.3d 987, 990 (9th Cir.1994).

## *1451 III. DISCUSSION

The district court dismissed each of the Sabows' claims on one of two grounds. The court dismissed most of the Sabows' claims for lack of subject matter jurisdiction pursuant to the discretionary function and intentional torts exceptions to the FTCA. *See* 28 U.S.C. § 2680(b) (discretionary function exception); 28 U.S.C. § 2680(h) (intentional torts exception). As to those claims to which the court determined no FTCA exception applied, the court held that the Sabows had failed to state a claim under California tort law and dismissed those claims pursuant to §

1346(b) of the FTCA. *See* 28 U.S.C. § 1346(b) (requiring that FTCA claim comprise a cause of action "in accordance with the law of the place where the act or omission occurred"). We turn to an examination of whether the Sabows established subject matter jurisdiction and an actionable cause under California tort law as to each of the four claims alleged in their complaint.

### A. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS [FN5]

FN5. Whether the Sabows' complaint states a claim for negligent infliction of emotional distress is not at issue on appeal, and thus is not discussed below.

#### 1. The NIS and JAG Investigations

Does The FTCA's Discretionary Function Exception Strip The District Court of Subject Matter Jurisdiction Over The Sabows' Negligent Infliction Claim?

*Statutory Framework and Legal Standards*

[6][7] The FTCA is a waiver of sovereign immunity, limited in part by the discretionary function exception. The discretionary function exception covers any FTCA claims "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Where the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists. *In re Glacier Bay*, 71 F.3d 1447, 1450 (9th Cir.1995). While plaintiff bears the initial burden of proving subject matter jurisdiction under the FTCA, "... the United States bears the ultimate burden of proving the applicability of the discretionary function exception...." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir.1992).

[8][9] We use a two-step analysis to determine whether challenged conduct falls under the discretionary function exception. First, we ask whether the challenged actions involve "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quotation omitted). This

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 8
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

"discretionary act" requirement is not satisfied if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). If the challenged actions involve an element of choice or judgment, we then must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23, 111 S.Ct. at 1273-74. More specifically, "if the judgment involves considerations of social, economic, or political policy, the exception applies." *In re Glacier Bay*, 71 F.3d at 1450. Both the discretionary act prong and the policy judgment prong of the discretionary function exception must be satisfied before the exception will apply.

## Analysis

### Were The Investigative Acts Of The NIS And JAG Discretionary Acts?

The Sabows argue that the NIS and JAG officers investigating Colonel Sabow's death were required to follow specific investigative regulations and directives detailed in both the NIS investigative manual and the JAG investigative manual. Accordingly, the Sabows conclude that the discretionary act prong is not satisfied as to any action (or inaction) that did not conform to procedures set out in the NIS or JAG investigative manuals. The government argues that because the NIS and JAG manuals only provide general guidelines for investigative activity*1452 while leaving significant discretion to the field agents to conduct an investigation, the discretionary act prong is satisfied. We review the relevant provisions of the NIS and JAG manuals separately to determine whether the investigators were performing discretionary acts.

### NIS Investigation

[10] The NIS manual sections cited by the Sabows did not require a specific course of action.[FN6] Rather, the NIS manual in general and the sections cited by the Sabows in particular are meant to comprise a set of investigative guidelines to be followed at the discretion of the investigating officer(s). The manual consistently notes that the NIS' guidelines, while

generally applicable to most investigations, should only be followed when appropriate to the specific "crime scene" under investigation. Typical are the manual's prefaces to the lists of measures normally appropriate to the "Collection and Preservation of Physical Evidence,"*see* NIS Manual § 1202(2) ("Obviously, there is no definite rule or set of rules that can be applied to defining the dimensions of the scene of a crime."), "Searching The Crime Scene," *see* NIS Manual § 1203(1) ("While the circumstances of a particular case will naturally govern the actions taken to protect and preserve the physical evidence, the following are considered generally valid guides."), and "Death Investigations," *see* NIS Manual § 3001(1) ("This chapter provides policy and guidance for NIS personnel engaged in the investigation of deaths which occur under other than natural circumstances."). Clearly, the guidelines promulgated by the NIS in its investigative manual were meant to be followed at the discretion of NIS investigating officers in light of the specific circumstances surrounding a particular investigation. *See generally Pooler v. United States*, 787 F.2d 868, 871 (3d Cir.), *cert. denied*, 479 U.S. 849, 107 S.Ct. 175, 93 L.Ed.2d 111 (1986) ("Decision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments."(quoting *Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir.1980), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980))); *Hobdy v. United States*, 762 F.Supp. 1459, 1461 (D.Kan.1991), *aff'd*, 968 F.2d 20 (10th Cir.1992) ("[T]he decision how to investigate, who to investigate, and how to present evidence to the proper authorities are classic examples of discretionary conduct."(internal quotations and citation omitted)).

FN6. The Sabows allege in their first amended complaint that the NIS was responsible for at least twenty violations of mandatory directives found in nine sections of the NIS manual. The Sabows specifically alleged that each of the following investigative actions and/or inactions violated a mandatory NIS directive: multiple failures to preserve physical evidence, mishandling of physical evidence, alteration of the physical evidence prior to taking photographs, failure to get fingernail scrapings and properly preserve other physical evidence relating to Colonel Sabow, failure to secure attendance of a Armed Forces Medical Examiner at the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

autopsy, improper questioning of Mrs. Sabow, failure to forward the autopsy report to the Armed Forces Institute of Pathology for review, exclusive reliance on interview summaries rather than sworn statements from witnesses, failure to resolve inconsistencies in witness statements, failure to consider all the evidence, failure to treat Colonel Sabow's death as a possible homicide, failure to seek assistance of mental health professional qualified in forensic science, concealment of loss and/or contamination of physical evidence.

More specifically, the individual directives cited by the Sabows do not prescribe courses of action that must be followed by NIS officers conducting an investigation.[FN7] With few exceptions, each of the NIS provisions cited by the Sabows are cast in suggestive ("should") rather than mandatory ("must") terms. *See In re Glacier Bay, 71 F.3d at 1452* (noting that "should" is "suggestive, not mandatory"); *compare Valdez, 56 F.3d at 1179* (holding that discretionary act prong satisfied where suggestive Park Service policy guidelines at issue); *Sutton v. Earles, 26 F.3d 903, 908 (9th Cir.1994)* (suggestive Corps of Engineers regulations), *with In re Glacier Bay, 71 F.3d at 1451-52* (holding that discretionary act prong is not satisfied when mandatory provisions of Department of Commerce's *1453 Hydrographic Manual and Cook Inlet Survey Project Instructions at issue); *Faber v. United States, 56 F.3d 1122, 1126 (9th Cir.1995)* (reviewing "three specific and mandatory" safety measures included in National Forest Service's safety regulations). Although several of the violations alleged by the Sabows correspond to guidelines in the NIS manual that are phrased in mandatory terms, *see, e.g.,*NIS Manual § 1203(1)(g) (investigative agent assuming responsibility for scene "must" make all information available to "search leader"), NIS Manual § 3001 ("NIS shall initiate an investigation" into non-natural deaths), the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations. *See Chamberlin v. Isen, 779 F.2d 522, 525 (9th Cir.1985)* (reviewing Manual of Patent Examining Procedures and concluding that while "[i]t is true that the MPEP contains some mandatory language[, f]or the most part, however, the MPEP only suggests or authorizes procedures for patent examiners to follow").

FN7. Examining each alleged NIS/JAG

guideline individually is in keeping with our observation that, in making the discretionary function determination, "the proper level of inquiry must be act by act." *In re Glacier Bay, 71 F.3d at 1451* (citations omitted).

We find that the NIS investigative agents did not violate any mandatory NIS directives; rather, they exercised-callously, plaintiffs allege-the considerable discretion afforded to NIS agents assigned to collect evidence and conduct investigations.

*JAG Investigations*

The Sabows allege that the JAG's Office was responsible for at least ten violations of mandatory directives found in three sections of the JAG investigative manual.[FN8] Like the NIS manual, the JAG manual establishes suggestive guidelines and not mandatory investigative prescriptions. *See Blakey v. U.S.S. Iowa, 991 F.2d 148, 153 (4th Cir.1993)* ("The guidelines offer suggestions that officers may consider, but the JAG Manual does not mandate any given procedure for investigations."). None of the provisions cited by the Sabows are cast in mandatory terms, and the JAG manual makes clear that officers are entitled to discretion in conducting an investigation in a death of non-natural causes. Accordingly, we hold that the JAG investigators were performing discretionary acts, and thus that the discretionary act prong of the discretionary function exception is satisfied.

FN8. The Sabows specifically allege that each of the following actions and/or inactions during the JAG's first investigation of Colonel Sabow's death violated a mandatory JAG directive: conducting a JAG investigation before the NIS investigation had been completed, relying on NIS interviews and completing JAG investigation before the NIS had completed interviewing all the witnesses, failing to make an independent investigation of Colonel Sabow's death, and impermissibly including an opinion in the final report regarding whether Colonel Sabow was "acting in the line of duty."

The Sabows alleged that each of the following actions and/or inactions during the JAG's second investigation violated a mandatory JAG directive: allowing inadequate time to complete the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 10
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

investigation, misquoting witness statements in the final report, failing to interview unbiased witnesses, relying exclusively on NIS witness statement summaries, failing to independently verify facts, and assuming Colonel Sabow had engaged in criminal conduct regarding the use of Marine Corps aircraft.

### Did The Investigative Actions Of The NIS And JAG Involve Considerations Of Social, Economic, Or Political Policy?

The Sabows argue that even if the government satisfies the discretionary act prong of the discretionary function exception inquiry, the actions taken by the NIS and JAG investigative officers did not involve "considerations of social, economic, or political policy" and thus the government fails the second half of the two-part discretionary function test. Because the same analysis applies to both the actions of the NIS and the JAG, we treat them together. We find that the actions of the NIS and JAG investigators did involve considerations of social, economic, or political policy.

The investigation into Colonel Sabow's death involved the types of social and political judgments that Congress meant to shield from FTCA challenges. Investigations by federal law enforcement officials, particularly those involving the U.S. military, clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation. *See* *1454*Flax v. United States, 847 F.Supp. 1183, 1190-91 (D.N.J.1994)* (holding that surveillance activity by FBI requires discretion and social, economic, and political judgments, so exception applies); *see generally* *Pooler v. United States, 787 F.2d at 871* (holding that "Congress did not intend to provide for judicial review of the quality of investigative efforts"). In addition to the types of political and social considerations that would generally affect an investigation into the non-natural death of a Marine Corps Colonel, the investigation of Colonel Sabow's death was potentially influenced by a specific, highly political series of events: the Marine Corps' then-ongoing, and increasingly well-publicized,[FN9] investigation into abuses of Marine Corps flying privileges and resources by MCAS-El Toro officers. Under these circumstances, it cannot be gainsaid that the investigations into Colonel Sabow's death were intertwined with political and social considerations.

FN9. The morning of Colonel Sabow's death, the Orange County Register reported that Colonel Underwood, the chief of staff at the base at which Colonel Sabow was stationed, had been relieved of his duties and was under investigation for improper use of his position. *See*"Second in Command at El Toro Relieved of Duties,"**The Orange County Register,** January 22, 1991 at B1.

Because we believe that the NIS' and JAG's discretionary judgments involved social, economic, or political considerations, we affirm the district court's discretionary function exception determination as it relates to claims arising out of the allegedly negligent failure to follow the investigative procedures set out in the NIS and JAG investigative manuals. Although some of the actions and inactions alleged by the Sabows, if true, represent alarming instances of poor judgment and a general disregard for sound investigative procedure, the investigative agents took discretionary action involving considerations of social and political policy. Accordingly, we affirm the district court's dismissal of the Sabows' negligent infliction of emotional distress claim as it relates to the NIS and JAG investigations.

### 2. Conduct Of General Adams And Other Military Officials

### The Discretionary Function Exception

[11] The Sabows' negligent infliction claim, to the extent it is not based on the allegedly negligent investigative activity of NIS and JAG personnel, is not barred by the discretionary function exception. General Adams' decision (as alleged by the Sabows) to berate the Sabows at the March 1991 meeting and to investigate Dr. Sabow does not involve considerations of social, economic, or political policy of the type Congress intended to shield from FTCA actions. General Adams had no legitimate policy rationale for resorting to verbal abuse and an investigation of Dr. Sabow's medical license as a response to the possibility that complaints about the military's investigation into the Sabow death might be publicly aired. Thus, to the extent the Sabows' negligent infliction claim is based on those specific acts, the discretionary function exception does not apply.[FN10]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

FN10. Because we find that the government has failed to satisfy the second part of the two-part discretionary function test, we do not address whether the government has satisfied the first part of the test.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### 1. Did The Sabows State An Actionable Cause Under California Law?

*Legal Standard*

[12][13] Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct.

Christensen v. Superior Court, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181, 202 (1991) (in bank) (quotations and citations omitted). The conduct must not only be intentional and outrageous, but must also be "directed at *1455 plaintiff, or occur in the presence of a plaintiff of whom defendant is aware." Id

*Analysis*

[14] The Sabows contend that the NIS' and JAG's alleged failure to properly investigate Colonel Sabow's death, the military's handling of Colonel Sabow's remains, the NIS' questioning of Mrs. Sabow shortly after she had discovered her husband's body, General Adams' conduct during the March 9, 1991 meeting with Mrs. Sabow and Dr. Sabow, and General Adams' alleged investigation into ways in which Dr. Sabow's medical license could be revoked constitute extreme and outrageous conduct under California law and thus give rise to an actionable cause under § 1346(b) of the FTCA for intentional infliction of emotional distress. The district court disagreed as to the NIS and JAG investigations of Colonel Sabow's death and the handling of Colonel Sabow's remains and dismissed the Sabows' intentional infliction of emotional distress claim for

failure to state a claim insofar as it related to that conduct.

We affirm the district court's decision to dismiss the Sabows' intentional infliction of emotional distress claim as it related to NIS and JAG investigative decisions and the allegedly negligent handling of Colonel Sabow's remains. This includes any allegation relating to a failure to follow investigative guidelines, the negligent handling of Colonel Sabow's remains, and the military's questioning of Mrs. Sabow the morning she found her husband's body. Neither the alleged failure to follow investigative guidelines nor the alleged negligent handling of Colonel Sabow's remains was conduct "directed at the plaintiff[s], or [that] occurr[ed] in the presence of plaintiff[s] of whom the defendant was aware." Christensen, 2 Cal.Rptr.2d 79, 820 P.2d at 202.FN11 And while the decision to question Mrs. Sabow on the morning she found her husband "did not constitute the defendant officers' finest hour," we do not believe the investigator's conduct was so "extreme and outrageous" as to be actionable under California law. Cf Davidson v. Westminster, 32 Cal.3d 197, 185 Cal.Rptr. 252, 649 P.2d 894, 901 (1982) ( "Conduct to be extreme and outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.").

FN11. Nor do the Sabows plead facts supporting a "reckless disregard" theory of liability in relation to the investigative procedures followed and the handling of Colonel Sabow's remains. California does not require a plaintiff to allege that the conduct was directed at plaintiff "when the defendant is aware of, but acts with reckless disregard of the plaintiff and the probability that his [or her] conduct will cause severe emotional distress to that plaintiff." Christensen, 2 Cal.Rptr.2d 79, 820 P.2d at 203-04. The Sabows do not allege facts giving rise to a claim of reckless disregard of the probability of causing severe emotional distress.

The district court did *not* dismiss the two remaining bases of the Sabows' intentional infliction claim (General Adams' conduct during the March 1991 meeting and his attempts to influence the status of Dr. Sabow's medical license) for failure to state an actionable cause under California law.FN12 The government asserts, however, that neither allegation describes extreme and outrageous conduct directed at

Case 3:08-cv-00766-SC    Document 3-7    Filed 02/07/2008    Page 35 of 37

Page 12

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

the Sabows and thus argues on appeal that the two remaining grounds for the Sabows' claim should also be dismissed for failure to state a claim. We disagree.

FN12. The district court did reject the other bases for the Sabows' claim, but did so on the basis of the intentional torts exception to the FTCA. The application of the intentional tort exception to the Sabows' intentional infliction claim is discussed below.

[15] The allegation that General Adams and others, at the March 1991 meeting held six weeks after Colonel Sabow's death, "continually, repeatedly, and adamantly stated th[at] Colonel Sabow had killed himself due to the serious allegations of misconduct against him, and that Colonel Sabow was a 'crook' and a 'felon' and had committed serious violations of the [Uniform Code of Military Justice]," coupled with the allegation that Adams "became furious and began screaming at Dr. Sabow and Mrs. Sabow" in response to Dr. Sabow's questions regarding the investigation, if true, describes "extreme and outrageous" conduct directed at plaintiffs and comprise a claim for intentional infliction under California law. Cf. *Crain v. Krehbiel*, 443 F.Supp. 202, 212-13 (N.D.Cal.1978)*1456 (holding that DEA's verbally threatening and intimidating conduct toward plaintiff during conversations with plaintiff in course of investigation states a claim of extreme and outrageous conduct under California law). The alleged conduct is particularly outrageous given that it allegedly was designed to prevent the Sabows from "going public" with their concerns about the investigation.

[16] Similarly, General Adams' investigation into ways to have Dr. Sabow's medical license revoked, again allegedly coming in response to the Sabows' efforts to find out more about Colonel Sabow's death, also supports a cause for intentional infliction under California law. General Adams alleged use of illegitimate means (instructing Marine Corps personnel to investigate ways in which Dr. Sabow's medical license could be attacked) to fulfill impermissible ends (silence criticism and prevent further inquiries about the military's investigation) clearly supports a claim for intentional infliction.

Moreover, the outrageousness of General Adams' alleged conduct is magnified because the target of his attack was a constitutionally protected property interest, namely Dr. Sabow's medical license. *See* *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238-39, 77 S.Ct. 752, 755-56, 1 L.Ed.2d 796 (1957) (holding that a professional's license is a protected property interest); *Suckow v. Board of Medical Examiners*, 182 Cal. 247, 187 P. 965, 966 (1920) ("The right to practice medicine is, like the right to practice any other profession, a valuable property right, in which, under the Constitution and laws of the state, one is entitled to be protected and secured."(internal quotations omitted)).

In sum, the district court's dismissal of the part of the Sabows' intentional infliction claim based on the actions of the NIS and JAG investigators is affirmed. The Sabows successfully stated a claim, however, for intentional infliction of emotional distress based on the March 1991 meeting and the alleged attempt to investigate Dr. Sabow.

## 2. Does The Intentional Torts Exception Bar The Sabows' Claim? FN13

FN13. To the extent the Sabows' intentional infliction claim is based on the conduct of General Adams at the March 1991 meeting and his decision to target Dr. Sabow's license, the discretionary function exception does not apply. *See ante* at p. 1456.

*Statutory Framework and Legal Standards*

[17] The intentional torts exception to the FTCA specifies that the Act's general waiver of sovereign immunity shall not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...." 28 U.S.C. § 2680(h). In determining whether a claim "arises out of" one of the enumerated torts, we look beyond a plaintiff's classification of the cause of action to examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h). *See* *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir.1990) ("[W]e look beyond [the complaint's] characterization [of the cause of action] to the conduct on which the claim is based."); *Thomas-Lazear v. Federal Bureau of Investigation*, 851 F.2d 1202, 1207 (9th Cir.1988) ("This circuit looks beyond the labels used to determine whether a proposed claim is barred [by the intentional torts exception]"). We focus our § 2680(h) inquiry on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

whether conduct that constitutes an enumerated tort is "essential" to a plaintiff's claim. *See, e.g. Mt. Homes, Inc.*, 912 F.2d at 356 (holding that plaintiff's claim alleged conduct that falls within the excepted tort of misrepresentation because "the essential element of Mt. Homes' claim is that [the government] gave it inaccurate information"); *Thomas-Lazear, 851 F.2d at 1207* ("Put another way, the Government's actions that constitute a claim for slander are essential to Thomas-Lazear's claim for negligent infliction of emotional distress.").

*Analysis*

The district court held that the Sabows' intentional infliction claim, insofar as it was based on the government's conduct during the March 1991 meeting and the investigation of Dr. Sabow, was barred by the intentional torts exception to the FTCA. The district court concluded that the Sabows' allegations *1457 regarding General Adams' characterization of Colonel Sabow as a "crook" and a "felon" and General Adams' investigation into ways to challenge Dr. Sabow's medical license arose out of the tort of defamation, an excepted tort under § 2680(h). The Sabows argue that the district court erred in concluding that their intentional infliction claim was based on defamation. Because we agree with the Sabows, we hold the intentional torts exception does not apply to the Sabows' intentional infliction claim.

### Conduct During The March 1991 Meeting

[18] The district court focused its intentional torts exception inquiry on General Adams' alleged characterization of Colonel Sabow as a "crook" and a "felon." The district court read the Sabows' complaint too narrowly.

The Sabows' intentional infliction claim does not arise out of the "defamation" of Colonel Sabow. Rather, the Sabows base their claim on the pattern of conduct of General Adams and other military personnel during the March 9th meeting. The conduct included denying the Sabows an opportunity to take a break and/or eat or drink during the five-hour meeting, subjecting the Sabows to intense verbal abuse during the meeting, threatening to destroy Colonel Sabow's public reputation if the Sabow family exercised their right to speak publicly about Colonel Sabow's death and the military's investigations, and lying about the quantity and quality of the military's evidence of wrongdoing by Colonel Sabow.

Thus, the district court's focus on General Adams' references to Colonel Sabow as a "crook" and a "felon" was too narrow. As noted above, the Sabows' complaint alleges that the military engaged in a far more extensive pattern of extreme and outrageous conduct during the March 1991 meeting. Although the statements of General Adams may be an important (but certainly not essential) part of that pattern of conduct, their relevance to the Sabows' complaint is not related to whether they were "defamatory" in nature, but rather whether the content (whether "defamatory" or not) and allegedly abusive delivery of the statements was extreme and outrageous under the circumstances. *Cf. Gasho v. United States*, 39 F.3d 1420, 1432-36 (9th Cir.1994) (allowing emotional distress claims based on allegations of malicious behavior by government investigators and law enforcement personnel to go forward under the FTCA), *cert. denied*, 515 U.S. 1144, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995).

Accordingly, we hold that the Sabows' intentional infliction claim, to the extent it is based on the conduct of General Adams and others during the March 1991 meeting, is not barred by the intentional torts exception.

### Investigation Into Dr. Sabow's Medical License

[19] The Sabows' intentional infliction claim is also based in part on allegations that General Adams initiated an investigation into the status of Dr. Sabow's medical license. The investigation allegedly included the drafting of a letter by General Adams, which was apparently never sent, to the South Dakota Board of Medical Examiners "accusing Dr. Sabow of criminal and unethical misconduct." The district court dismissed this aspect of the Sabows' intentional infliction claim after concluding that the conduct alleged arose out of the excepted tort of defamation.

The district court again read the Sabows' complaint too narrowly. The Sabows' intentional infliction claim does not arise out of the "defamatory" content of the letter, but rather focuses more generally on General Adams' decision to investigate Dr. Sabow, his use of military staff to "research" ways in which Dr. Sabow's license could be attacked, and the threat-symbolized most powerfully by the drafting of the letter-of impugning Dr. Sabow's integrity allegedly in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

93 F.3d 1445
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799
(Cite as: 93 F.3d 1445)

response to Dr. Sabow's efforts to find out more about his brother's death.

Accordingly, we reverse the district court's § 2680(h) determination as it relates to the investigation of Dr. Sabow by General Adams.

### *1458 C. NEGLIGENT HANDLING OF HUMAN REMAINS

[20] The district court dismissed the Sabows' claim for the negligent handling of Colonel Sabow's remains because the military had no duty of care under California law. We affirm.

The only case that could arguably give rise to a duty of care under California law for the handling of human remains is *Christensen v. Superior Court, 54 Cal.3d 868, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991)* (in bank). *Christensen* is readily distinguishable from the case at bar. Plaintiffs in *Christensen* had contracted with a mortuary and a crematorium, and sued after the remains of decedent were mistreated and mishandled by defendants. *Id. 2 Cal.Rptr.2d at 84-94, 820 P.2d at 185-86.* Not only is the handling of an individual's remains during an investigation into his death different from mortuary services, but, unlike the defendants in *Christensen,* the U.S. Navy was under no contractual obligation to treat decedent's remains in a certain manner during the investigation. *Id. 2 Cal.Rptr.2d at 84-94, 820 P.2d at 186-95* (citing statutory and contractual provisions in support of decision to recognize duty under California law). Accordingly, we affirm the district court's dismissal of this claim.

### D. PERSONAL INJURY

The district court's dismissal of the Sabows' personal injury claim, insofar as it relates to the March 1991 meeting and the investigation of Dr. Sabow, is reversed.[FN14] The district court provided no reason for dismissing the personal injury claim, and the Sabows should be permitted to pursue it on remand.

FN14. Consistent with the analysis above, the Sabows' personal injury claim is dismissed insofar as it relates to the NIS or JAG investigations.

### IV. CONCLUSION

We affirm the district court's dismissal of the Sabows' negligent infliction of emotional distress, intentional infliction of emotional distress, and personal injury claims insofar as they relate to the NIS and JAG investigations. We affirm the dismissal of the Sabows' negligent handling of human remains claim in its entirety. We reverse the district court's dismissal of the Sabows' negligent infliction of emotional distress, intentional infliction of emotional distress, and personal injury claims based on the March 1991 meeting and the alleged investigation of Dr. Sabow.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party to bear its own costs.

C.A.9 (Cal.),1996.
Sabow v. U.S.
93 F.3d 1445, 96 Cal. Daily Op. Serv. 6409, 96 Daily Journal D.A.R. 10,547, 96 Daily Journal D.A.R. 11,799

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

7

1 | MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: John D. Nibbelin, Deputy (SBN 184603)
2 | By: Rebecca M. Archer, Deputy (SBN 202743)
Hall of Justice and Records
3 | 400 County Center, 6th Floor
Redwood City, CA 94063
4 | Telephone: (650) 363-4686
Facsimile: (650) 363-4034
5 |
Attorneys for Defendants
6 | COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individually and as Coroner, SAN
7 | MATEO COUNTY

8

9

10                IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

                    IN AND FOR THE COUNTY OF SAN MATEO

11

12

13 | ISOLINA PICON                              Case No. 467161

14 |         Plaintiffs,                        **PROOF OF SERVICE**

15 |     vs.

16 | COUNTY OF SAN MATEO, ROBERT
FOUCRAULT, individual and as Coroner, SAN
MATEO COUNTY

17

18 |         Defendants.

19

20

21

22

23

24

25

26

27

28

ENDORSED FILED
SAN MATEO COUNTY

JAN - 3 2008

Clerk of the Superior Court
By: UNA FINAU
DEPUTY CLERK

Case No. 467161

PROOF OF SERVICE

I do hereby declare that I am a citizen of the United States employed in the County of San Mateo, over 18 years old and that my business address is 400 County Center, Redwood City, California I am not a party to the within action.

On January 3, 2008, I served the following document(s):

**ORDER GRANTING COUNTY OF SAN MATEO'S EX PARTE APPLICATION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT OF ISOLINA PICON**

on all other parties to this action by placing a true copy of said document(s) in a sealed envelope in the following manner:

[X] (BY U.S. MAIL) by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and mailing at Redwood City, California following our ordinary business practices. I am readily familiar with this office's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

[ ] (BY OVERNIGHT DELIVERY) by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and delivery by an overnight delivery carrier with delivery fees paid or provided for in accordance with this office's practice. I am readily familiar with this office's practice for processing correspondence for delivery the following day by an overnight delivery carrier.

[ ] (BY E-MAIL OR ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address shown below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X] (BY FACSIMILE TRANSMISSION) by telefaxing a true copy of said document(s) at ____, __.m. on the date stated above to the addressee(s) and number(s) shown below. A transmission report was properly issued by the transmitting facsimile machine and is attached hereto. The transmission was reported as completed and without error.

[ ] (BY PERSONAL SERVICE) I caused such envelope(s) to be hand-delivered to the addressee(s) shown below. A proof of service signed by the authorized courier will be filed forthwith.

[X] (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[ ] (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

COLLEEN PASSMORE

Picon v. County of San Mateo et al., - CIV467161

---

PROOF OF SERVICE

NAME AND ADDRESS OF EACH PERSON TO WHOM SERVICE WAS MADE

Ayanna L. Jenkins-Toney
225 Bush Street, 16th Floor
San Francisco, CA 94104

ATTORNEY FOR PLAINTIFF:
Isolina Picon

L:\LITIGATE\P_CASES\PICON\Master Proof of Service.doc

**8**

1   MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
    By: John D. Nibbelin, Deputy (SBN 184603)
2   By: Rebecca M. Archer, Deputy (SBN 202743)
    Hall of Justice and Records
3   400 County Center, 6th Floor
    Redwood City, CA  94063
4   Telephone: (650) 363-4686
    Facsimile:  (650) 363-4034
5
    Attorneys for Defendants
6   COUNTY OF SAN MATEO and
    ROBERT FOUCRAULT, individually
7   and as Coroner of SAN MATEO COUNTY

8

9                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      IN AND FOR THE COUNTY OF SAN MATEO

11

12  ISOLINA PICON,                          Case No. 467161

13           Plaintiff,                     **REPLY IN SUPPORT OF DEMURRER OF
                                            COUNTY OF SAN MATEO AND SAN
14       vs.                                MATEO COUNTY CORONER**

15  COUNTY OF SAN MATEO, ROBERT
    FOUCRAULT, individual and as Coroner, SAN
16  MATEO COUNTY

17           Defendants.

18

19       By her failure to submit any opposition to defendants' demurrer, plaintiff implicitly concedes that

20  it should be sustained without leave to amend.  Further, as set forth in defendants' opening memorandum

21  in this matter, none of the allegations made in the complaint and papers submitted therewith, even if true,

22  gives rise to a cause of action against the County of San Mateo or the County Coroner and, in light of

23  controlling law, plaintiff cannot amend her complaint to state a cause of action and no leave to amend

24  should be given in this case.

25  I.   **PLAINTIFF CANNOT AMEND HER COMPLAINT TO STATE A CAUSE OF ACTION
         FOR DENIAL OF RIGHT TO CONTROL THE DISPOSITION OF HER SON'S
26       REMAINS**

27       Plaintiff first cause of action asserts that defendants denied her the right to control the disposition

28  of her son's remains but this allegation is completely belied by her acknowledgement that her son's body

1    was returned to her for burial.  Moreover, she has offered absolutely no authority for the proposition that

2    she was entitled to have the *entire* body returned to her intact for burial.  Rather, the law is fully to the

3    contrary.

4        Specifically, the California Government Code specifically vests the Coroner with the *authority*

5    *and discretion* to "retain those tissues of the body removed at the time of autopsy that may, in his or her

6    opinion, be necessary or advisable to the inquiry into the case, or for the verification of his or her

7    findings," and to retain such organs for purposes of training and research.  Cal. Gov't. Code §§

8    27491.4(a) and 27491.45(a)(1).  Nothing in California law requires that the Coroner notify or secure the

9    consent of the decedent's next-of-kin, nor does it place any time limit on the retention of such organs.

10       Because the Coroner acted fully within his authority under California law in retaining the

11   decedent's heart and because the rest of his body was returned to plaintiff for disposition, plaintiff's first

12   cause of action does not state a claim and plaintiff cannot possibly amend it to state one.  Therefore,

13   defendants' demurrer, as it relates to the first cause of action, should be sustained without leave to

14   amend.

15   II.    **PLAINTIFF CANNOT AMEND HER COMPLAINT TO STATE A CAUSE OF ACTION
            FOR BREACH OF A MANDATORY DUTY**

16

17       Plaintiff also alleges that the County and Coroner breached a mandatory duty owed to plaintiff

18   but she has failed to identify any such duty, notwithstanding the legal requirement that mandatory duties

19   be specifically pled in order to survive demurrer.  *See Lehto v. City of Oxnard* (1985) 171 Cal. App. 3d

20   285, 292.  As noted in defendants' opening memorandum, plaintiff fails to identify any authority that

21   creates a mandatory duty on defendants' part and plaintiff's failure to oppose defendants' demurrer

22   highlights the fact that she cannot do so in this case.  Thus, because the complaint reveals no basis for

23   liability against defendants, and plaintiff has not taken the opportunity by, for example, opposing the

24   instant motion, to identify any other possible mandatory duties upon which liability could be based, the

25   Court should sustain the instant demurrer without leave to amend.  *See Lawrence v. Bank of America*

26   (1985) 163 Cal. App. 3d 431, 436.

27   //

28   //

1   III.     **PLAINTIFF CANNOT AMEND HER COMPLAINT TO STATE A CLAIM FOR**
2          **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

3         Defendants' opening memorandum points out that, negligent infliction of emotional distress is n

4 an independent tort, but rather, it is one possible form of damages flowing from the tort of negligence

5 and it therefore involves the usual duty and causation issues.  As discussed above and in prior filings,

6 plaintiff has not identified nor can she identify any mandatory duty that defendants owe to her.

7 Therefore, as to this cause of action, it follows that the instant demurrer should be sustained without

8 leave to amend.

9   IV.     **PLAINTIFF CANNOT AMEND HER COMPLAINT TO STATE A CAUSE OF ACTION**
10          **BECAUSE THE COUNTY AND CORONER ARE IMMUNE FROM LIABILITY**

11         As discussed in defendants' opening memorandum without any rebuttal by plaintiff, the Coroner

12 and the County are immune from any liability for retaining body parts under the facts presented in this

13 case.  The Coroner possesses discretion to remove and retain body parts without any requirement to

14 notify or obtain the consent of next of kin and, pursuant to the Tort Claims Act, the Coroner is immune

15 from liability for the manner in which he exercises this discretion.  Cal. Gov't. Code § 820.2.

16                           <u>CONCLUSION</u>

17         For the reasons set forth herein and in defendants' opening memorandum, the instant demurrer

18 should be sustained without leave to amend.

19

20 Dated:  January 23, 2008

                                     Respectfully submitted,

21

22                                      MICHAEL P. MURPHY, COUNTY COUNSEL

23

24                               By:
                                        John D. Nibbelin, Deputy

25                               Attorneys for Defendants
26                               COUNTY OF SAN MATEO and
                              ROBERT FOUCRAULT, individual
27                               and as Coroner of SAN MATEO COUNTY

28   L:\LITIGATE\P_CASES\PICON\Pleadings\Reply ISO of Demurrer.doc

PROOF OF SERVICE

<u>Picon v. County of San Mateo et al., - CIV467161</u>

I do hereby declare that I am a citizen of the United States employed in the County of San Mateo, over 18 years old and that my business address is 400 County Center, Redwood City, California. I am not a party to the within action.

On January 23, 2008, I served the following document(s):

REPLY IN SUPPORT OF DEMURRER OF COUNTY OF SAN MATEO AND SAN COUNTY CORONER

on all other parties to this action by placing a true copy of said document(s) in a sealed envelope in the following manner:

☐ (BY U.S. MAIL) by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and mailing at Redwood City, California following our ordinary business practices. I am readily familiar with this office's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

☒ (BY FACSIMILE TRANSMISSION) by telefaxing a true copy of said document(s) at ____, __ m. on the date stated above to the addressee(s) and number(s) shown below. A transmission report was properly issued by the transmitting facsimile machine and is attached hereto. The transmission was reported as completed and without error.

☒ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
ANNABELLE GAISER

NAME AND ADDRESS OF EACH PERSON TO WHOM SERVICE WAS MADE

Ayanna L. Jenkins-Toney
225 Bush Street, 16th Floor
San Francisco, CA 94104
*Fax No. (415) 464-4975*

*ATTORNEY FOR PLAINTIFF*
*Isolina Picon*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

```
************ -COMM. JRNAL- ***************** DATE JAN-2? 20E  *** TIME 15:07 ********

      MODE = MEMORY TRANSMISSION            START=JAN-23 15:06    END=JAN-23 15:07

      FILE NO.=884

   STN    COMM.    ONE-TOUCH   STATION NAME/EMAIL ADDRESS/TELEPHONE NO.   PAGES    DURATION
   NO.              ABBR NO.

   001    OK         &         914154644975                              005/005  00:01:14


                                                     -SMC COUNTY COUNSEL      -
   ******************************** -       - **** -    650 363 4034- ********
```



# FAX TRANSMISSION

**COUNTY OF SAN MATEO**
OFFICE OF THE COUNTY COUNSEL
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

**DATE:** January 23, 2008

| **TO:** | Ayanna L. Jenkins-Toney, Esq. | **FAX NUMBER:** | (415) 464-4975 |

| **FROM:** | JOHN D. NIBBELIN, Deputy | **PAGES** incl. cover: | 5 |
| | Telephone: (650) 363-4757 | | |
| | Facsimile: (650) 363-4034 | | |
| **RE:** | Picon v. County of San Mateo, et al. | | |
| | San Mateo County Superior Court Case No. 467161 | | |

**COMMENTS:**

for ok.
sent courtesy copy
us. mail
via e-mail 1/23/08

---

**FAX OPERATOR:**
If you do not receive all pages or if the copy is not legible, please call the fax operator at
County Counsel Office of the County of San Mateo at (650) 363-4250 as soon as possible.

---

CONFIDENTIALITY NOTICE: This transmittal page and the documents accompanying this telecopy transmission
contain confidential information belonging to the sender which is legally privileged. The information is intended only for
the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any
disclosure, copying, distribution or taking of any action in reliance on the contents of this telecopied information is strictly
prohibited. If you received this telecopy in error, please immediately notify us by telephone to arrange for return of the
original documents to us.

**9**

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| AYANNA L. JENKINS-TONEY,    CSB # 224847 <br> 225 BUSH STREET, 16 TH FLOOR <br> SAN FRANCISCO, CA 94104 <br><br> TELEPHONE NO: (415)464-4974   FAX NO. *(Optional)*: (415)464-4975 <br> E-MAIL ADDRESS *(Optional)*: AYANNAJ@MSN.COM <br> ATTORNEY FOR *(Name)*: ISOLINA PICON | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN MATEO
STREET ADDRESS: 400 COUNTY CENTER
MAILING ADDRESS: SAME
CITY AND ZIP CODE: REDWOOD CITY, 94603-1655
BRANCH NAME: REDWOOD CITY BRANCH

PLAINTIFF: ISOLINA PICON

DEFENDANT: County of San Mateo;Robert Foucrault,individually and
as Coroner, San Mateo County

[✓] DOES 1 TO 100

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
[✓] **AMENDED** *(Number):* ONE
**Type** *(check all that apply):*
[ ] **MOTOR VEHICLE**   [✓] **OTHER** *(specify):*
   [✓] **Property Damage**   [ ] **Wrongful Death**
   [✓] **Personal Injury**   [✓] **Other Damages** *(specify):* PUNITIVE

| | |
|---|---|
| **Jurisdiction** *(check all that apply):* <br> [ ] **ACTION IS A LIMITED CIVIL CASE** <br> **Amount demanded** [ ] **does not exceed $10,000** <br> [ ] **exceeds $10,000, but does not exceed $25,000** <br> [✓] **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)** <br> [ ] **ACTION IS RECLASSIFIED by this amended complaint** <br>    [ ] **from limited to unlimited** <br>    [ ] **from unlimited to limited** | CASE NUMBER: <br><br> CIV 467161 |

1. **Plaintiff** *(name or names):* ISOLINA PICON
   alleges causes of action against **defendant** *(name or names):*
   County of San Mateo; Robert Foucrault, individually and as Coroner, San Mateo County
2. This pleading, including attachments and exhibits, consists of the following number of pages: 24
3. Each plaintiff named above is a competent adult
   a. [ ]   **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*
   b. [ ]   **except** plaintiff *(name):*
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity *(describe):*
      (3) [ ] a public entity *(describe):*
      (4) [ ] a minor [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other *(specify):*
      (5) [ ] other *(specify):*

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Code of Civil Procedure, § 425.12
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | CIV 467161 |

4. ☐ Plaintiff *(name):*

   is doing business under the fictitious name *(specify):*

   and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

   a. ☑ **except** defendant *(name):*
      - (1) ☐ a business organization, form unknown
      - (2) ☐ a corporation
      - (3) ☐ an unincorporated entity *(describe):*

      - (4) ☐ a public entity *(describe):*

      - (5) ☐ other *(specify):*

   c. ☐ **except** defendant *(name):*
      - (1) ☐ a business organization, form unknown
      - (2) ☐ a corporation
      - (3) ☐ an unincorporated entity *(describe):*

      - (4) ☐ a public entity *(describe):*

      - (5) ☐ other *(specify):*

   b. ☐ **except** defendant *(name):*
      - (1) ☐ a business organization, form unknown
      - (2) ☐ a corporation
      - (3) ☐ an unincorporated entity *(describe):*

      - (4) ☐ a public entity *(describe):*

      - (5) ☐ other *(specify):*

   d. ☐ **except** defendant *(name):*
      - (1) ☐ a business organization, form unknown
      - (2) ☐ a corporation
      - (3) ☐ an unincorporated entity *(describe):*

      - (4) ☐ a public entity *(describe):*

      - (5) ☐ other *(specify):*

   ☐ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

   a. ☑ Doe defendants *(specify Doe numbers):* 1-100 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.

   b. ☑ Doe defendants *(specify Doe numbers):* 1-100 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because

   a. ☑ at least one defendant now resides in its jurisdictional area.
   b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other *(specify):*

9. ☑ Plaintiff is required to comply with a claims statute, **and**

   a. ☑ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because *(specify):*

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | CIV 467161 |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☐ Motor Vehicle
   b. ☐ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☐ Premises Liability
   f. ☑ Other *(specify):*

   1)BREACH OF THE RIGHT TO CONTROL THE DISPOSITION OF THE REMAINS OF A DECEASED PERSON; 2)BREACH OF A MANDATORY DUTY; 3)NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS: 4) 42 U.S.C.S. SECTION 1983

11. Plaintiff has suffered
   a. ☐ wage loss
   b. ☐ loss of use of property
   c. ☑ hospital and medical expenses
   d. ☑ general damage
   e. ☑ property damage
   f. ☐ loss of earning capacity
   g. ☑ other damage *(specify):*

   CONTINUED SEVERE EMOTIONAL DISTRESS

12. ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows;

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☑ compensatory damages
      (2) ☑ punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
      (1) ☑ according to proof
      (2) ☐ in the amount of: $

15. ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: JANUARY 25, 2008

AYANNA L. JENKINS-TONEY, ESQ.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | CIV 467161 |

FIRST CAUSE OF ACTION
DENIAL OF QUASI-PROPERTY RIGHT
THE RIGHT TO CONTROL THE DISPOSITION OF THE REMAINS OF A DECEASED PERSON

Plaintiff Isolina Picon is the mother of Nicholas Picon, born October 6, 1983.

On October 25, 2006 Nicholas Picon died of natural causes.

On October 26, 2006 the Coroner's office of the County of San Mateo conducted an autopsy on the remains of Nicholas Picon. The Coroner's autopsy report is attached to this complaint as Exhibit A.

The autopsy report is attached as Exhibit A not for the truth asserted therein but for the limited purpose of establishing a timeline of events as it relates to the First, Second, Third and Fourth Causes Of Action. In the instant cause of action, the Denial Of A Quasi-Property Right to control the disposition of the remains of a deceased person is illustrated by the fact that the plaintiff was not informed that her son's heart was retained before burial. This fact is supported by Exhibit A which is stamped and signed with the date that the autopsy report was originally sent to the plaintiff, that date being November 27, 2006 (See Exhibit A – Pg. 1).

On October 26, 2006 an official or officials of the San Mateo County Coroner's office made the unilateral decision to retain the entire heart organ of the decedent Nicholas Picon without any attempt to notify his next of kin. The actions of the San Mateo County Coroner's office violated the 1987 version of the Uniform Anatomical Gift Act (UAGA), that was adopted by California authorizing the transfer of body parts when no knowledge of objection is known and after "a reasonable effort has been made to locate and inform next of kin of their option to make, or object to making, an anatomical gift." Cal. Health & Safety Code § 7151.5(a)(2).

On October 30, 2006 the plaintiff had a funeral for her son Nicholas Picon in order to bury and lay to rest what she thought at the time were his intact remains.

On November 13, 2006 the plaintiff learned for the first time that her son's heart was retained by the Coroner's office of the County of San Mateo.

The plaintiff was denied the right to bury her son's body intact at the time chosen by the decedent's family. When the coroner removed and retained the entire heart organ of the decedent and denied the plaintiff the right to possess, control, and dispose or prevent the violation of the remains of her deceased child, the coroner did not merely "take a single 'strand' from the 'bundle' of property rights:

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___4___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | CIV 467161 |

1  it chopped through the bundle, taking a slice of every strand." Loretto v. Teleprompter Manhattan CATV
2  Corp. (1982), 458 U.S. at 435. The denial of the plaintiffs right to bury her son's heart with his body was a
   deprivation of the most certain way.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:
27  This page may be used with any Judicial Council form or any other paper filed with the court.                    Page ___5___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE:<br>— PICON V. COUNTY OF SAN MATEO | CASE NUMBER:<br>CIV 467161 |
|---|---|

<div align="center">

## SECOND CAUSE OF ACTION

## BREACH OF MANDATORY DUTY GOVERNMENT CODE § 815.6

</div>

On October 25, 2006 Nicholas Picon died in his home of natural causes. On October 26, 2006 the Coroner's office of the County of San Mateo conducted an autopsy on the remains of Nicholas Picon. On October 26, 2006 the Coroner's office of the County of San Mateo informed the plaintiff that her son died from a congenital heart defect known as Intramural tunneling of the coronary artery.

Before the original summons and complaint were filed in this action no one from the San Mateo County Coroner's office ever stated that additional inquiry or verification was needed to determine the cause of death. In fact the converse is true, one need only to look at Exhibit A – Pgs. 1 & 2.

On page one the cause of death is stated as being due to "Disease or Condition directly leading to death: A. Probable cardiac dysrhythmia due to B. Intramural tunneling or left anterior descending coronary artery", and on page two the time of the conclusion of the autopsy is shown as being "1000 hours, Thursday, October 26, 2006". Thus, if the standards set forth in California Government Code § 27491.4 are applied to the facts of this case a Breach of a Mandatory Duty has occurred.

California Government Code § 27491.4 provides in pertinent part:

(a) For purposes of inquiry the coroner shall, within 24 hours or as soon as feasible thereafter, where the suspected cause of death is sudden infant death syndrome and, in all other cases, the coroner may, in his or her discretion, take possession of the body, which shall include the authority to exhume the body, order it removed to a convenient place, and make or cause to be made a postmortem examination or autopsy thereon, and make or cause to be made an analysis of the stomach, stomach contents, blood, organs, fluids, or tissues of the body. The detailed medical findings resulting from an inspection of the body or autopsy by an examining physician shall be either reduced to writing or permanently preserved on recording discs or other similar recording media, shall include all positive and negative findings pertinent to establishing the cause of death in accordance with the medicolegal practice and this, along with the written opinions and conclusions of the examining physician, shall be included in the coroner's record of death...............The coroner shall have the right to retain......only those tissues...of the body...removed...at the time of the autopsy as may, in his or her opinion, be.............necessary or advisable to the inquiry into the case, .......or for the verification of his or her findings. No person may be present during the performance of a coroner's autopsy without the express consent of the coroner. (Emphasis added).

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___6___ |
|---|---|

Form Approved by the<br>Judicial Council of California<br>MC-020 [New January 1, 1987]

CRC 201, 501

American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER:<br>CIV 467161 |
|---|---|

## ANALYSIS

1  First, the rule clearly states that, the coroner shall have the right to retain "only those tissues", in the
2  instant the entire heart organ was retained.

3
4  Every recognizable medical authority including the two statutes cited here make a distinction between the
   uses of the words tissues versus parts of the body. Further, the statute itself purports to limit the coroners'
5  authority by the use of the words "The coroner shall have the right to retain only" before use of the words
6  "those tissues".

7  Secondly, the statute says that a coroner may use his or her discretion only when it is " in his or her
   opinion, be necessary or advisable to inquiry into the case, or for the verification of his or her findings'.
8  Discretion is not absolute the statute provides the Mandatory duty be for further inquiry or verification.
9  The statute does not purport to give broad discretion in fact it limits the discretion to the two afore
   mentioned instances only.
10  In the instant, the coroner has given no indication that further inquiry was necessary, nor have any facts
11  been shown to support the contention that a further verification of findings was underway. In fact the
   converse is true, as exemplified by Exhibit A – Pgs. 1-2. The cause of death was determined, the autopsy
12  was over.

13
   Thus, a Mandatory Breach of Cal. Gov. Code § 27491.4 (a) has occurred for two reasons. (1) The coroner
14  retained the entire organ not just the tissue, (2) the cause of death had been established, no additional
15  inquiry into the case was underway, no foul play was suspected or even mentioned, the discretion to retain
   is limited to further inquiry or verification only not for donative or scientific purposes under Cal. Gov.
16  Code § 27491.4 (a).

17  Further, the autopsy report attached to this complaint as Exhibit A – Pg. 5 supports the above allegations
18  of breach by the language contained in the report itself on page 5. The report states "Specimens are
   retained in 10% buffered formalin for diagnostic purposes". The detailed report goes on to distinguish the
19  heart by categorizing the heart as a "cardiac specimen", nowhere in the report does it state that the entire
20  organ was retained. The converse is true by the repeated usage of the words "specimens" and "sections",
   the report even goes so far as to list the "sections" retained. The words organs or body parts are not
21  contained in the report at all. In addition, the report goes on to state that the "cardiac specimen" is being
22  retained to "permit further detailed examination" this direct quote delineates the true intent for the
   retention of the heart "detailed examination" clearly points to scientific study not further inquiry and
23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers):*
27
| This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___7___ |

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER: |
|---|---|
| | CIV 467161 |

1  and verification which language is noticeably absent. This distinction highlights the allegation set forth in
2  this complaint that the heart was keep not for the purposes of further inquiry into the case, or for the
   verification of findings "but for" scientific investigation and research. See Exhibit A –Pg. 5.

3

4  Additionally, if the standards set forth in California Government Code § 27491.45(a)(2) are applied to the
   facts of this case a Breach of a Mandatory Duty has occurred.
5  California Government Code § 27491.45(a)(2) provides in pertinent part:

6  (a)(2) Parts of the body retained pursuant to paragraph (1) may be released by the coroner to hospitals,
7  medical educational research institutions, and law enforcement agencies for noncoroner training,
   educational, and research purposes, either upon consent of the decedent or other person, as specified in
8  Section 7151 of the Health and Safety Code, or after a reasonable effort has been made to locate and
9  inform persons listed in subdivision (a) of Section 7151 of the Health and Safety Code of their option to
   consent or object to the release, and the appropriate person consents or the effort has been unsuccessful. A
10 reasonable effort shall be deemed to have been made when a search for the persons has been underway for
11 at least 12 hours. The search shall include a check of local police missing persons records, examination of
   personal effects, and the questioning of any persons visiting the decedent before his or her death or in the
12 hospital, accompanying the decedent's body, or reporting the death, in order to obtain information that
13 might lead to the location of any persons listed in subdivision (a) of Section 7151 of the Health and Safety
   Code.
14

15 Breach of Mandatory Duty is shown by the facts of this case as demonstrated by Exhibit A – Pg. 1. The
   plaintiff, who falls in the category of specified persons listed in Section 7151 of the Health and Safety
16 Code, was not informed of the removal or retention of the decedent's heart at the time of autopsy. Nor was
   she given the opportunity to consent or object to the release of the heart to Stanford University. See
17 generally, Declaration of Isolina Picon.
18

19 Here, no facts have been provided by the San Mateo County Coroner, or anyone in his employ that would
   indicate that further coronary investigations were underway. Nor have any facts been provided that would
20 counter the plaintiffs assertions that she was informed that the heart was removed and retained for the
   express purpose of sending it to Stanford University for scientific research. The fact that the plaintiff was
21 informed that the heart was retained for scientific investigation and or research takes the actions of the
22 coroner beyond the scope Cal. Gov. Code § 27491.4 (a).

23

24

25

26 *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27 | This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___8___ |

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PICON V. COUNTY OF SAN MATEO | CIV 467161 |

<div align="center">COMPARE</div>

The two Cal. Gov. Code §§ 27491.4(a), 27491.45(a)(2) were intentionally written to be separate and distinct. If a careful analysis of the two Code sections is made it becomes readily apparent that the two Code sections are quite distinguishable. A few facts that support this proposition are:

(1) being the use of the words "only those tissues" in Cal. Gov. Code § 27491.4(a) versus the use of the words "parts of the body" in Cal. Gov. Code § 27491.45(a)(2),

(2) being the granting of discretion for retention for further inquiry and verification Cal. Gov. Code § 27491.4(a) versus the right to retain for the purposes of scientific investigation and research Cal. Gov. Code § 27491.45(a)(2),

(3) the fact that Cal. Gov. Code § 27491.45(a)(2), clearly states that if the purpose of removal and retention of organs was for scientific research or investigation an attempt at contacting the next of kin for permission has to be made. This requirement for attempting to notify next of kin relates to the removal of body parts for the purpose of "noncoroner training, educational, and research purposes, either upon the consent of the decedent or other person, as specified in Section 7151 of the Health and Safety Code". Cal. Gov. Code § 27491.45(a)(2), supra.

The fact that the plaintiff was given the cause of death at the conclusion of the autopsy on October 26, 2006, coupled with the fact that the body was released for burial on the same day clearly contradicts any assertions made by the coroner or any persons in his employ that further detailed inquiry or verification was underway to support his findings.

Therefore, the assertions made by plaintiff in this verified complaint that the heart of her deceased son was retained for scientific research due to his heart condition demonstrate a clear breach of a Mandatory Duty on the part of the defendants when she was not notified by the San Mateo County Coroner's office at the time the heart was retained on October 26, 2006. The fact that the heart was retained without an attempt at prior consent for scientific purposes, notwithstanding its eventual return establishes breach for purposes of California Government Code § 815.6.

The Coroner's office retained the entire organ without any attempt to notify the decedent's relatives. The Coroner's office retained the entire heart despite the fact that no "reasonable effort has been made to locate and inform next of kin of their option to make, or object to making, an anatomical gift." Cal. Health & Safety Code § 7151.5(a)(2).Yet, another Mandatory Duty Breached by the defendants San Mateo County Coroner.

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___9___ |
|---|---|

<div align="center">**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**</div>

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER:<br>CIV 467161 |
| --- | --- |

On November 13, 2006 two weeks after what the plaintiff believed was the burial of her son, she found out that the Coroner's office had retained her son's entire heart organ. The plaintiff was told that the heart had been sent to Stanford University for research purposes. When the plaintiff was given this information, in addition to being completely shocked, dismayed and outraged, she questioned the rights of the Coroner to give away or sell her son's entire heart without her permission. She was told that the law did not require her permission to retain the organ. After being told that her son's heart was not with his body when he was buried the plaintiff began what could only be categorized as a crusade to regain possession of her son's heart. The plaintiff was ultimately successful in doing so on November 21, 2006. The agony she felt from the sudden death of her son was inextricably exacerbated upon stumbling on the knowledge that his body was not intact at burial. The fact is that the defendants literally stole the heart of the decedent Nicholas Picon.

In doing so the defendants and each of them breached their mandatory duty owed to plaintiff within the meaning of Government Code Section 815. 6. This duty was breached when the County Coroner retained the heart of the decedent and failed to comply with applicable rules, including but not limited to the rules set forth in California Government Code Sections 27491.4 (a) and 27491.45 (a) (2), and Health and Safety Code commencing with Section 7150.

Whether a statute "creates a mandatory duty is a question of law" for the courts. Creason v. Department of Health Services (1998) 18 Cal.4th 623, 631.

Statutory interpretation involves a three step analysis. "First, a court should examine the actual language of the statute. Judges, lawyers and lay people all have far readier access to the actual laws enacted by the Legislature than the various and sometimes fragmentary documents shedding light on legislative intent. More significantly, it is the language of the statute itself that has successfully braved the legislative gauntlet. It is that language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' In examining the language, the courts should give to the words of the statute their ordinary, everyday meaning unless, of course, the statute itself specifically defines those words to give them a special meaning. If the meaning is without ambiguity, doubt, or uncertainty, then the language controls. But if the meaning of the words is not clear, courts must take the second step and refer to the legislative history. The final step--and one which should only be taken when the first two steps have failed to reveal clear meaning--is to apply reason, practicality, and common sense

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

This page may be used with any Judicial Council form or any other paper filed with the court.

Page ___10___

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER: |
|---|---|
| | CIV 467161 |

1  to the language at hand. If possible, the words should be interpreted to make them workable and
2  reasonable." Halbert's Lumber, Inc. v. Lucky Stores, Inc. (1992) 6 Cal.App.4th 1233, 1238-1240.

3

4  The breach of the enumerated Mandatory duties owed to plaintiff is clear by the language of Cal. Gov.
   Code §§ 27491.4(a), 27491.45(a)(2). Tissues not organs may be removed to verify the circumstances
5  surrounding the cause of death. Parts of the body may be retained to provide scientific and educational
   research only if an attempt at notification of next of kin is made. Further the fact that Cal. Gov. Code §§
6  27491.45(a) was amended in 1998 and 2000, requiring the coroner to at least make an attempt to obtain
7  permission before allowing a body part removed and retained at the time of an autopsy released for
   scientific investigation or research supports the plaintiffs allegations for breach.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with the court.          Page ___11

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER: |
|---|---|
| | CIV 467161 |

1

THIRD CAUSE OF ACTION

2

NEGLIGENCE

3

4

5  On October 26, 2006 the San Mateo County Coroner's office conducted an autopsy on the remains of

6  Nicholas Picon.

7  At some point during the autopsy or at the conclusion of the autopsy the Coroner made the decision to

8  remove and retain the entire heart organ of the decedent without prior consent, notification, or permission
by the next of kin.

9

The Coroner in his official capacity had a duty owed to the plaintiff as next of kin.

10

11  The duty began when the Coroner took possession of the remains of the decedent.

12  This duty was breached when the remains were returned to the plaintiff without the heart organ.

13

The knowledge that her son's heart was stolen by the Coroner has caused and will continue to cause the

14  plaintiff severe emotional distress.

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  | This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___12___ |

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]
**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**
CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER: CIV 467161 |
|---|---|

FOURTH CAUSE OF ACTION

UNCONSTITUTIONAL DEPRIVATION OF PROPERTY

UNDER 42 U.S.C.S. § 1983

The Fourteenth Amendment prohibits states from depriving any person of life, liberty, or property, without due process of law. The United States Constitution Amendment XIV, § 1.

At the threshold, a claim under 42 U.S.C.S. § 1983 for an unconstitutional deprivation of property must show (1) a deprivation, (2) of property, (3) under color of state law. If these elements are met, the question becomes whether the state afforded constitutionally adequate process for the deprivation. California Courts commonly use the term "quasi property" to describe the rights of next of kin to the body of the deceased.

Under California law the violation of the correlative duty of others to refrain from disturbing the body is subject to an action for "tortuous interference with a right to dispose of a decedent's remains." Newman v. Sathyavaglswaran (9th Cir. 2002) 287 F. 3d 786, 789-800. In the instant case, the deceased son of the plaintiff had his entire heart organ retained after an autopsy determined his cause of death. Further, the plaintiff was told the cause of death and buried what she believed to be her son's intact remains.

If this court rejects the allegations presented in the preceding causes of action then it will be rejecting them under color of state law.

California Government Code § 27491.4(a) states in pertinent part:

(a) For purposes of inquiry the coroner shall, within 24 hours or as soon as feasible thereafter, where the suspected cause of death is sudden infant death syndrome and, in all other cases, the coroner may, in his or her discretion, take possession of the body, which shall include the authority to exhume the body, order it removed to a convenient place, and make or cause to be made a postmortem examination or autopsy thereon, and make or cause to be made an analysis of the stomach, stomach contents, blood, organs, fluids, or tissues of the body. The detailed medical findings resulting from an inspection of the body or autopsy

*(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___13___ |
|---|---|

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER:<br>CIV 467161 |
|---|---|

1 | by an examining physician shall be either reduced to writing or permanently preserved on recording discs
2 | or other similar recording media, shall include all positive and negative findings pertinent to establishing
  | the cause of death in accordance with the medicolegal practice and this, along with the written opinions
3 | and conclusions of the examining physician, shall be included in the coroner's record of
4 | death.................The coroner shall have the right to retain......only those tissues...of the body...
  | removed...at the time of the autopsy as may, in his or her opinion, be............necessary or advisable to
5 | the inquiry into the case, .......or for the verification of his or her findings. No person may be present
6 | during the performance of a coroner's autopsy without the express consent of the coroner. (Emphasis
  | added).
7 | California Government Code § 27491.45(a)(2) provides in pertinent part:

8 |   (a)(2) Parts of the body retained pursuant to paragraph (1) may be released by the coroner to hospitals,
9 | medical educational research institutions, and law enforcement agencies for noncoroner training,
  | educational, and research purposes, either upon consent of the decedent or other person, as specified in
10 | Section 7151 of the Health and Safety Code, or after a reasonable effort has been made to locate and
11 | inform persons listed in subdivision (a) of Section 7151 of the Health and Safety Code of their option to
  | consent or object to the release, and the appropriate person consents or the effort has been unsuccessful. A
12 | reasonable effort shall be deemed to have been made when a search for the persons has been underway for
13 | at least 12 hours. The search shall include a check of local police missing persons records, examination of
  | personal effects, and the questioning of any persons visiting the decedent before his or her death or in the
14 | hospital, accompanying the decedent's body, or reporting the death, in order to obtain information that
15 | might lead to the location of any persons listed in subdivision (a) of Section 7151 of the Health and Safety
  | Code.

16 |

17 |

18 | Plaintiff has alleged with specificity that (1) §§ 27491.4(a) & 27491.45(b) impose a mandatory duty on the
19 | coroner, (2) the complaint also established that the plaintiff has standing by citing Section 7151 of the
  | Health and Safety Code, which describes the
20 | category of specified persons the statute was intended to protect, and (3) the complaint sets forth the
21 | breach of statute's mandatory duty as being the proximate cause of the injury suffered.

22 | Here, the San Mateo County Coroner deprived the plaintiff Isolina Picon of the heart of her deceased son
23 | for nearly thirty days. The actions of the County Coroner caused a deprivation of the plaintiffs' property

24 |

25 |

26 | *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers):*

27 |

| This page may be used with any Judicial Council form or any other paper filed with the court. | Page ___14___ |
|---|---|

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

| SHORT TITLE: PICON V. COUNTY OF SAN MATEO | CASE NUMBER:<br>CIV 467161 |
|---|---|

1  without due process of law in violation of the Fourteenth Amendment. The heart was retained without the
2  knowledge of the plaintiff and without an attempt to notify her and request consent to retain the organ for
3  scientific purposes.

4  42 U.S.C. 1983 states, in relevant part:

5     Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State or
6  Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States
7  or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
   secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,
8  or other proceeding for redress......

9
10  Therefore, if the standards set forth in California Government Code §§ 27491.4(a), and 27491.45(b) allow
11  the San Mateo County Coroner to deprive the plaintiff of her property interest in the remains of her
12  deceased child a violation of the Fourteenth Amendment has occurred and the County and the Coroner are
   liable to the plaintiff in an action at law, suit in equity, or other proceeding for redress Under the
   Constitution Of The United States.

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with the court.        Page ___15___

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501
American LegalNet, Inc. | www.USCourtForms.com

PLD-PI-001(6)

| SHORT TITLE:<br>PICON V. COUNTY OF SAN MATEO | CASE NUMBER: |
|---|---|

## Exemplary Damages Attachment          Page ___16

ATTACHMENT TO    [✓] Complaint    [ ] Cross – Complaint

EX-1. As additional damages against defendant (name):
    ROBERT FOUCRAULT individually and as Coroner San Mateo

Plaintiff alleges defendant was guilty of
[✓] malice
[✓] fraud
[✓] oppression
as defined in Civil Code section 3294, and plaintiff should recover, in addition to actual damages, damages
to make an example of and to punish defendant.

EX-2. The facts supporting plaintiff's claim are as follows:

This Exemplary Damages Attachment incorporates each of the preceding causes of action not
negligence as though set forth in full.
On October 26, 2006 the San Mateo county coroner's office conducted an autopsy on Nicholas
Picon. Nicholas Picon was the natural born son of the plaintiff Isolina Picon.
On October 26, 2006, the Coroner's office of San Mateo County told the plaintiff that the remains
of her son Nicholas Picon were released to the funeral home.
On October 30, 2006, plaintiff buried what she thought was the intact remains of her son Nicholas
Picon.
On November 13, 2006, plaintiff found out that she had not buried her son's body intact. The same
day plaintiff requested an autopsy report.
On November 14, 2006, plaintiff went to the district attorney's office in person to report the theft
of her son's heart.
On November 16, 2006, plaintiff was informed that the coroner had the legal rights to the heart
that the law vested the authority in the Coroner solely to determine the disposition of deceased
remains.
Only after repeated phone calls and pleas for the return of her son's heart did the plaintiff regain
possession of the heart on November 21, 2006, at 5:30 pm.
Plaintiff was misled to believe that she had been given her son's remains. Plaintiff was
intentionally misinformed by the county coroner and county counsel about the law as it pertains to
organ retention. Plaintiff was forced to make repeated attempts to regain custody of her son's stolen
heart through numerous pleas and calls.
The Coroner's office intentionally released the plundered body of Nicholas Picon to the funeral
home without notifying the next of kin that the entire heart organ was retained.
The plaintiff was reduced to daily begging from November 13 - November 21, 2006, the time
period between the knowledge of the theft and the recovery of the heart organ.
Plaintiff was repeatedly and callously, rebuffed, turned away, and given false information during
the aforementioned time period.

      . . . . . .

EX-3. The amount of exemplary damages sought is
    a. [✓] not shown, pursuant to Code of Civil Procedure section 425.10.
    b. [ ] $

Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001(6) [Rev. January 1, 2007]

**Exemplary Damages Attachment**

Code of Civil Procedure, § 425.12<br>www.courtinfo.ca.gov

American LegalNet, Inc.<br>www.FormsWorkflow.com

MC-031

| PLAINTIFF/PETITIONER: Isolina Picon | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: County of San Mateo;Robert Foucrault | |

## DECLARATION

*(This form must be attached to another form or court paper before it can be filed in court.)*

### VERIFICATION

I, Isolina Picon hereby declare, that my son Nicholas Picon died in our home on October 25, 2006. I was informed on October 26, 2006 that my son died of a congenital heart defect called intramural tunneling of the heart I was given this information by the San Mateo Coroner's office at the conclusion of his autopsy.

I buried what I believed at the time to be the intact remains of my son on October 30, 2006. The funeral gave me a sense of purpose in that I was honoring my sons' remains and laying him to rest. It was the start of what I thought at the time to be the process of closure.

I was heartbroken at the loss of my son but I knew that I had to be strong for my family especially my husband and my daughter. I reasoned that due to that fact that my son died of natural causes in his own home that while tragic it was as peaceful a way to depart this earth as I could imagine otherwise.

I began to cope with my grief by seeking out my sons' friends and others who had suffered similar loss. It was during this search for answers and guidance that I stumbled upon the gross discovery that the San Mateo County Coroner's office had unbeknownst to me "stolen" the heart of my son, literally taking it from his body. This news completely rocked me to the core. It literally brought me to my knees. It destroyed me. I have not been the same person since finding out this information. As if finding out the information could have been any worse I was then forced to quite literally "beg" and plead with the San Mateo County Chief Deputy Coroner Thomas Marriscolo to return my sons heart to me. I cried. I pleaded with him and he keep telling me that I could not have my son's heart back. He told me that it had been sent to Stanford University for studying, he told me that I could not have it for health and safety reasons, he told me that I would have to pay to have my sons body exhumed and have the heart put back with the rest of his remains. He very coldly said that I could not have my son's heart back and that he would not speak to me again until he spoke with County counsel and then he hung up the phone abruptly in my face!

Still I begged, still I pleaded and finally on November 21, 2006, over a week later my sons' heart the heart that I nurtured and grew in my own womb was returned to me. The entire ordeal has caused me to have nightmares about my sons' heart being ripped from his body, callously stored and other outrageous thoughts that I cannot even begin to describe.

One of them being the fear that the heart that I was given is not my son's heart at all.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 23, 2007

Isolina Picon
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF DECLARANT)

☐ Attorney for  ☐ Plaintiff  ☐ Petitioner  ☐ Defendant
☐ Respondent  ☑ Other *(Specify):*
PLAINTIFF

Form Approved for Optional Use
Judicial Council of California
MC-031 [Rev. July 1, 2005]

**ATTACHED DECLARATION**

Page 17

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT A

# SAN MATEO COUNTY CORONER'S OFFICE

## PATHOLOGY REPORT

CASE No. 06-2533-A

NAME:  PICON, Nicholas          SEX: Male          AGE:  23 years

Death Time & Date: Pronounced 1640 hours, 10-25-06

Time & Date of Exam: 0830 hours, 10-26-06

Autopsy Surgeon: Peter A. Benson, M.D., performed at San Mateo Medical Center, 222 W. 39th Avenue, San Mateo, CA  94403

## CAUSE OF DEATH

   I. Disease or Condition directly leading to death:

     A.  Probable cardiac dysrhythmia

     due to

     B.  Intramural tunneling of left anterior descending coronary artery

     due to

     C.

     due to

     D.

   II. Other significant conditions contributing
      but not related to the immediate cause of death:

CERTIFIED
DOCUMENT
. . . OF
DISTRIBUTED
TO  ISOLINA  PICON
SAN MATEO COUNTY CORONER
BY  VG      DATE 11|27|06

## DIAGNOSES:

   I.   Intramural tunneling of left anterior descending coronary artery (also called myocardial coronary bridging - up to 5 mm deep over a 20 mm tunnel)
     A.  Focal fibrosis in right ventricular endocardium
     B.  Sudden collapse per scene investigation, consistent with cardiac dysrhythmia – moderate dilatation of right atrium

[Continued]

# SAN MATEO COUNTY CORONER'S OFFICE

## AUTOPSY REPORT

**NAME: PICON, Nicholas**                    **CASE No. 06-2533-A**

**PROLOGUE:** Written information available to the Forensic Pathologist prior to the autopsy is contained in a six-page Investigation Report by Investigator Gamble. Also received with the body is a digital photographic disk.

This autopsy begins in the Coroner's morgue at San Mateo Medical Center at 0830 hours and concludes at 1000 hours, Thursday, October 26, 2006. Assisting at the autopsy is Holly Benedict, Forensic Autopsy Technician.

## IDENTIFICATION

An identification tag present on the right foot is signed by Investigator Gamble ("Nicholas Picon").

## EXTERNAL EVIDENCE OF THERAPEUTICS AND/OR ATTEMPTED RESUSCITATION

Four EKG electrodes are present on the trunk.

There is a 3 mm long pale linear scar below and lateral to the left kneecap.

## EXTERNAL EXAMINATION

Present on a gurney in the morgue, and wrapped in a white plastic wrap, is the supine body of a white/Hispanic adult male whose appearance is consistent with the given age of 23 years. The body measures 66 inches in length and weighs 132 pounds (the length and net weight are determined by Holly Benedict, Forensic Autopsy Technician).

**Clothing:** None. The body is nude.

There is full rigor mortis. Postmortem lividity is noted in the posterior portions of the body.

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

1   On the face is a coating of white soap or lotion, now dried, located on the nose,
2   cheeks, and chin. On the scalp is straight, black hair measuring up to 6 inches in
3   length. On the face are a trimmed beard and moustache with the hairs measuring
4   approximately 1/2 inch in length. The sclerae are white and irides are brown. The
5   pupils are round and equal and each measures 5 mm in diameter. Rare bulbar
6   conjunctival petechiae are seen bilaterally, but no petechiae are seen in the
7   palpebral conjunctival surfaces, or the facial skin. No tache noire is seen on the
8   bulbar surfaces. The jaws show natural teeth, the biting edges of which are
9   separated approximately 1/2 inch apart. No bite marks are seen in the lips or
10  anterior visible tongue. The nasal septum is grossly normal. The oral cavity is free
11  of fluid or foreign material. The hard palate is noted to have a high arch. The
12  earlobes are unremarkable. The trachea is in the midline. The chest hair is scanty
13  but appears shaved. The abdomen is flat. No surgical scars are seen on the
14  abdomen. The penis is uncircumcised. The testes are present within the scrotum.
15  The fingernails are uniformly short and appear cut or bitten to the quicks. There is
16  no clubbing of the digits. The posterior portions of the body are unremarkable. No
17  pitting edema of the ankles is found.
18
19  **EXTERNAL EVIDENCE OF INJURY**
20
21  No injury is seen. No recent or old needle puncture mark is identified.
22
23
24  <center>**INTERNAL EXAMINATION**</center>
25
26  Following the external examination, the body is opened with the usual Y-shaped
27  incision. The color of the skeletal muscles is unremarkable. The ribs are intact and
28  the pleural cavities are unremarkable. There is no evidence of pneumothorax or
29  pleural effusions. The pre-peritoneal fat measures 3/4 of an inch in thickness, two
30  inches below the level of the umbilicus. The peritoneal surfaces are normal. The
31  spinal column appears normal.
32
33  **INTERNAL EVIDENCE OF INJURY**
34
35  No traumatic injuries are seen in the internal organs.
36
37  **INTERNAL EVIDENCE OF THERAPY**
38
39  None is seen.
40
41

<center>2</center>

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

# SYSTEMS EXAMINATION

**THYMUS:** The thymus, which overlies the great vessels at the base of the heart, weighs 50 grams. There are numerous scattered tiny petechiae-like hemorrhages throughout the thymus.

**HEART:** The pericardial and epicardial surfaces are smooth and glistening. Within the pericardial sac are 20 mL of clear straw-colored fluid, which is removed and discarded. The pulmonary artery is opened in situ and palpated for thromboemboli and none is found. The right atrium appears moderately dilated. Blood is aspirated from the right side of the heart for a toxicologic sample. The heart weighs 300 grams. The predicted normal heart weight based on sex and height is 308 grams (range 218 to 435 grams) and based on sex and weight is 302 grams (range 229 to 399 grams).* The coronary arteries originate normally from the aorta; they are sectioned at closely-placed intervals revealing small vessels without evidence of calcification, atherosclerosis, mural hemorrhage, or luminal thrombus. The left anterior descending artery is noted to tunnel into the muscle of the anterior wall of the left ventricle over a 20 mm length, and up to 5 mm in depth near the central portion of the tunnel. The heart is opened along the flow of blood. The right ventricle measures up to 3 mm and the left ventricle measures up to 15 mm in thickness. The heart valves are unremarkable. The heart valve circumferences measure as follows: tricuspid 12.5 cm, pulmonic 7 cm, mitral 8.5 cm, and aortic 5.5 cm. There is no evidence of rheumatic disease, mitral prolapse or vegetations. The endocardial surfaces are smooth and glistening. The myocardium is normal, with no gross evidence of necrosis or scarring. No auricular or endocardial clots are seen. The foramen ovale is closed.

The formalin-fixed heart is re-examined on 10-29-06, and two Polaroid photographs are taken. Below the pulmonary valve, the anterior wall of the right ventricle shows a pocket-like diverticulum. The opening measures 7 x 12 mm, and the pocket is 15 mm deep. This diverticulum is located beneath the course of the right coronary artery. Also noted is a 5 mm patch of endocardial fibrosis on the septal wall of the right ventricle near the apex.

**LUNGS:** The right lung weighs 310 grams and the heavier left lung weighs 370 grams. Both lungs show pink and crepitant parenchyma in the anterior portions and a slight degree of generalized congestion which is most prominent in the posterior dependent portions. There is a slight degree of irregularity in the aeration

---

* Reference: Mayo Clinic Proceedings 63: 1237 - 1246, 1988. Kitzman, D. et al. Age-related changes in normal human hearts during the first 10 decades of life, Part II (Maturity): A quantitative anatomic study of 765 specimens from subjects 20 to 99 years old.

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

of the anterior portion of the right lung. There is spotty black anthracotic pigment over the pleural surfaces of both lungs. No discrete area of consolidation is found. There is no evidence of aspiration of gastric contents. The bronchial tree is free of fluid or foreign material. No thromboembolus is seen. The hilar lymph nodes are grossly unremarkable. No aromatic or alcohol-like odor is detected.

**NECK ORGANS:** The neck organs are examined towards the conclusion of the autopsy and they appear grossly normal. The thyroid gland is normal in size and shape, and the airway is clear. The hyoid bone, thyroid cartilage and cricoid cartilage are intact. The carotid arteries are left intact at the conclusion of the autopsy to assist the mortician. The cervical spine is grossly intact. The strap muscles of the neck are atraumatic.

**LIVER:** The liver weighs 1400 grams. The liver is grossly normal.

**GALLBLADDER:** The gallbladder and bile ducts are grossly normal. There is no evidence of gallstones or duct obstruction.

**SPLEEN:** The spleen weighs 180 grams. The spleen shows unusual lobulation with several triangular depressions of the capsule resulting in "dog-ear"-like triangular lobes. The capsule is thin and intact, and the parenchyma has a uniform dark red color and normal consistency.

**PANCREAS:** The pancreas is unremarkable. There is no evidence of hemorrhagic inflammation, fat necrosis or calculi.

**GASTROINTESTINAL TRACT:** There is no palpable evidence of a hiatus hernia. The esophagus is normal. Within the stomach are approximately 15 grams of mucoid fluid. No pills or capsules are seen and there is no chemical gastritis. The mucosal surfaces of the esophagus, stomach, and duodenum are intact. No ulcer or ulcer scar is seen and there is no gross evidence of gastrointestinal bleeding. The small intestine, appendix and large intestine are unremarkable. No intestinal foreign body is detected.

**ADRENALS:** The adrenal glands are grossly normal in size, shape, and color.

**UROGENITAL SYSTEM:** The right kidney weighs 110 grams and the left kidney weighs 150 grams. The thin capsules strip with ease from the smooth renal surfaces. Both kidneys show a moderate degree of generalized congestion. The ureters are normal in caliber. The urinary bladder contains approximately 50 mL

San Mateo County Coroner's Office
PICON, Nicholas
Autopsy Report, Case No. 06-2533-A

of yellow urine. A Bayer Diastix is negative for glucose. The prostate and testes are grossly normal.

**AORTA:** The aorta is unremarkable.

**CENTRAL NERVOUS SYSTEM:** By means of a bi-temporal incision, the scalp is reflected. There is no evidence of scalp trauma and specifically, no bruise is seen in the posterior neck or occipital areas. There is no evidence of skull fracture and the dura is subsequently stripped from the internal aspect of the skull for confirmation. The calvarium is removed in the usual fashion by the Forensic Autopsy Technician. The calvarium is normal in color, thickness, and consistency. The brain weighs 1380 grams. The cerebellum and brainstem contribute 200 grams to the total brain weight. The dura and leptomeninges are unremarkable. The arteries at the base of the brain are thin and delicate. The brain is symmetrical and shows no focal lesions. There is no herniation of the cerebellar tonsils or unci. The brain is sectioned in the fresh state by means of closely-placed coronal sections and no unusual features are detected. There is no evidence of hydrocephalus. The substantia nigra is normally pigmented. The pituitary gland is unremarkable. The foramen magnum and dens are grossly normal.

**DIAGRAMS ATTACHED**

One-page.

**TISSUE SPECIMENS**

Specimens are retained in 10% buffered formalin for diagnostic purposes. The cardiac specimen is retained to permit further detailed examination.

Sections taken on 10-29-06:

       1. Tunneled left anterior descending coronary artery
       2. Right ventricular endocardium
       3. Right and left ventricular myocardium

**PHOTOGRAPHS**

An identification Polaroid photograph is taken by the Forensic Autopsy Technician and sent to the Coroner's Office. Two Polaroid photographs of the heart are taken on 10-29-06.

1  Ayanna L. Jenkins Toney, Esq. CSB#224847
   700 LARKSPUR LANDING CIRCLE
2  STE.199
   LARKSPUR, CA 94939
3  Telephone (415) 464-4974
   Fax (415) 464-4975

4

5  Attorney for PETITIONER,
   ISOLINA PICON

6

7          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8              IN AND FOR THE COUNTY OF SAN MATEO

9

10

11  ISOLINA PICON,                    )   Case No.: CIV 467161
                                      )
12          Petitioner,               )   NOTICE OF UNAVAILABILITY OF
                                      )   COUNSEL
13      vs.                           )
                                      )
14  COUNTY OF SAN MATEO, ROBERT       )
                                      )
15  FOUCRAULT, individually and as Coroner )
                                      )
16          Respondent                )

    Notice is hereby given to the above referenced COURT and OPPOSING COUNSEL that commencing on February 4, 2008
17
    and continuing through February 15, 2008, the Law Offices Of Ayanna L. Jenkins Toney, Esq. will be closed and counsel will
18
    not be available for any purpose whatsoever, including but not limited to receiving notices of any kind, appearing in court,
19
    receiving service of discovery, responding to ex parte applications, attending depositions, or any other matter requiring counsel's
20
    personal attendance.

21

22      I respectfully request that the above-entitled court take notice of this unavailability.    Purposefully scheduling a conflicting

23  procedure without good cause is sanctionable conduct. Tenderloin Housing Clinic v. Sparks (1992) 8 Cal.App.4th 299.

24

25  Dated: January 28, 2008

26                                              Ayanna L. Jenkins Toney
                                                Attorney for PETITIONER
27

28

PROOF OF SERVICE

{C.C.P. 1013a}

I declare that I am over the age of 18 years and that I am not a party to this action.  My address is: 700 Larkspur Landing Circle, Suite 199, Larkspur , CA 94939.  On <u>JANUARY 28, 2007,</u> I served the following document(s) described as:

**PLAINTIFFS AMENDED COMPLAINT; NOTICE OF UNAVAILABILITY OF COUNSEL; REQUEST FOR REMOVAL OF DEMURRER FROM CALENDAR**

(XXX ) **BY MAIL,** causing each such envelope, with first class postage thereon fully prepaid, to be deposited in a U.S. Post Office mailbox at Larkspur, California, for collection and mailing at the address below.

MICHAEL P. MURPHY, COUNTY COUNSEL
HALL OF JUSTICE AND RECORDS
400 COUNTY CENTER, 6TH FLOOR
REDWOOD CITY, CA 94063

(   ) **BY PERSONAL DELIVERY,** personally delivering an envelope with a copy of the forgoing documents sealed therein to the addressee(s) at the address set forth below as follows:

**Date:**

**Time:**

(X XX ) **BY FACSIMILE,** sending through facsimile transmission a true copy thereof to the person at the fax number set forth below.  The transmission was reported as complete and without error.  (650) 363-4034

I Rita Fry, declare under penalty of perjury under the laws of the State of California that the foregoing is in my personal knowledge and is true and correct, except as to matters alleged on information and belief, and as to those matters I believe them to be true.  If called to testify I would relate the same information.  Executed this 28th day of <u>JANUARY,</u> 2008, in Larkspur, California.

Rita Fry

-1-