MICHAEL P. MURPHY, COUNTY COUNSEL (SBN 83887)
By: John D. Nibbelin, Deputy (SBN 184603)
By: Glenn M. Levy, Deputy (SBN 219029)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA  94063
Telephone: (650) 363-4757
Facsimile:  (650) 363-4034

Attorneys for Defendants
COUNTY OF SAN MATEO and ROBERT
FOUCRAULT, individually and as Coroner, San
Mateo County

UNITED STATES DISTRICT COURT

NORTHERN DISTICT OF CALIFORNIA

| | |
|---|---|
| ISOLINA PICON,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>COUNTY OF SAN MATEO, ROBERT FOUCRAULT, individual and as Coroner, SAN MATEO COUNTY<br><br>　　　　　Defendants. | Case No. 08-0766 SC<br><br>**STATEMENT OF RECENT DECISION RE DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Hearing:<br><br>Date:　　　submitted on the briefs<br>Time:　　　n/a<br>Judge:　　 Hon. Samuel Conti<br>Courtroom: 1, 17th Floor |

Case No. 08-0766 SC

STATEMENT OF RECENT DECISION RE DEFENDANTS' MOTION TO DISMISS PURSUANT TO
RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

1    Defendants County of San Mateo and Robert Foucrault hereby submit the recent decision,

2    *Albrecht v. Treon*, Slip Opinion No. 2008-Ohio-2617, a true and correct copy of which is attached hereto

3    as Exhibit A, in support of their pending motion to dismiss pursuant to Rule 12(b)(6) of the Federal

4    Rules of Civil Procedure. This decision was issued yesterday, June 5, 2008.

5

6    Dated: June 6, 2008                              Respectfully submitted,

7                                                     MICHAEL P. MURPHY, COUNTY COUNSEL

8

9                                                     By: _____/s/_____

10                                                          Glenn M. Levy, Deputy

11                                                   Attorneys for Defendants
                                                     COUNTY OF SAN MATEO and ROBERT
12                                                   FOUCRAULT, individually and as Coroner, San
                                                     Mateo County

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **Exhibit A**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Albrecht v. Treon*, Slip Opinion No. 2008-Ohio-2617.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2008-OHIO-2617**

**ALBRECHT ET AL. *v.* TREON ET AL.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Albrecht v. Treon*, Slip Opinion No. 2008-Ohio-2617.]**

*The next of kin of a decedent upon whom an autopsy has been performed do not have a protected right under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the coroner for forensic examination and testing.*

(No. 2007-0507 — Submitted January 23, 2008 — Decided June 5, 2008.)

ON ORDER from the United States District Court for the Southern District of Ohio, Western Division, Certifying State Law Question, No. 1:06cv274.

_____

**SYLLABUS OF THE COURT**

The next of kin of a decedent upon whom an autopsy has been performed do not have a protected right under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the coroner for forensic examination and testing.

_____

LUNDBERG STRATTON, J.

## I.  Introduction

*Background*

{¶ 1}   This case involves the balancing of delicate issues involving a family's right to properly bury their deceased loved one in a condition that is as complete as possible against the state's right to conduct an autopsy where appropriate in a thorough and timely manner.  Today we must determine whether the next of kin of a decedent, upon whom an autopsy has been performed, have a protected right under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the coroner for forensic examination and testing.

{¶ 2}   The respondents, Mark and Diane Albrecht, argue that the coroner should be required to give notice to the deceased's next of kin[1] of the coroner's intent to retain certain forensic specimens for several weeks to complete the autopsy, and allow the next of kin to decide whether they want to receive the specimens when the coroner is through with them.  This case could have implications far beyond simply the parties involved, as is evidenced by the number of amicus briefs that have been filed, including briefs by the National Association of Medical Examiners, the County Commissioners' Association of Ohio, the Buckeye State Sheriffs' Association, the Ohio Association of Chiefs of Police, the Ohio Prosecuting Attorneys Association, the Ohio Society of Pathologists, the Ohio State Coroners Association, the Ohio State Medical Association, the Ohio Attorney General's Office, 65 counties that are affected by this ruling, and two funeral homes.  In oral argument it was argued that our answer may also affect other aspects of the medical profession, such as when surgeons remove organs and body tissue during surgery.  However, many of the

---

1.  We use "next of kin" to mean any one or more persons entitled to claim a decedent's body from the coroner's office.

January Term, 2008

arguments raised by the parties and amici relate to public-policy issues, not legal issues.

{¶ 3}  Coroners have conducted autopsies in Ohio for several decades. Autopsies serve an important public function relating to health, science, and criminal investigation.  However, we must take the law of Ohio as we find it and leave the crafting of new solutions to the General Assembly.  Courts are not the proper forum for regulating the practices, standards, customs, policies, and procedures of autopsies in Ohio, as long as they pass constitutional muster. Therefore, we must look to the law to determine whether the next of kin have a protected right in the autopsy specimens of their deceased after an autopsy is complete.

*Facts*

{¶ 4}  Respondents initiated the underlying lawsuit against the coroner of Clermont County, Ohio, Dr. Brian Treon, the Board of County Commissioners, and the commissioners individually.  After the death of Albrecht's son, Christopher Albrecht, in accordance with proper forensic practice and statutory obligations, the Hamilton County Coroner retained their son's brain for further examination to determine the cause of death.  Upon review of the autopsy report, the Albrechts discovered that their son's brain had been retained by the coroner's office when it released the body to them and had been disposed of after completion of the autopsy, thereby prompting them to file the underlying cause of action for damages.

{¶ 5}  The underlying case was filed in the United States District Court for the Southern District of Ohio and is now a putative class-action suit against all county coroners and/or medical examiners in the state of Ohio who, prior to a recent change in the law, had removed, retained, and disposed of body parts without prior notice to next of kin, and the county commissioners of those

counties.  Eighty-seven counties (all Ohio counties except Hamilton, which has already settled a similar suit) are implicated in the suit.

{¶ 6}  On March 16, 2007, Judge Susan J. Dlott of the United States District Court for the Southern District of Ohio, Western Division, certified a question of state law for review to this court pursuant to S.Ct.Prac.R. XVIII.  On June 11, 2007, this court agreed to answer the following question: "Whether the next of kin of a decedent, upon whom an autopsy has been performed, have a protected right under Ohio law in the decedent's tissues, organs, blood or other body parts that have been removed and retained by the coroner for forensic examination and testing."

{¶ 7}  Respondents do not assert that they did not receive the body of their son for burial, nor do they contend that petitioners mishandled or in any way abused the body.  They allege, instead, that once the autopsy was completed, they should have been given the opportunity to retrieve the brain for burial.  Respondents argue that petitioners' failure to give them that opportunity violated their due process rights.

{¶ 8}  For the following reasons, we answer the certified question in the negative and hold that the next of kin of a decedent upon whom an autopsy has been performed do not have a protected right under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the coroner for forensic examination and testing.

## II.  Autopsy Process and Protocol

{¶ 9}  An autopsy includes, by definition, the removal and sometimes the retention of specimens from the human body:

{¶ 10} "[A]utopsy means the external and internal examination of the body of a deceased person, including, but not limited to, gross visual inspection and *dissection of the body and its internal organs*, photographic or narrative documentation of findings, microscopic, radiological, toxicological, chemical, or

January Term, 2008

other laboratory analyses performed in the discretion of the examining individual upon tissues, organs, blood, other bodily fluids, gases, or any other specimens and the *retention for diagnostic and documentary purposes of tissues, organs, blood, other bodily fluids, gases, or any other specimens* as the examining individual considers necessary to establish and defend against challenges to the cause and manner of death of the deceased person." (Emphasis added.) R.C. 313. 123(A)(1).

{¶ 11} The brain is a common site of diseases that are responsible for death. Sheaff, Michael T. & Hopster, Deborah J., Post Mortem Technique Handbook (2d Ed.2005) 282. Also, injuries to and abnormalities of the brain, such as subdural hematoma (often caused by the head's hitting a hard surface), inflammation of the brain, stroke, and tumors, may not be obvious without dissecting the brain. Wagner, Scott A., The Color Atlas of the Autopsy (2004) 203. Therefore, all autopsies performed under a coroner's jurisdiction require the examination of the brain. Id.

{¶ 12} During an autopsy, after the brain is removed from the skull, the medical professional uses his or her discretion in determining whether to dissect the brain in its fresh state (without soaking it in any solution to promote hardening) or in a fixed state (after it has soaked in a hardening solution). Post Mortem Technique Handbook 285.

{¶ 13} Fixation of a brain is accomplished by suspending the brain upside down in a large container of ten percent formal saline (formalin) for at least four to six weeks. Post Mortem Technique Handbook 285. Although the dissection of a fixed and fresh brain are identical, fixation of the brain prior to dissection provides for a superior neuropathological examination. Id. Moreover, in cases in which there have been contusions or other injuries to the head (such as falling on a hard surface), inflammation (meningitis), fractures, stroke, or those in which there is reason to believe there are unexpected tumors or old injuries, or in cases

SUPREME COURT OF OHIO

involving sudden unexpected deaths of children, fixation of the brain prior to dissection provides a far better neuropathological examination. Id.; The Color Atlas of the Autopsy 2, 203. Thus, due to the length of time required for proper fixation of the brain, the coroner often returns the body without the brain and later destroys the brain after the examination is completed.

### III. Analysis

{¶ 14} Respondents argue that they were denied due process of law when the coroner destroyed their deceased son's brain after a statutorily mandated autopsy without giving them the opportunity to retrieve the brain for burial. For respondents to be successful, they must show that state law in effect at the time of the incident gave them a property interest in their deceased son's body parts. *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. See also *State ex rel. Horvath v. State Teachers Retirement Bd.* (1998), 83 Ohio St.3d 67, 73, 697 N.E.2d 644. Therefore, we must determine whether the next of kin of a decedent have a protected right in autopsy specimens under Ohio law.

*Brotherton and Its Progeny*

{¶ 15} In a related mandamus action before the Sixth Circuit Court of Appeals, the court noted that respondents argued that the court had already decided the question in *Brotherton v. Cleveland* (C.A.6, 1991), 923 F.2d 477. In *Brotherton*, a widow brought a civil-rights action regarding a coroner's alleged violation of her equal-protection and due-process rights in permitting removal of her deceased husband's corneas for use as anatomical gifts without the widow's or her children's consent. That case involved R.C. Chapter 2108, Ohio's Anatomical Gift Act, and specifically R.C. 2108.60(B), which permits a coroner to remove the corneas of autopsy subjects without obtaining the consent of a family member, provided that the coroner has no knowledge of an objection by the decedent or the next of kin. The widow had voiced objection at the hospital

6

when asked if she wanted to donate her husband's corneas. However, because her husband's death was considered a possible suicide, his body was taken to the coroner's office for an autopsy. The hospital did not communicate the wishes of the widow to the coroner, and the coroner's office did not inquire as to whether there was any objection. Id. 923, F.2d at 478.

{¶ 16} The *Brotherton* court concluded that a majority of the courts that had been confronted with the issue whether a person can have a property interest in a dead body had found that a property right of some kind did exist and that some of those courts referred to the right as a "quasi-property right." Id. at 480. However, the court noted that two Ohio appellate courts had not characterized the right as a property right. Id. One court refused to characterize it that way. The court cited *Carney v. Knollwood Cemetery Assn.* (1986), 33 Ohio App.3d 31, 35-37, 514 N.E.2d 430, and *Everman v. Davis* (1989), 54 Ohio App.3d 119, 561 N.E.2d 547.

{¶ 17} The *Brotherton* court, in examining R.C. 2108.02(B), which governs who may make anatomical gifts of a decedent's body parts, concluded that "[a]lthough extremely regulated, in sum, these rights [possessory right and the right to have the body remain undisturbed] form a substantial interest in the dead body, regardless of Ohio's classification of that interest." *Brotherton*, 923 F.2d at 482. Thus, the court held that the "aggregate of rights granted by the state of Ohio to Deborah Brotherton rises to the level of a 'legitimate claim of entitlement' in Steven Brotherton's body, including his corneas, protected by the due process clause of the fourteenth amendment." Id.

{¶ 18} The dissent in *Brotherton* charged that the majority was "wrong in its holding that the procedural requisites for dealing with non-property can rise to become property and be protected by the fourteenth amendment. Nor can the grant of procedures to enhance the health and well-being of others in society and the imposition of duties on persons (coroners or hospitals) grant property rights

protected by the fourteenth amendment in favor of the decedent's relatives."  Id.,
923 F.2d at 484.

{¶ 19} *Brotherton,* however, involved R.C. Chapter 2108, the Anatomical
Gift Act, as it related to removal of corneas from autopsy subjects for use by eye
banks.   Thus, *Brotherton's* specific holding regarding removal of corneas for
purposes unrelated to the autopsy is not relevant in this case.   The two cases relied
upon in *Brotherton, Carney* and *Everman,* also are not relevant to our inquiry
today.

{¶ 20} *Carney* involved a claim for the mishandling of a dead body, which
clearly distinguishes it from the case at bar.   The Eighth District Court of Appeals
rejected the theory that a surviving custodian has quasi-property rights in the body
of the deceased, and noted a trend away from this "quasi-property fiction."
*Carney*, 33 Ohio App.3d at 35-36, 514 N.E.2d 430.

{¶ 21} In *Everman*, the spouse of a motorist killed in an automobile
accident brought an action against the county coroner and others, alleging
emotional distress resulting from the coroner's decision to perform an allegedly
unnecessary autopsy.   *Everman*, 54 Ohio App.3d at 120, 561 N.E.2d 547.   The
Second District rejected the theory that a husband's right to possession of his
deceased wife's body for purposes of preparation, mourning, and burial is
protected by the Fourth Amendment to the United States Constitution, which
provides that persons, houses, and effects are protected against unreasonable
search and seizure. Id. at 122.   The court concluded that nothing in the language
of the Fourth Amendment suggests that the body of the former person is the
"effect" of anyone else.   Id.

{¶ 22} The case at bar does not involve the Anatomical Gift Act (as
*Brotherton* did*)*, the denial of a right to bury a decedent (as *Everman* did*)*, or the
unauthorized disturbance of a body (as *Carney* did*)*.

January Term, 2008

{¶ 23} The Sixth Circuit's decision in *Montgomery v. Clinton Cty.* (C.A.6, 1991), 940 F.2d 661 (Table), however, involved an autopsy to which the decedent's next of kin objected. In *Montgomery*, the plaintiffs filed suit against a coroner who had performed an autopsy on their deceased son without their consent, but within the scope of his statutory duties. In denying the plaintiffs' due-process claim, the Sixth Circuit held: "There is no merit in the procedural due process claim founded on the state statutory requirement that the medical examiner make a diligent effort to notify the next of kin as to the decision to perform an autopsy. Whatever the nature of the right created by the statute, there is an insufficient liberty or property interest under this statute to create a valid procedural due process claim. Although the notice requirement in the state statute does not appear to be discretionary, it does not purport to establish a right to control the dead body. We would distinguish this case from *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir.1991). In *Brotherton*, the plaintiff had an 'aggregate of rights granted by the state of Ohio' to control disposition of the body, including the corneas, and thus had a right to refuse removal of corneas for purposes of a cornea transplant. *Id.* at 482." *Montgomery* *2. Although it involved Michigan law, the Sixth Circuit found that the Michigan statute did not create a sufficient interest to support a due-process claim for the coroner's failure to give notice before the autopsy.

{¶ 24} In 2005, in *Hainey v. Parrott* (Sept. 28, 2005), S.D.Ohio No. 1:02-CV-733, 2005 WL 2397704, the United States District Court for the Southern District of Ohio examined a case with facts similar to those in the case at bar. In *Hainey*, the named plaintiffs and the class members they represented each had a family member who had died under circumstances in which the Hamilton County coroner decided pursuant to his statutory grant of authority and discretion that an autopsy was necessary to determine the cause of death and that the brain would need to be examined after being "fixed," a process that, as previously mentioned,

takes several weeks. The coroner's office did not notify the plaintiffs, either prior to or at the time of the release of the bodies, that it would be retaining the brains of the decedents for further forensic examination. Nor did the coroner's office notify the plaintiffs when examination of their decedent's brain was complete so that they could, if they chose, recover the remains to be interred with the other remains of the decedent or for other disposition. Id. at *1.

{¶ 25} The plaintiffs argued that the coroner should have advised them that it was necessary to retain the brains of their decedents for purposes of performing the autopsy and that upon completion of the autopsy, the coroner should have notified them so that they could have retrieved the remains and interred them. The plaintiffs also argued that if they had been given prior notice, they could have decided to delay the recovery of their decedents' remains until the autopsy was finished, so that the remains could be restored as completely as possible before interment. Plaintiffs claimed that the coroner's policy of not giving them any notice regarding the retention and disposal of their decedents' brains deprived them of their property interest in their decedents' remains without due process of law. Id. at *4.

{¶ 26} The district court concluded that the plaintiffs had a "cognizable constitutional property interest in their decedent's body parts which the coroner's office violated when it disposed of their decedents' brains without prior notice." Id. at *6. The court concluded that "[a]lthough it is a given that of necessity tissue and fluids will be destroyed [as] a result of performing the autopsy, the right to take possession of what remains of the deceased's body following the completion of the autopsy in no way conflicts with the coroner's admittedly superior prior interest to take custody of the body and complete what procedures are necessary to determine the cause of death." Id. The court further noted that in practical terms, this may mean that when an examination of the brain is required to determine the cause of death, the coroner will simply exercise his statutory

January Term, 2008

authority under R.C. 313.15 to retain the entire body for the several weeks it takes to complete fixation and analysis of the brain. "Whether this is a desirable outcome of this litigation is a different question, but in light of state law, such a decision or policy seemingly would not be an infringement on any property interests of the next-of-kin." Id.

{¶ 27} *Brotherton*, 923 F.2d 477, upon which the district court in *Hainey* relied, involved the coroner's retaining corneas to give to a third party, a practice prohibited by state statute when the coroner is aware that an objection has been made by the decedent prior to death or by the decedent's next of kin. The *Hainey* court expanded the holding of *Brotherton* to apply to situations in which the coroner removed and retained organs for additional forensic examination and testing, a procedure that the coroner is clearly authorized by statute to do. *Hainey's* expansion of *Brotherton* is unsupported by Ohio law.

{¶ 28} "Principles of comity require federal courts to defer to a state's judgment on issues of state law * * *." *Israfil v. Russell* (C.A.6, 2001), 276 F.3d 768, 771. Moreover, the Sixth Circuit noted in its related mandamus action that the respondents were invoking a holding (*Brotherton*) in a decision issued in another case on a distinguishable set of facts. Further, the court noted that since *Brotherton* was decided, changes in Ohio law suggest another reading may be possible. After *Hainey* was decided, and after the acts giving rise to the underlying action in this case, the General Assembly enacted R.C. 313.123, effective August 2006, which now expressly governs retained autopsy specimens, classifying them as medical waste and authorizing the coroner to dispose of them as such.

*Ohio Statutes at the Time Pertinent to This Case*

{¶ 29} Even before R.C. 313.123 was enacted, a deceased's next of kin had no protected right in autopsy specimens pursuant to Ohio statutes. The Ohio Revised Code authorizes coroners to perform an autopsy when the coroner

SUPREME COURT OF OHIO

believes an autopsy is necessary. R.C. 313.131(B). A coroner's forensic examination is a classic function of the police power of the state. Many times, autopsy specimens and the results of the forensic examination are essential evidence in the prosecution of a crime. Sometimes, autopsy specimens must be preserved for long periods of time.

{¶ 30} "When any person dies as a result of criminal or other violent means, by casualty, by suicide, or in any suspicious or unusual manner, when any person, including a child under two years of age, dies suddenly when in apparent good health, or when any mentally retarded person or developmentally disabled person dies regardless of the circumstances," the coroner must be immediately notified by the attending physician or law enforcement agency that obtains knowledge thereof. R.C. 313.12.

{¶ 31} Pursuant to R.C. 313.121, if a child under two years of age dies suddenly when in apparent good health, the death must be reported immediately to the coroner, and, with certain exceptions, the coroner or deputy coroner must perform an autopsy on the child. In accordance with R.C. 313.121 and 313.131, the coroner may decide not to perform an autopsy on the child if the coroner has reason to believe it would be against the religious beliefs of the child's parents. However, the coroner is authorized under both sections to perform the autopsy in spite of those religious beliefs when the coroner concludes that the autopsy is a compelling public necessity. R.C. 313.131. Further, the Ohio Administrative Code mandates that coroners retain the brain and other specimens resulting from the autopsy of a child under two for a period of at least six months when warranted by the circumstances. Ohio Adm.Code 3701-5-14(B)(6).

{¶ 32} "The coroner shall notify any known relatives of a deceased person who meets death in the manner described by section 313.12 of the Revised Code by letter or otherwise. The next of kin, other relatives, or friends of the deceased person, in the order named, shall have prior right as to disposition of the body of

such deceased person." R.C. 313.14. However, pursuant to R.C. 313.15, "[a]ll dead bodies in the custody of the corner shall be held until such time as the coroner, after consultation with the prosecuting attorney, or with the police department * * * or with the sheriff, has decided that it is no longer necessary to hold such body to enable him to decide on a diagnosis giving a reasonable and true cause of death, or to decide that such body is no longer necessary to assist any of such officials in his duties."

{¶ 33} In 2006, the Ohio General Assembly enacted R.C. 313.123, which defines the term "autopsy" for purposes of R.C. Chapter 313 and provides that "[e]xcept as otherwise provided in division (B)(2) of this section, retained tissues, organs, blood, other bodily fluids, gases, or any other specimens from an autopsy *are medical waste* and shall be disposed of in accordance with applicable federal and state laws, including any protocol rules adopted under section 313.122 of the Revised Code." R.C. 313.123(B)(1). (Emphasis added.) The plaintiffs' claims in this case arose before this statute's enactment.

{¶ 34} Moreover, R.C. 313.123 notes that if an autopsy is performed on a deceased person and the coroner has reason to believe that the autopsy is contrary to the deceased's religious beliefs, the coroner shall not remove any specimens, including, but not limited to, tissues, organs, blood, or other bodily fluids, from the body of the deceased person unless it is a compelling public necessity. And with the exception of a DNA specimen, which may be retained, "the coroner shall return the specimens, as soon as is practicable, to the person who has the right to the disposition of the body." R.C. 313.123(B)(2) and (B)(3).

{¶ 35} When the coroner is informed that an autopsy is "contrary to the deceased person's religious beliefs," the coroner is to delay the autopsy for 48 hours to give the objecting person time to file suit to enjoin the autopsy. R.C. 313.131. But this rule does not apply to cases involving aggravated murder, suspected aggravated murder, murder, suspected murder, manslaughter offenses

or suspected manslaughter offenses. R.C. 313.131(F)(1). Also, the coroner has no obligation to obtain consent from the next of kin of a decedent to perform an autopsy. R.C. 2108.52. Further, the coroner's right to perform an autopsy is paramount to the ability of the decedent or next of kin to make a gift of a body part. R.C. 313.13(A).

{¶ 36} Thus, while R.C. 313.14 gives next of kin a right to disposition of the body, that right does not arise until *after* the coroner has performed his duties, and does not include forensic specimens that were retained by a coroner for forensic examination and testing.

*Other Ohio Cases*

{¶ 37} Although this court has not previously addressed this issue, several lower Ohio courts, in cases decided prior to *Brotherton*, held that a dead body is not property. In *Hadsell v. Hadsell* (Allen Cir.Ct. 1893), 7 Ohio C.C. 196, 1893 WL 942, *3, the court held that "[a] dead body is not property." Similarly, in *Hayhurst v. Hayhurst* (Mar.1926), Hamilton C.P. No. 199594, 4 Ohio Law Abs. 375, 1926 WL 2487, the Hamilton County Common Pleas Court held that "[t]here can be no property in a dead body and therefore a man cannot by will, dispose of same, and it does not become a part of his estate." And as previously mentioned, in *Carney* and *Everman*, two Ohio courts more recently rejected the theory that a surviving custodian has quasi-property rights in the body of the deceased.

*Other Jurisdictions*

{¶ 38} In *Fuller v. Marx* (C.A.8, 1984), 724 F.2d 717 (applying Arkansas state law), the widow of a decedent sued the coroner alleging that the decedent's organs had been disposed of, which she alleged was a violation of her constitutional rights. The Eighth Circuit recognized that under Arkansas law, the next of kin does have a quasi-property right in the dead body. Id., 724 F.2d at 719. However, the court noted that it knew of no Arkansas cases extending this quasi-property right to all of the body's organs. Id. The court rejected the

January Term, 2008

widow's claim, holding that the failure of the coroner to return the decedent's organs after the autopsy did not violate the widow's rights.  Id.

{¶ 39} In *Culpepper v. Pearl Street Bldg., Inc.* (Colo.1994), 877 P.2d 877, parents brought an action against those involved in mistakenly cremating their son's body.  The Supreme Court of Colorado held that there was no property right in a dead body that would support a claim for conversion.  Id., 877 P.2d at 882.

{¶ 40} Finally, in *Shults v. United States* (D.Kan.1998), 995 F.Supp. 1270 (applying Mississippi law), the parents of a decedent upon whom an autopsy had been performed filed suit claiming, among other things, a property interest in the body's organs (including the brain and heart) that had been removed during the autopsy (and later incinerated) and not included with the body for burial.  The district court held that no property right exists in a dead body that would support an action for conversion.  Id. at 1275-1276.  The court concluded that the only right in remains recognized by Mississippi law is the family right to possess the body for burial and that that right does not create a property right in the organs removed for examination.  Id., 995 F.Supp. at 1275.

## V.  Conclusion

{¶ 41} We are mindful of the right of a decedent's next of kin to attend to the proper preparation and burial or cremation of the body.  But nothing in the United States Constitution, the Ohio Constitution, Ohio statutes, or common law establish a protected right in autopsy specimens in Ohio.  R.C. 313.14 simply clarifies whom the coroner should contact to make funeral arrangements.  The interest that Ohio statutes at issue here give next of kin in an autopsied decedent's body is to inter or cremate the body after the autopsy has been performed.  Our decision today only addresses autopsy specimens, and not body parts or fluids that the coroner or the examining individual does not consider necessary to be examined, tested, or retained in the autopsy.

{¶ 42} If the General Assembly believes that next of kin should have a right to autopsy specimens when the coroner's office is through with them, it should provide that right by statute. The issues of whether notice is required, what notice is required, and whether and under what circumstances tissue and organs can be removed and retained during the course of an autopsy, are issues for the legislature, not the courts.

{¶ 43} Accordingly, we answer the certified question in the negative, holding that the next of kin of a decedent upon whom an autopsy has been performed do not have a protected right under Ohio law in the decedent's tissues, organs, blood, or other body parts that have been removed and retained by the corner for forensic examination and testing.

So answered.

O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., concurs in answer only.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 44} The only question we face today is whether Ohioans, upon the death of a family member, have a protected right in the decedent's body parts that were removed and retained by a coroner for forensic examination and testing. I dissent because I believe that prior to the enactment of R.C. 313.123, which purports to give the coroner the right to dispose of such body parts, Ohio law gave next of kin a protected right in a deceased family member's body. That right came from Ohio statutes and common law.

**This Court's Limited Role**

{¶ 45} Our role in this case is only to make a threshold determination as to whether a protected right exists in Ohio. And if we decided that such a right did exist, the federal court would have determined whether the right rose to a level

requiring constitutional protection. "Although the existence of an interest may be a matter of state law, whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the due process clause is determined by federal law. *Memphis Light* [*Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 56 L.Ed.2d 30]. This determination does not rest on the label attached to a right granted by the state but rather on the substance of that right." *Brotherton v. Cleveland* (C.A.6, 1991), 923 F.2d 477, 481-482.

{¶ **46**} As the majority opinion states, the status of the law at the time of the alleged wrong provides the relevant context in this case; the plaintiffs-respondents "must show that state law in effect at the time of the incident gave them a property interest in their deceased son's body parts." Majority opinion at ¶ 14. The United States Supreme Court in *Bd. of Regents of State Colleges v. Roth* (1972), 408 U.S. 564*, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548, held that "[p]roperty interests * * * are not created by the Constitution. Rather they are created and their dimensions are defined by *existing rules or understandings* that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Emphasis added.) Thus, since R.C. 313.123 was not enacted until after the events in this case arose, it is not pertinent to this case.

{¶ **47**} Our role, then, is to determine whether Ohio law prior to the enactment of R.C. 313.123 provided a right to a decedent's next of kin in the deceased's remains. In *Whaley v. Tuscola Cty.* (C.A.6, 1995), 58 F.3d 1111, 1115, the Sixth Circuit Court of Appeals summarized the sources of law that are the basis for Ohioans' rights in regard to the remains of a deceased family member:

{¶ **48**} "When [Ohio case law] and the Ohio statute granting the next of kin the prior right to dispose of the body, and the Ohio Anatomical Act are taken together, it demonstrates that in Ohio there are existing 'rules and understandings'

which grant the next of kin the right to dispose of the body by making a gift of it, to prevent others from damaging the body, and to possess the body for purposes of burial. Such rights in an object are the heart and soul of the common law understanding of 'property.' "

**Ohio Statutes**

{¶ 49} Foremost among the rules and understandings granting the next of kin control over a decedent's body is R.C. 313.14, which gives "[t]he next of kin * * * prior right as to disposition of the body of [the] deceased person." The majority cannot get around this statute, and thus tries to ignore it. The majority waits until well into its opinion, ¶ 32, to even mention R.C. 313.14, and even then merely quotes it without discussion. Some paragraphs later, it says in a conclusory fashion that the right granted in R.C. 313.14 "does not include forensic specimens that were retained by a coroner for forensic examination and testing." It does not deign to explain why not, because it cannot.

{¶ 50} Pursuant to R.C. 313.14, it is the right of the next of kin of the deceased to dispose of the deceased's body. R.C. 313.14 does not list exceptions to that right. R.C. 313.14 does not define what constitutes the body, but R.C. 3705.01(C) states: " 'Dead body' means a human body or part of a human body from the condition of which it reasonably may be concluded that death recently occurred." Nothing in the Revised Code provides any reason to believe that body parts separated from the rest of the body during an autopsy do not continue to be part of the body.

{¶ 51} R.C. 313.15 establishes that the coroner's right to control the decedent's body is jurisdictional and temporary. The coroner has a statutory duty to perform an autopsy in certain instances, not the right to dispose of the body, and his right to control the body extends only as long as is necessary for the needs of law enforcement. R.C. 313.15 states:

{¶ 52} "All dead bodies in the custody of the coroner shall be held until such time as the coroner, after consultation with the prosecuting attorney * * * or with the sheriff, has decided that it is no longer necessary to hold such body to enable him to decide on a diagnosis giving a reasonable and true cause of death, or to decide that such body is no longer necessary to assist any of such officials in his duties."

{¶ 53} Pursuant to R.C. 313.15, the family's right to disposition of the body is limited only as to the time it may be exercised. By statute, the next of kin may have to wait some length of time, but the disposition of the body ultimately remains their right, and is exercised once the autopsy is complete. Implicit in the coroner's right to perform an autopsy is his right to do what is necessary to perform the autopsy. Therefore, the coroner cannot be held responsible for any bodily fluids or tissue samples lost in the autopsy process. But the right to the disposition of all of the remaining body parts postautopsy belongs to the deceased's family.

{¶ 54} Further statutory support for the protected right of family members in the decedent's body is found in Ohio's Anatomical Gift Act, R.C. Chapter 2108. R.C. 2108.02(B) gives the next of kin the power to make an anatomical gift of any part of the body of the decedent, absent notice of the decedent's contrary indication. Further, a family member more closely related to the decedent has the right to prohibit any anatomical gift from being made by a less closely related family member. The statute provides:

{¶ 55} "(B) Any of the following persons, in the order of priority stated, when persons in prior classes are not available at the time of death, and in the absence of actual notice of contrary indications by the decedent or actual notice of opposition by a member of the same or a prior class, may make an anatomical gift of all or any part of the body of a decedent for any purpose specified in section 2108.03 of the Revised Code:

{¶ 56} "(1) The spouse;

{¶ 57} "(2) An adult son or daughter;

{¶ 58} "(3) Either parent;

{¶ 59} "(4) An adult brother or sister;

{¶ 60} "(5) A grandparent;

{¶ 61} "(6) A guardian of the person of the decedent at the time of the decedent's death;

{¶ 62} "(7) Any other person authorized or under obligation to dispose of the body."

{¶ 63} Thus, again in R.C. 2108.02(B), the General Assembly sets forth the right of family members to the disposition of a decedent's body, giving family members the right to make anatomical gifts, and also the right to prevent an anatomical gift.

{¶ 64} All together, Ohio statutes grant next of kin important rights regarding the remains of a family member—the rights to possess, to control the disposition of, and to prevent the disposition of the remains.

### State-Court Cases

{¶ 65} This is a case of first impression in this court, and the particulars of this matter are a first for all Ohio courts. However, a number of Ohio appellate decisions address in some manner the rights of next of kin to the remains of their deceased family members. Those cases establish that although a decedent's body is not chattel belonging to the next of kin, the next of kin may bring a cause of action in their own right if the remains of the deceased are not treated in an appropriate manner.

{¶ 66} In *Brownlee v. Pratt* (1946), 77 Ohio App. 533, 537-538, 33 O.O. 356, 68 N.E.2d 798, the court recognized Ohio's legal tradition supporting the proper repose of the dead.

{¶ 67} "The policy of the law to protect the dead and preserve the sanctity of the grave comes down to us from ancient times, having its more immediate origin in the ecclesiastical law. This salutary rule recognizes the tender sentiments uniformly found in the hearts of men, the natural desire that there be repose and reverence for the dead, and the sanctity of the sepulcher."

{¶ 68} The common law's attitude toward the proper treatment of the dead is not merely aspirational; instead, the law grants the next of kin a remedy when a deceased's remains are mistreated.   In *Brownlee*, the court found that the "plaintiff's right of burial of the dead was transgressed" when her stepmother placed the remains of her second husband in a burial vault containing the remains of the plaintiff's mother and father. Id. at 539, 33 O.O. 356, 68 N.E.2d 798.

{¶ 69} Although the court in *Carney v. Knollwood Cemetery Assn.* (8th Dist.1986), 33 Ohio App.3d 31, 514 N.E.2d 430, rejected "the theory that a surviving custodian has quasi-property rights in the body of the deceased," id. at 37, it nonetheless recognized that the next of kin may properly bring an action for intentional infliction of emotional distress based upon the mistreatment of a deceased relative's remains.   In *Carney*, a decedent's remains had been disinterred during the preparation for another burial and were then dumped on a refuse pile elsewhere in the cemetery. Id. at 31.   The court quoted with approval the Wisconsin Supreme Court's discussion of familial rights regarding the treatment of a decedent's remains:

{¶ 70} " 'The law is clear in this state that the family of the deceased has a legally recognized right to entomb the remains of the deceased family member in their integrity and without mutilation.   Thus the next of kin have a claim against one who wrongfully mutilates or otherwise disturbs the corpse.' " *Carney* at 36, 514 N.E.2d 430, quoting *Scarpaci v. Milwaukee Cty.* (1980), 96 Wis.2d 663, 672, 292 N.W.2d 816.

{¶ **71**} In *Biro v. Hartman Funeral Home* (1995), 107 Ohio App.3d 508, 669 N.E.2d 65, the Eighth District again recognized a cause of action in tort for the desecration of remains.

{¶ **72**} In *Everman v. Davis* (1989)**,** 54 Ohio App.3d 119, 561 N.E.2d 547, the spouse of a woman killed in a car accident brought an action against the county coroner, challenging the coroner's decision to perform an autopsy. The plaintiff alleged a violation of the Fourth Amendment right against unreasonable searches and seizures. Although the court found that the plaintiff had no cause of action against the coroner in that case, it made clear that a next of kin does have a possessory right in the remains of a loved one:

{¶ **73**} "There is no issue in this case of the possessory right of a spouse or other appropriate member of the family to the body of the deceased person for the purpose of preparation, mourning and burial. This right is recognized by law and by the decisions. See R.C. 313.14. This is not to say that a corpse may not be temporarily held for investigation as to the true cause of death." *Everman* at 122, 561 N.E.2d 547.

{¶ **74**} Unlike in *Everman*, there is no quarrel here with the coroner's right to perform an autopsy. The issue here is whether once the coroner has completed his duties, the next of kin can exercise their rights.

{¶ **75**} The majority cites two ancient cases for the proposition that "a dead body is not property." Majority opinion at ¶ 37. That is not the point. The point is whether next of kin have a right to a proper disposition of the body, and the cases cited by the majority actually support that idea. Both cases support the idea that next of kin have the right to the disposition of the body; in each case, the dispute is over *which* next of kin has that right.

{¶ **76**} The majority first cites *Hadsell v. Hadsell* (Allen Cir.Ct.1893)*,* 7 Ohio C.C. 196, 1893 WL 942, which involved a dispute between a stepmother and her deceased husband's children as to the proper spot for their father's burial.

January Term, 2008

The *Hadsell* court wrote, "A dead body is not property. There are no next of kin to inherit it." Id. at *3. In so writing, the court rejected the idea that the right to disposition of the body is determined by the order of inheritance. But the court also noted that society recognizes that "when a person dies he is to be accorded decent burial." Id. The court found that the stepmother's wish to bury the deceased in a location where the plot could be cared for and a monument erected should win out. The court decided the case in favor of the party most likely to visit and take care of the grave:

{¶ 77} "In the case under consideration, if we are to conclude from what we have observed, it would not be Milo or James [the decedent's children] that would visit the grave of Almon E. Hadsell; no monument would they erect, no flowers would they strew upon the tomb. The monument to be erected is furnished by Mrs. Hadsell. The care to be bestowed upon the grave will be her care, and the flowers will be strewn by her hand." *Hadsell* at *3.

{¶ 78} The second case cited by the majority, *Hayhurst v. Hayhurst* (Mar.1926), Hamilton C.P. No. 199594, 4 Ohio Law Abs. 375, 1926 WL 2487, is a one-page common pleas court decision; it is another case involving a familial dispute regarding a place of burial. The *Hayhurst* court, too, found that "[t]here can be no property in a dead body and therefore a man cannot by will, dispose of same, and it does not become part of his estate." The court was faced with competing family members' ideas on the decedent's burial, and found in making its decision that "[c]ases of this nature must be considered by a court of equity on their own merits having due regard to the wishes of the decedent and to the rights and feelings of those entitled to be heard by reason of relationship and association." Again in *Hayhurst*, the court recognized the rights of family members.

{¶ 79} Other older cases establish that the right of the next of kin to dispose of their family member's remains has been longstanding in Ohio. In

1886, this court acknowledged that "at common law there is a duty upon the husband to dispose of the body of his deceased wife by decent sepulture in a suitable place." *McClellan v. Filson* (1886), 44 Ohio St. 184, 187, 5 N.E. 861.

{¶ 80} In *Farley v. Carson* (Hamilton Cty.Dist.Ct.1880), 8 Ohio Dec.Reprint 119, 1880 WL 6831, the court found that the right and duty of a wife to dispose of the body of her deceased husband by decent sepulture "must, of necessity, include the right to possession of the body in the fitness for burial in which death leaves it; and the organization of courts of justice would be defective if in a proper case redress by damages might not be afforded for wilful violation of such right." *Farley* at *2.

{¶ 81} The plaintiff widow alleged that her decedent husband's doctor had examined the decedent's body postmortem and had made an incision to examine an abscess on the deceased's liver. The court found that the allegations, if proved, would state a cause of action. The court found that the plaintiff's petition "alleged wilful desecration and mutilation, which words were comprehensive enough to include that disturbance of the decent fitness of the body for burial, which would constitute the violation of a right. This was a right in plaintiff as a widow, and entitled her to an application of the rule, that wilful infringement by one person of a right existing in another, imports damage." Id.

{¶ 82} The court ruled in the doctor's favor on the facts, finding that the doctor's action "was not a mutilation of the body, or dismemberment or removal of any part or organ, and for all the purposes of fit and proper burial the body was left without disfigurement." *Farley*, 1880 WL 6831, at *3.

{¶ 83} All of the cited cases demonstrate that Ohio courts have long and consistently held that a deceased's family members have a right protected by law in the proper disposition of the deceased's body. It is a possessory right, and prevents others from damaging the body. There are no cases holding to the contrary.

January Term, 2008

**Federal Cases**

{¶ 84} Of course, the federal courts in the Sixth Circuit have already spoken on the issue we face today. In *Brotherton v. Cleveland* (C.A.6, 1991), 923 F.2d 477, the court held that under Ohio law the decedent's wife's interest in her husband's corneas rose to the level of a legitimate claim of entitlement protected by the Due Process Clause. In *Hainey v. Parrott* (Sept. 28, 2005), S.D.Ohio No. 1:02-CV-733, 2005 WL 2397704, a case virtually identical to the case we face today, the district court held that the plaintiffs had a "cognizable constitutional property interest in their decedent's body parts which the coroner's office violated when it disposed of their decedents' brains without prior notice." Hainey at *6.

**Other Considerations**

{¶ 85} In the end, this case is not about a random piece of human tissue. It is about the decedent's brain. A brain is not a fingernail. The brain was the source of the deceased's every thought, aspiration, dream, fear, laugh, memory, or emotion; it was the origin of every word spoken, every song sung, every joke told; everything a family member loved about the deceased could be traced back to it. If the next of kin have any right to the decedent's body, the right must include the brain.

**Conclusion**

{¶ 86} Whatever the label, Ohio statutes and common law establish that Ohio recognizes a next of kin's rights in the disposition of a deceased family member's remains. Those rights, at least prior to R.C. 313.123, extend to the whole of the body and all of its parts.

{¶ 87} How the coroner could have met his obligation to respect the rights of family members is not before this court. But the burden would not have been heavy. It would have required, as suggested by the court in *Hainey*, simply some kind of notice, with options as to the ultimate disposition of the remaining body

SUPREME COURT OF OHIO

parts, to the next of kin, or a retention of the entire body until it could be returned to the family in its entirety.

{¶ 88} According to the majority, this case turns on the idea of property rights. But in truth, the point of the plaintiffs-respondents, and a point that has been recognized in Ohio law, is that a deceased's remains are not mere property. They are on a higher plane. The law does not require respect or reverence for property, but the law does require that in the treatment of the dead. It is a requirement of the living that we all will ultimately and assuredly also be the beneficiary of. It should not be disposed of for the sake of convenience.

_____

Dworken & Bernstein Company, L.P.A., and Patrick J. Perotti; and John H. Metz, for respondents.

Donald W. White, Clermont County Prosecuting Attorney, and H. Elizabeth Mason, Assistant Prosecuting Attorney, for petitioners.

Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., John R. Climaco, David M. Cuppage, Scott D. Simpkins, and Jennifer L. Gardner; and William D. Mason, Cuyahoga County Prosecuting Attorney, and David G. Lambert, Frederick W. Whatley, and Renee A. Bacchhus, Assistant Prosecuting Attorneys, for amici curiae Cuyahoga County Coroner and Cuyahoga County Board of Commissioners, in support of petitioners.

Patrick M. Fardal, for amicus curiae the National Association of Medical Examiners, in support of petitioners.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, David G. Jennings, and Jennifer H. George, for amici curiae Sixty-five Ohio Counties, County Commissioners' Association of Ohio, Buckeye State Sheriffs' Association, Ohio Association of Chiefs of Police, Ohio Prosecuting Attorneys Association, and Ohio Society of Pathologists, in support of petitioners.

January Term, 2008

Benesch, Friedlander, Coplan & Aronoff, L.L.P., Mark D. Tucker, and C. David Paragas, for amici curiae Ohio State Coroners Association and Ohio State Medical Association, in support of petitioners.

Nancy Hardin Rogers, Attorney General, and William P. Marshall, Solicitor General, for amicus curiae state of Ohio, in support of petitioners.

Ron O'Brien, Franklin County Prosecuting Attorney, and Nick A. Soulas Jr., A. Paul Thies, and Patrick J. Piccininni, Assistant Prosecuting Attorneys, for amici curiae Franklin County Board of Commissioners and Franklin County Coroner, in support of petitioners.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Nicole T. Fiorelli; and John H. Metz, for amicus curiae Monreal Funeral Home, in support of respondents.

Dworken & Bernstein Co., L.P.A., Patrick J. Perotti, and Nicole T. Fiorelli; and John H. Metz, for amici curiae the Catholic League and Brunner Funeral Homes, in support of respondents.

_____